UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

Notice To Clerk, District Court

RE:    3:01-cv-00426

Levinson   v. Anthem Health Plans

Dear Clerk:

Enclosed is the original file and certified copies of the Order and docket entries in the above-entitled case which has been transferred to your court.

Kindly acknowledge receipt of same on the copy of this notice and return it in the envelope provided. Missing Documents. 9, 10, 11 send 21

Kevin F. Rowe, Clerk

By: Patricia A. Wellard

Deputy Clerk

Enclosures

This acknowledges receipt of this case file and certified copies of the Order and docket entries.

Case was received in this District on _____

Assigned case number: _____

This case was received by: _____

01- 10

CIV-MORENO 3:01cv

U.S. District Court
District of Connecticut (New Haven)

CIVIL DOCKET FOR CASE #: 01-CV-426

Levinson, et al v. Anthem Health Plans                    Filed: 03/16/01
Assigned to: Judge Janet Bond Arterton
Demand: $0,000                               Nature of Suit:  791
Lead Docket: None                            Jurisdiction: Federal Question
Dkt # in lead case : is 3:01-cv-00411

STEPHEN R. LEVINSON, MD, o/b/o        Gary B. O'Connor
himself & others similarly           [COR LD NTC]
situated                             Hunchu Kwak
     plaintiff                       [COR LD NTC]
                                     Drubner, Hartley, O'Conner &
                                     Mengacci
                                     500 Chase Pkwy
                                     Waterbury, CT 06708
                                     203-753-9291
                                     FTS 753-6373

KAREN LAUGEL, MD, o/b/o              Gary B. O'Connor
herself and others similarly        (See above)
situated                            [COR LD NTC]
     plaintiff                      Hunchu Kwak
                                    (See above)
                                    [COR LD NTC]

KEVIN J. LYNCH, MD, o/b/o           Gary B. O'Connor
himself and others similarly        (See above)
situated                            [COR LD NTC]
     plaintiff

     v.

ANTHEM HEALTH PLANS, INC            Craig A. Hoover
dba                                 [COR LD NTC]
Anthem Blue Cross & Blue            Jeremy T. Monthy
Shield of CT                        [COR LD NTC]
     defendant                      Jeffrey D. Pariser
                                    [COR LD NTC]
                                    Hogan & Hartson
                                    Columbia Sq.
                                    555 Thirteenth St., Nw.
                                    Washington, DC 20004-1109

Proceedings include all events.
3:01cv426 Levinson, et al v. Anthem Health Plans

CLOSED
3:01cv 411

202-637-5600

Patrick M. Noonan
203-458-9168
[COR LD NTC]
Michael G. Durham
203-458-9168
[COR LD NTC]
Steven M. Barry
203-458-9168
[COR LD NTC]
Delaney, Zemetis, Donahue,
Durham & Noonan
Concept Park
741 Boston Post Rd.
Guilford, CT 06437
203-458-9168

Proceedings include all events.
3:01cv426 Levinson, et al v. Anthem Health Plans                    CLOSED
                                                                   3:01cv 411

3/16/01   1      NOTICE OF REMOVAL by Anthem Health Plans  from Judicial
                 District of New Haven  FILING FEE $ 150.00  RECEIPT #
                 N003018 (jxp) [Entry date 03/19/01]

3/16/01   2      ORDER on Pretrial Deadlines handed to counsel Discovery
                 cutoff 9/15/01 ;   Amended Pleadings due 05/16/01  Motions
                 to Dismiss due 06/16/01 (jxp) [Entry date 03/19/01]

3/22/01   3      MOTION by Anthem Health Plans to Extend Time by 30 days
                 beyond ruling on motion to remand to respond to complaint
                 (rrs) [Entry date 03/22/01]

3/23/01   --     ENDORSEMENT granting [3-1] motion to Extend Time by 30 days
                 beyond ruling on motion to remand to respond to complaint
                 ( signed by Judge Robert N. Chatigny ) (amm)
                 [Entry date 03/23/01]

3/26/01   4      MOTION by Anthem Health Plans to Transfer Case (rrs)
                 [Entry date 03/26/01]

3/26/01   5      APPEARANCE of Attorney for Stephen R. Levinson, Karen
                 Laugel, Lynch Kevin J.  -- Gary B. O'Connor, Hunchu Kwak,
                 James E. Hartley, Jr. (rrs) [Entry date 03/26/01]

3/26/01   6      MOTION by Anthem Health Plans for Craig A. Hoover to
                 Appear Pro Hac Vice (rrs) [Entry date 03/26/01]

3/26/01   --     ENDORSEMENT [6-1] motion for Craig A. Hoover to Appear Pro
                 Hac Vice ordered accordingly ( signed by Clerk ) (rrs)
                 [Entry date 03/26/01] [Edit date 04/03/01]

3/26/01   7      MOTION by Anthem Health Plans for Jeffrey D. Pariser to
                 Appear Pro Hac Vice (rrs) [Entry date 03/26/01]

3/26/01   --     ENDORSEMENT [7-1] motion for Jeffrey D. Pariser to Appear
                 Pro Hac Vice ordered accordingly ( signed by Clerk ) (rrs)
                 [Entry date 03/26/01] [Edit date 04/03/01]

3/26/01   8      MOTION by Anthem Health Plans for Jeremy T. Monthy to
                 Appear Pro Hac Vice (rrs) [Entry date 03/26/01]

3/26/01   --     ENDORSEMENT [8-1] motion for Jeremy T. Monthy to Appear Pro
                 Hac Vice ordered accordingly ( signed by Clerk ) (rrs)
                 [Entry date 03/26/01] [Edit date 04/03/01]

3/26/01   --     Motion to Consolidate (Doc #9) & Memorandum in Support (Doc
                 #10) deleted, entered in error (dac) [Entry date 04/09/01]
                 [Edit date 04/11/01]

3/28/01   11     MOTION by Stephen R. Levinson, Karen Laugel, Kevin J. Lynch
                 to Remand, & for Costs and Fees  (Brief Due 4/18/01 ) (rrs)
                 [Entry date 03/29/01]

Proceedings include all events.
3:01cv426 Levinson, et al v. Anthem Health Plans                    CLOSED
                                                                   3:01cv 411

3/29/01  12    MEMORANDUM by Stephen R. Levinson, Karen Laugel, Kevin J.
               Lynch  in support of [11-1] motion to Remand, [11-2] motion
               for Costs and Fees (rrs) [Entry date 03/29/01]

4/2/01   13    ORDER of Transfer ( signed by Judge Robert N. Chatigny )
               to Judge Janet B. Arterton (bpd) [Entry date 04/02/01]

4/9/01   14    APPEARANCE of Attorney for Anthem Health Plans  --  Craig
               A. Hoover (rrs) [Entry date 04/09/01]

4/13/01  15    MOTION by Anthem Health Plans to Extend Time for 7 days to
               respond to Motion to Remand & for Atty's fees & expenses
               (jxp) [Entry date 04/16/01]

4/16/01  16    APPEARANCE of Attorney for Anthem Health Plans  --Jeffrey
               D. Pariser (jxp) [Entry date 04/16/01]

4/17/01  --    ENDORSEMENT granting [15-1] motion to Extend Time to
               respond to Motion to Remand & for Atty's fees & expenses,
               Brief Deadline set for 4/27/01 [11-1] motion to Remand,
               set for 4/27/01 [11-2] motion for Costs and Fees  ( signed
               by Judge Janet B. Arterton ) (sab) [Entry date 04/18/01]

4/18/01  17    RESPONSE by Stephen R. Levinson, Karen Laugel, Kevin J.
               Lynch  to [15-1] motion to Extend Time for 7 days to
               respond to Motion to Remand & for Atty's fees & expenses by
               Anthem Health Plans (sab) [Entry date 04/19/01]

4/25/01  18    APPEARANCE of Attorney for Anthem Health Plans  -- Michael
               G. Durham (jxp) [Entry date 04/25/01]

4/25/01  19    MEMORANDUM by Anthem Health Plans  in opposition to [11-1]
               motion to Remand by Kevin J. Lynch, Karen Laugel, Stephen
               R. Levinson (mbs) [Entry date 04/26/01]

4/25/01  20    Exhibits by Anthem Health Plans  to [19-1] opposition
               memorandum  by Anthem Health Plans (mbs)
               [Entry date 04/26/01]

4/25/01  --    Consolidated Member Case . Lead Case Number: 3:01cv411 (fsd)
               [Entry date 04/26/01]

5/7/01   21    APPEARANCE of Attorney for Anthem Health Plans  -- Craig A.
               Hoover (jxp) [Entry date 05/07/01]

5/7/01   22    APPEARANCE of Attorney for Anthem Health Plans  -- Steven
               M. Barry (jxp) [Entry date 05/07/01]

9/18/01  23    CONDITIONAL TRANSFER ORDER Case transferred to Southern
               District of Florida (signed by William Terrell Hodges,
               Chairman) (pav) [Entry date 09/21/01]

```
Proceedings include all events.
3:01cv426 Levinson, et al v. Anthem Health Plans        CLOSED
                                                        3:01cv 411
9/18/01  --      Interdistrict transfer  to District of Southern Florida.
                 Original file, certified copies of docket and Order sent
                 9/24/01 (pav) [Entry date 09/21/01]

9/18/01  --      Case closed (pav) [Entry date 09/21/01]
```

I hereby certify that the foregoing
is a true copy of the original document
on file.  Date: 9-21-01

KEVIN F. ROWE
Clerk
By . P. A. Villano
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

STEPHEN R. LEVINSON., M.D., KAREN
LAUGEL, M.D., and J. KEVIN LYNCH,
M.D., on behalf of themselves and other
similarly situated,

           Plaintiffs,

    v.

ANTHEM HEALTH PLANS, INC. d/b/a
ANTHEM BLUE CROSS AND BLUE
SHIELD OF CONNECTICUT ,

           Defendant.

Civil Action _____



**301CV00126**

March 16, 2001

## PETITION FOR REMOVAL

    Comes now defendant, Anthem Health Plans, Inc. d/b/a Anthem Blue Cross and Blue Shield of Connecticut ("Anthem"), by its undersigned counsel, and files this Petition for Removal of this cause from the Superior Court  in New Haven, Connecticut, where it now is pending, to the United States District Court for the District of Connecticut, and for grounds in support hereof, states as follows:

    1.    The referenced civil action was filed on or about February 14, 2001, and served on Anthem on February 15, 2001.  Therefore, this Petition is timely filed pursuant to 28 U.S.C. § 1446(b).  The documents attached hereto as Exhibit 1 comprise all of the process and pleadings served upon Anthem to date.

**DELANEY, ZEMETIS, DONAHUE, DURHAM & NOONAN, P.C.**
CONCEPT PARK   •   741 BOSTON POST ROAD
GUILFORD, CONNECTICUT 06437
TEL:  (203) 458-9168  •  FAX:  (203) 458-4424
JURIS NO. 415438

2.      This action is removable to this Court pursuant to 28 U.S.C. § 1441 because Plaintiffs' claims are founded on claims or rights arising under the laws of the United States and therefore involve a federal question under 28 U.S.C. § 1331. Specifically, the claims asserted by Plaintiffs relate to one or more employee benefit plans established and maintained by employers or groups of employers pursuant to the Employee Retirement Income Security Act of 1974, as amended, ("ERISA"), 29 U.S.C. §1001, et seq. Plaintiffs allege that Anthem either failed to pay or to pay in a timely manner for services rendered to ERISA plan members which they contend were "covered services" under the plans and which were therefore reimbursable under provider contracts entered into between Plaintiffs and Anthem. Some of the claims for reimbursement submitted under these plans have been denied by Anthem, either in whole or in part, due to the specific provisions contained in the ERISA plans. In order to prevail in this action, Plaintiffs must first demonstrate that the services that they rendered to ERISA plan participants and for which Anthem allegedly failed either to pay or to pay in a timely manner were "covered services" and were "medically necessary" under the terms of the ERISA regulated employee benefit plans. Regardless of the existence of individual provider contracts between Plaintiffs and Anthem, the claims asserted in this litigation are essentially derivative in nature in that they seek reimbursement of benefits under ERISA plans. Such claims raise questions of federal law – including the relevant provisions of the ERISA statute, 29 U.S.C. §1132(a)(1)(B) – and are accordingly removable.

2

3.      This action is further removable pursuant to 28 U.S.C. § 1441 and 28 U.S.C. § 1331 because Plaintiff's claims relate to one or more employee benefit plans established and maintained by the United States Office of Personnel Management (the "OPM") to deliver health benefits to federal employees located in Connecticut, pursuant to the Federal Employees' Health Benefits Act, 5 U.S.C. §§ 8901-8914 ("FEHBA"). Plaintiff's claims for the reimbursement of benefits require an analysis of FEHBA regulated plans and thereby raise questions of federal law.

4.      This Court has personal jurisdiction over the parties because plaintiffs are Connecticut residents and Anthem maintains its principal place of business in Connecticut.

5.      A true copy of this Petition for Removal has been filed with the Clerk of the Superior Court for New Haven, as required by 28 U.S.C. § 1446(d).

6.      Pursuant to Local Rules, Anthem will submit to this Court true and legible copies of all other papers then on file with the State court within thirty (30) days.

WHEREFORE, the petitioner/defendant prays that the above action now pending against it in the Superior Court of Connecticut in and for the Judicial District of New Haven be removed therefrom to this Court.

3

Dated: March 16, 2001

Respectfully submitted,

ANTHEM PLANS, INC.

By: _____

Patrick M. Noonan (Fed. Bar # ct00189)
Michael G. Durham (Fed Bar # ct05342)
DELANEY, ZEMETIS, DONAHUE,
 DURHAM & NOONAN
741 Boston Post Road
Guilford, CT 06437

Craig A. Hoover (Fed. Bar # ct21931)
Jeffrey Pariser (Fed. Bar # ct22245)
Jeremy T. Monthy (Fed. Bar # ct22244)
555 13th Street, N.W.
Washington, DC 20004
(202) 637-5600

Attorneys for Defendants

## **CERTIFICATION**

This is to certify that a copy of the foregoing was mailed, postage prepaid, on the above-written date, to:

James E. Hartley, Jr.
Drubner, Hartley, O'Conner & Mengacci, L.L.C.
500 Chase Parkway
Waterbury, CT 06708
        Tel: (203) 753-9291
        Fax: (203) 753-6373

Gregory J. Pepe
Neubert, Pepe & Monteith, P.C.
195 Church Street, 13th Floor
New Haven, CT 06510-2026-
        Tel: (203) 821-2000
        Fax: (203) 821-2009

Christopher A. Seeger
Stephen A. Weiss
Seeger Weiss, L.L.P.
One William Street
New York, NY 10004
        Tel: (203) 584-0700
        Fax: (203) 584-0799

Patrick M. Noonan

**SUMMONS - CIVIL** (Except Family Actions)

**SUPERIOR COURT**
www.jud.state.ct.us

JD-CV-1 Rev. 1-2000
C.G.S. § 51-346, 51-347, 51-349, 51-350, 52-45a,
52-48, 52-259, P.B. Secs 3-1 thru 3-21, 8-1

**INSTRUCTIONS**

1. Type or print legibly; sign original summons and conform all copies of the summons.
2. Prepare or photocopy conformed summons for each defendant.
3. Attach the original summons to the original complaint, and attach a copy of the summons to each copy of the complaint. Also, if there are more than 2 plaintiffs or 4 defendants prepare form JD-CV-2 and attach it to the original and all copies of the complaint.
4. After service has been made by a proper officer, file original papers and officer's return with the clerk of court.
5. The party recognized to pay costs must appear personally before the authority taking the recognizance.
6. Do not use this form for actions in which an attachment, garnishment or replevy is being sought. See Practice Book Section 8-1 for other exceptions.

TO. Any proper officer; BY AUTHORITY OF THE STATE OF CONNECTICUT, you are hereby commanded to make due and legal service of this Summons and attached Complaint.

**Amount, legal interest or property in demand, exclusive of interest and costs is:**
☐ less than $2,500
☐ $2,500 through $14,999.99
☒ $15,000 or more

("X" if applicable)
☒ Claiming other relief in addition to or in lieu of money or damages.

**RETURN DATE (Mo., day, yr.)** (Must be a Tuesday)  3/13/01

| ☒ JUDICIAL DISTRICT | | AT (Town in which writ is returnable) (C.G.S. 51-346, 51-349) | CASE TYPE (See JD-CV-1c) | | |
|---|---|---|---|---|---|
| ☐ HOUSING SESSION | ☐ G.A. NO. | New Haven | Major C | Minor 90 | |

ADDRESS OF COURT CLERK WHERE WRIT AND OTHER PAPERS SHALL BE FILED (No., street, town and zip code) (C.G.S 51-346, 51-350)  TELEPHONE NO. (with area code)
235 Church Street, New Haven, CT, 06510  203/503-6800

| PARTIES | NAME AND ADDRESS OF EACH PARTY (No., street, town and zip code)  NOTE: Individuals' Names: Last, First, Middle Initial | ☒ Form JD-CV-2 attached | PTY NO. |
|---|---|---|---|
| FIRST NAMED PLAINTIFF | Levinson, Stephen R., M.D., 48 Dogwood Drive, Easton, Connecticut | | 01 |
| Additional Plaintiff | Laugel, Karen, M.D., 14 Twinbrook Drive, Woodbridge, Connecticut | | 02 |
| FIRST NAMED DEFENDANT | Anthem Plans, Inc. d/b/a Anthem Blue Cross & Blue Shield of Connecticut, Inc., Agent for Service: Robert T. Brown, Esq., 370 Bassett Road, North Haven, CT, 064 | | 50 |
| Additional Defendant | | | 51 |
| Additional Defendant | | | 52 |
| Additional Defendant | | | 53 |

## NOTICE TO EACH DEFENDANT

1. YOU ARE BEING SUED.
2. This paper is a Summons in a lawsuit.
3. The Complaint attached to these papers states the claims that each Plaintiff is making against you in this lawsuit.
4. To respond to this Summons, or to be informed of further proceedings, you or your attorney must file a form called an "Appearance" with the Clerk of the above-named Court at the above Court address on or before the second day after the above Return Date.
5. If you or your attorney do not file a written "Appearance" form on time, a judgment may be entered against you by default.

6. The "Appearance" form may be obtained at the above Court address.
7. If you believe that you have insurance that may cover the claim that is being made against you in this lawsuit, you should immediately take the Summons and Complaint to your insurance representative.
8. If you have questions about the Summons and Complaint, you should consult an attorney promptly. **The Clerk of Court is not permitted to give advice on legal questions.**

| DATE 2/14/01 | SIGNED (Sign and "X" proper box) | ☒ Comm. of Superior Court | TYPE IN NAME OF PERSON SIGNING AT LEFT James E. Hartley, Jr. |
|---|---|---|---|
| | | ☐ Assistant Clerk | |

FOR THE PLAINTIFF(S) PLEASE ENTER THE APPEARANCE OF:

| NAME AND ADDRESS OF ATTORNEY, LAW FIRM OR PLAINTIFF IF PRO SE (No., street, town and zip code) | TELEPHONE NUMBER | JURIS NO. (if atty or law firm) |
|---|---|---|
| Drubner Hartley O'Connor & Mengacci, 500 Chase Pkwy, Wby, CT | 203/753-9291 | 16922 |

NAME AND ADDRESS OF PERSON RECOGNIZED TO PROSECUTE IN THE AMOUNT OF $250 (No., street, town and zip code)  SIGNATURE OF PLAINTIFF IF PRO SE
JoAnne S. Falcone, 500 Chase Parkway, Waterbury, CT, 06708

| # PLFS. | # DEFS. | # CNTS. | SIGNED (Official taking recognizance; "X" proper box) | ☒ Comm. of Superior Court | For Court Use Only |
|---|---|---|---|---|---|
| 3 | 1 | 5 | | ☐ Assistant Clerk | FILE DATE |

IF THIS SUMMONS IS SIGNED BY A CLERK:
a. The signing has been done so that the Plaintiff(s) will not be denied access to the courts.
b. It is the responsibility of the Plaintiff(s) to see that service is made in the manner provided by law.
c. The Clerk is not permitted to give any legal advice in connection with any lawsuit.
d. The Clerk signing this Summons at the request of the Plaintiff(s) is not responsible in any way for any errors or omissions in the Summons, any allegations contained in the Complaint, or the service thereof.

A TRUE COPY ATTEST:

THOMAS F. GAHAN
State Marshal - New Haven County

| I hereby certify I have read and understand the above | SIGNED (Pro Se Plaintiff) | DATE SIGNED | DOCKET NO. |
|---|---|---|---|

ORIGINAL

**CONTINUATION OF PARTIES**

JD-CV-2 EL Rev. 4-97

**STATE OF CONNECTICU.**
**SUPERIOR COURT**

FIRST NAMED PLAINTIFF *(Last, First, Middle Initial)*
Levinson, Stephen R., M.D.

FIRST NAMED DEFENDANT *(Last, First, Middle Initial)*
Anthem Health Plans, Inc., d/b/a

| ADDITIONAL PLAINTIFFS | |
|---|---|
| NAME *(Last, First, Middle Initial, if individual)*    ADDRESS *(No., Street, Town and ZIP Code)* | CODE |
| Lynch, J. Kevin, M.D., 47 Chimney Corner Circle, Guilford, Connecticut | 03 |
| | 04 |
| | 05 |
| | 06 |
| | 07 |
| | 08 |
| | 09 |
| | 10 |
| | 11 |
| | 12 |
| | 13 |

| ADDITIONAL DEFENDANTS | | |
|---|---|---|
| NAME *(Last, First, Middle Initial, if individual)*    ADDRESS *(No., Street, Town and ZIP Code)* | | CODE |
| | | 54 |
| | | 55 |
| | | 56 |
| | | 57 |
| | | 58 |
| | | 59 |
| | | 60 |
| | 61 | FOR COURT USE ONLY - FILE DATE |
| | 62 | |
| | 63 | DOCKET NO. |

RETURN DATE: MARCH 13, 2001      :      SUPERIOR COURT

STEPHEN R. LEVINSON, M.D., KAREN
LAUGEL, M.D. and J. KEVIN LYNCH,
M.D., on behalf of themselves and others
similarly situated,      :      J. D. OF NEW HAVEN

VS.      :      AT NEW HAVEN

ANTHEM HEALTH PLANS, INC., d/b/a
ANTHEM BLUE CROSS AND BLUE
SHIELD OF CONNECTICUT      :      FEBRUARY 14, 2001

## CLASS ACTION COMPLAINT

Plaintiffs, Stephen R. Levinson M.D., Karen Laugel, M.D. and J. Kevin Lynch,

M.D. by their attorneys, bring this individual and class action pursuant to §§ 52-105 and

42-110h of the Connecticut General Statutes and in accordance with § 9-7 *et seq.* of the

Connecticut Rules of Court against Anthem Health Plans, Inc., d/b/a Anthem Blue Cross

and Blue Shield of Connecticut (referred to as "Anthem" or "defendant"), and allege the

following upon information and belief, except as to paragraphs pertaining to plaintiffs'

own actions, which are alleged upon personal knowledge:

## THE PARTIES

1.      Plaintiff, Stephen R. Levinson M.D., is an orthopedic physician and a member of Connecticut State Medical Society ("CSMS"), who resides at 48 Dogwood Drive, Easton, Connecticut, with his principal place of business located at 52 Beach Road, Fairfield, Connecticut.  During the class period, Dr. Levinson has been a participating physician with Anthem.

2.      Plaintiff, Karen Laugel, M.D., is a pediatric physician and a member of CSMS, who resides at 14 Twinbrook Drive, Woodbridge, Connecticut, with her principal place of business located at 7365 Main Street, Stratford, Connecticut.  During the class period, Dr. Laugel has been a participating provider with Anthem.

3.      Plaintiff, J. Kevin Lynch, M.D., is an orthopedic physician and a member of CSMS, who resides at 47 Chimney Corner Circle, Guilford, Connecticut, with his principal place of business located at 60 Temple Street, New Haven, Connecticut. During the class period, Dr. Lynch has been a participating provider with Anthem.

4.      Defendant Anthem Health Plans, Inc., d/b/a Anthem Blue Cross and Blue Shield of Connecticut, is a Connecticut corporation with its principal offices located at 370 Bassett Road in North Haven, Connecticut.  Anthem Connecticut is a wholly-owned subsidiary of Anthem, Inc.

2

## INTRODUCTION

5.      Plaintiffs bring this action on their own behalf and on behalf of a class (the

"Class") of all other physicians who are members of the Connecticut State Medical

Society and provided health care services to defendant's plan members pursuant to

contracts with defendant at any time during the period August 1, 1997 (the date when

Anthem, Inc. acquired Blue Cross and Blue Shield of Connecticut (Anthem Connecticut's

predecessor)) through the present (the "Class Period").

6.      At all relevant times, the relationships between plaintiffs and defendant

have been governed by contracts for the provision of plaintiffs' healthcare services to

defendant's plan members. The pertinent or relevant terms of the contracts that each of

the plaintiff physicians has entered into with defendant that are at issue in this case are

identical or substantially similar. These contracts all provide that the plaintiff physicians

agree to render medically necessary healthcare services to defendant's plan members in

exchange for reimbursement from defendant at specified rates within a specified period

of time.

7.      Contrary to defendant's contractual undertakings, throughout the relevant

period, defendant has breached its contractual obligations to the plaintiff physicians and

3

members of the Class and engaged in an improper, unfair and/or deceptive practices under the Connecticut Unfair Trade Practices Act, Connecticut General Statutes §§ 42-110b *et seq.* ("CUTPA"), and the Connecticut Unfair Insurance Practices Act, Connecticut General Statutes § 38a-816 ("CUIPA") by engaging in a scheme to deny, impede, delay, and reduce lawful reimbursement to the plaintiff physicians and other members of the Class who rendered medically necessary healthcare services to members of defendant's managed care plans.

8.    In addition, as a result of the extraordinarily unequal bargaining positions between the parties, and physicians' reliance on Anthem to provide access to significant portions of their patient base, Anthem has been able to force physicians to enter into one-sided contracts which infringe upon the doctor-patient relationship and threaten the continuity of care physicians provide to their patients.

9.    As discussed in detail below, defendant has employed a variety of means to effect its improper, unfair and/or deceptive scheme and/or breaches of contract, including, but not limited to, one or more of the following practices:

• Defendant systematically denies reimbursement to physicians for medically necessary services by, *inter alia*, (i) routinely and unjustifiably refusing to pay for, or reducing payment for, more than one healthcare service per visit or

4

incident -- referred to as "bundling" payment for healthcare services; (ii) routinely and unjustifiably reducing retroactively the amount of reimbursement remitted to plaintiff physicians and other Class members for services rendered to members of defendant's healthcare plans -- referred to as "downcoding" payment for healthcare services; (iii) routinely and unjustifiably denying increased levels of reimbursement for complicated cases which require substantial additional services --referred to as or "modifiers"; (iv) improperly employing software programs designed to automatically downcode procedures and/or deny payment to physicians who are identified as high utilizers, without any clinical review or oversight; and (iv) routinely and unjustifiably denying payment for procedures that fall within the "global period" covering follow-up for a procedure, even though the additional procedure is unrelated.

- Defendant systematically denies medically necessary claims to achieve internal financial targets without regard for individual medical needs, thereby wrongfully denying payment to plaintiff physicians and other members of the Class, by, *inter alia*, (i) monitoring and penalizing physicians for high utilization; (ii) reprimanding and terminating Anthem employees who are unwilling to engage in this practice; (iii) improperly influencing its internal claims

5

administrators; (iv) implementing a system of financial rewards and punishments upon utilization management staff in order to meet cost targets; and (v) improperly applying so-called "guidelines" in a manner that they know to be unintended and unreasonable for the purpose of denying coverage for treatments that are medically necessary.

- Defendant fails to provide adequate staffing to handle physician inquiries. In this regard, Anthem has created and maintains an administrative system that is inefficient and designed to frustrate payment to participating physicians by requiring physicians to make excessive telephone inquiries prior to obtaining pre-certification for approval of healthcare services and to obtain proper reimbursement of claims. Defendant also fails to provide sufficient explanation as to its failure to reimburse claims in whole or in part.

- Defendant routinely and unjustifiably fails to make payments to the plaintiff physicians and other members of the Class within the time period allotted under the contracts between the parties in violation of the contract and applicable provisions of Connecticut State law and routinely and unjustifiably fails to pay interest on claims that are past-due as required under the terms of the agreement in violation of the contract and applicable provisions of Connecticut state law.

6

- Defendant requires plaintiff physicians and other members of the Class to enter into one-sided contracts, in order for them to provide medical care to patients who receive healthcare through one of defendant's managed care plans.

- Defendant consistently refuses to provide participating physicians with fee schedules to be applied to the codes for covered procedural terminology recognized by physicians and insurers for reimbursement.

10.     As a result of its improper, unfair and/or deceptive scheme and breaches of its contractual obligations, defendant has deprived the plaintiff physicians and other members of the Class of millions of dollars of lawful reimbursement for healthcare services provided to defendant's plan members. Plaintiffs and other members of the Class relied heavily on defendant's obligations to make payments pursuant to the terms of these contracts and defendant's failure to do so has materially impaired plaintiffs' and other Class members' ability to provide healthcare services to defendant's plan members and others.

11.     Adequate and timely reimbursements to plaintiff physicians and members of the Class are also necessary in order to ensure that physicians are able to maintain their practices and provide continuity of care to their patients as required by sound medical judgment. The relationship between a physician and patient depends on reimbursement

7

adequate to cover the costs of delivering the health care services patients have been promised by defendant. Defendant's failure to provide reimbursement to physicians which is adequate to cover the costs of delivering health care services to patients has resulted in tremendous hardships for defendant' participating physicians.

12.     Defendant's conduct in this regard also injures consumers of defendant's healthcare products and the general public. The conduct of defendant has adversely impacted, and continues to adversely impact, members of defendant's plans and the general public by, among other things: (a) imposing financial hardships, and in some cases threatening the continued viability of the practices run by plaintiff physicians and other members of the Class; (b) threatening the continuity of care provided to patients by plaintiff physicians and other members of the Class, as required by sound medical judgment; (c) requiring plaintiff physicians and other members of the Class to expend considerable resources in seeking reimbursement that might otherwise be available to provide enhanced healthcare services to defendant's plan members; (d) making it more costly and difficult for plaintiff physicians and other members of the Class to maintain and enhance the availability and quality of care that all patients receive; and (e) increasing the costs of obtaining healthcare services in Connecticut as a result of the additional costs incurred, and considerable effort expended, by plaintiff physicians and

8

other members of the Class. in seeking reimbursement from defendant for services
rendered.

## CLASS ACTION ALLEGATIONS

13.     Plaintiffs bring this class action in accordance with §§ 52-105 and 42-
110h of the Connecticut General Statutes. This action meets the criteria of those statutes
and of §§9-7 *et seq.* of the Connecticut Rules of Court. Plaintiffs bring this action on
their own behalf and on behalf of a class (the "Class") of all other physicians who are
members of the Connecticut State Medical Society and provided health care services to
defendant's plan members pursuant to contracts entered into with defendant at any time
during the period August 1, 1997 through the present (the "Class Period").

14.     Excluded from the Class are defendant, any entity in which defendant has
a controlling interest, or is a parent or subsidiary of, or any entity that is controlled by the
defendant and any of the officers, directors. employees, affiliates, legal representatives,
heirs, predecessors, successors and assigns.

15.     This action is brought as a class action under Connecticut Rule of Court §
9-7 for the following reasons:

9

a.    The Class consists of thousands of physicians and is thus so numerous that joinder of all members, whether otherwise required or permitted, is impracticable;

b.    There are questions of law or fact common to the Class which predominate over any questions affecting only individual members, including:

i.    whether defendant has engaged in an improper, unfair and/or deceptive scheme designed to wrongfully delay, impede, deny, or reduce payment of claims for healthcare services rendered to defendant's plan members for which plaintiffs and members of the Class were entitled to recover;

ii.    whether defendant has refused, without lawful justification, to pay all or part of lawful claims for healthcare services provided by plaintiff physicians and other members of the Class either by "bundling" claims for multiple services, refusing to remit additional amounts for complicated cases ("modifiers"), "downcoding" those services rendered, or denying payment for healthcare services that fall within the "global period" for a wholly unrelated procedure;

iii.    whether defendant has directed its internal personnel to routinely reduce or deny claims for payment of healthcare services to members of defendant's plans treated by plaintiff physicians and other members of the Class;

10

DRUBNER, HARTLEY, O'CONNOR & MENGACCI, L.L.C  ATTORNEYS AT LAW
500 CHASE PARKWAY, WATERBURY, CONNECTICUT 06708
JURIS #16922 • (203) 753-9291 • FAX # (203) 753-6373

iv.      whether defendant has improperly used software programs to automatically downcode and/or deny payment to doctors identified as high utilizers without any clinical review or oversight;

v.      whether defendant has improperly delayed payments and/or refused to pay interest on late payments in violation of their agreements with plaintiffs and applicable Connecticut state law;

vi.      whether defendant has knowingly, and improperly applied so-called "guidelines" in evaluating claims for medical necessity as a means to wrongfully deny reimbursement;

vii.      whether defendant has failed to properly provide adequate staffing concerning payment for participating physicians in violation of its agreements with plaintiffs;

viii.      whether defendant has consistently refused to provide participating physicians with fee schedules to be applied to the codes for covered procedural terminology recognized by physicians and insurers for reimbursement;

ix.      whether defendant has breached its contracts with plaintiffs and members of the Class;

11

DRUBNER, HARTLEY, O'CONNOR & MENGACCI, L.L.C. ATTORNEYS AT LAW
500 CHASE PARKWAY, WATERBURY, CONNECTICUT 06708
JURIS #16922 • (203) 753-9291 • FAX # (203) 753-6373

x.  whether defendant has engaged in improper, unfair and/or deceptive practices under the Connecticut Unfair Trade Practices Act, Connecticut General Statutes §§ 42-110b *et seq.* ("CUTPA"), and the Connecticut Unfair Insurance Practices Act, Connecticut General Statutes § 38a-816 ("CUIPA");

xi.  whether defendant has breached its duty of good faith and fair dealing owed to plaintiffs and members of the Class;

xii.  whether defendant's take-it-or-leave-it policy with respect to physician contracts constitutes an unfair trade practice under Connecticut General Statutes §§ 42-110b *et seq.* (CUTPA) and a violation of defendant's implied covenant of good faith and fair dealing with respect to their contractual agreements with plaintiff physicians and members of the Class; and

xiii.  whether plaintiffs and members of the Class have sustained damages and the proper measure of damages.

16.  The claims asserted by plaintiffs are typical of the claims of the members of the Class.

17.  Plaintiffs will fairly and adequately protect the interests of the Class, and plaintiffs have retained attorneys experienced in class and complex litigation as their counsel.

12

18.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

a.      absent a class action, Class members will continue to suffer damage and defendant's violations of law will proceed without remedy, while defendant continues to retain their ill-gotten gains;

b.      it would impose a substantial hardship on most individual members of the Class to prosecute individual actions;

c.      when the liability of the defendant has been adjudicated, claims of all members of the Class can be determined by the Court;

d.      this action will cause an orderly and expeditious administration of the Class claims, economies of time, effort and expense will be fostered, and uniformity of decisions will be insured; and

e.      this action presents no difficulties that would impede its management by the Court as a class action.

13

## BACKGROUND

19.     Anthem is among the largest health insurers in the Connecticut area, selling a variety of healthcare insurance products. Each healthcare product offered by Anthem in the State of Connecticut allows members to select physicians from a network of participating physicians.

20.     As described on Anthem's website, Anthem has, over the last seven years, exhibited a pattern of acquiring health plan after health plan across the United States in a "journey toward becoming a competitive, national organization."

21.     Anthem's numerous acquisitions and its cost-cutting measures are all part of its overall plan to turn the company into a "competitive, national organization" and achieve its overall financial objectives, including one of its goals, to take the company public.

22.     Specifically, during 1997, meetings were held by senior management for Anthem who advised utilization and claims review personnel that one of Anthem's goals was to ultimately transform the company from a non-profit organization to a publicly traded for-profit corporation.

23.     In order to achieve this goal, Anthem's management was required to embark upon an ambitious transformation of the organizational and corporate structure of

14

the company, requiring Anthem to dramatically increase its revenues and enrollment while simultaneously drastically reducing "per-member, per-month" ("PMPM") costs by, among other things, limiting access to and utilization of healthcare services.

24.    Anthem's wrongful delays and denials of payments to CSMS physicians are part of its improper, unfair and/or deceptive scheme aimed at reducing its PMPM costs in an effort to improve its "bottom line" and transform its organization into a for-profit, "competitive, national organization."

25.    As will be discussed in greater detail below, each participating physician is required to enter into a non-negotiable agreement with Anthem. Although the terms of the agreement are far less favorable to the physicians than to the defendant, physicians are willing to participate in defendant's health plans both to increase and maintain their patient volume, and to make finite and necessary healthcare services available to as many people in the community as possible. Defendant's practices during the relevant period of wrongfully delaying, impeding, denying, or reducing payment for all or part of the health care services provided by plaintiffs, and causing plaintiff physicians and other members of the Class to incur substantial time and expense in submitting claims, has harmed plaintiff physicians and other members of the Class in ways they could not have contemplated under the facially onerous terms of the agreement and threaten to

15

jeopardize their ability to continue providing healthcare services to plan members and the community at large.

## The Terms Of The Contracts

26.    At all relevant times, the relationships between plaintiffs and defendant have been governed by contracts for the provision of plaintiffs' healthcare services to defendant's plan members.  The pertinent or relevant terms of the contracts that each of the plaintiff physicians has entered into with defendant that are at issue in this case are identical or substantially similar.  These contracts all provide that the plaintiff physicians agree to render medically necessary healthcare services for covered services to defendant's plan members in exchange for reimbursement from defendant at specified rates within a specified period of time.  Specifically, each of the contracts the plaintiff physicians and other members of the Class have entered into with defendant provide that in exchange for providing covered services, physicians will receive "payment in full for his/her/its Covered Services...as set forth in Schedule B."  In this regard, these contracts provide that physicians shall "provide Covered Services in accordance with applicable laws and standards of care and skill prevailing in the Provider's practice community."

16

**Defendant's Failure To Provide Participating Physicians With Sufficient Information**

27. Despite requests by participating physicians to do so, Anthem has refused to provide participating physicians with fee schedules to be applied to the codes for covered procedural terminology recognized by physicians and insurers for reimbursement (hereinafter referred to as "CPT Codes"). Anthem is therefore at liberty to amend the fee schedules without notice to or consultation with the participating physicians.

28. In addition, in order to receive payment under the contract, physicians are required to submit "clean claims" that comply with defendant's administrative policies and procedures within 120 days of providing the Covered Service. Payment in full is due within 60 days of "receipt of a clean claim, as described in the Administrative Policies and Procedures and determined by Anthem BC&BS in its sole discretion."

29. Although defendant agrees to "communicate the Administrative Policies and Procedures to the Provider," participating physicians are not informed with respect to the guidelines followed by defendant in determining whether a claim is "clean." Moreover, under the terms of the agreement, defendant is not bound to follow a consistent set of guidelines, rather, it is at liberty to change the guidelines from one claim to another. Defendant has used its discretion to wrongfully deny and/or delay payment to

17

participating physicians and in so doing has frustrated the purposes of the contract and

violated its implied duty of good faith and fair dealing.

30.     Moreover, according to the express terms of the agreement, participating

physicians are also required to cooperate with defendant in its efforts to conduct

utilization/quality management. The agreement states that:

> [t]he Provider shall cooperate with Anthem BC&BS in its conduct of
> Utilization/Quality Management including, without limitation, Quality
> Management site visits. He/she agrees that payment for any claim may be
> reduced or denied if Anthem BC&BS or its designee makes a Utilization/Quality
> Management determination that healthcare services provided by the Provider
> were not Covered Services because they were not medically necessary or were
> otherwise not eligible for payment under the applicable Plan.

31.     As the foregoing paragraph indicates, defendant employs "utilization

review" systems to determine whether healthcare services are medically necessary.

Neither the agreement nor any other document provided to participating physicians

contains any guidelines, policies, or procedures for determining whether a healthcare

service is "medically necessary." Much like the determination with respect to whether a

claim is "clean," the determination of medical necessity is within the sole discretion of

the defendant, and is subject to change from one claim to another.

32.     As forth in detail below, contrary to the terms of these agreements,

defendant has refused to pay for all or a portion of the medically necessary healthcare

18

services provided by plaintiffs to defendant's plan members and have delayed or reduced payment for other services. Additionally, defendant has failed to act in good faith, choosing instead to wrongfully exploit the utilization review process to delay and deny payment, and/or to compromise plaintiffs' ability to receive the reimbursement to which they are entitled.

## Anthem's Improper and Unfair Contracting Policies and Practices

33.     In order to treat patients who are insured by Anthem, Anthem requires physicians to enter into the aforementioned physician agreements with Anthem.

34.     In addition, if physicians refuse to sign Anthem's one-sided physician agreements, those physicians are effectively prevented from seeing and treating patients, including long-time patients, who receive their health insurance through one of Anthem's plans.

35.     In effect, physicians who object to contract provisions contained in Anthem's physician agreements are faced with an untenable choice. They can either accept these agreements that are unfair to both physicians and patients, or they can choose to no longer treat patients who are insured by Anthem.

19

## Defendant's Wrongful Denial Of Reimbursement For Medically Necessary Healthcare Services

36.    To avoid making timely and complete payments under its agreements, Anthem designed and has engaged in an improper, unfair and/or deceptive scheme aimed at plaintiffs and other members of the Class. that adversely affects plaintiff physicians and members of the Class. the defendant's plan members, and the general public, whereby Anthem delays, impedes, denies, or reduces payment of legitimate claims for reimbursement for medically necessary healthcare services rendered by plaintiffs to defendant's plan members.  Defendant has employed, and continue to employ, a variety of means to carry out their improper, unfair and/or deceptive scheme, as detailed below.

### Downcoding

37.    Anthem routinely and unjustifiably reduces payment to participating physicians for healthcare services rendered by "downcoding" the appropriate CPT Code submitted by a physician to a code with a lower reimbursement rate. The purpose and result of this automatic "downcoding" is to reduce payments due to physicians. Defendant engaged in these "downcoding" procedures through the use of software utilized by the defendant that is not based on medical necessity grounds and which downcode claims. The sole purpose of this practice is to arbitrarily and wrongfully reduce payments to physicians.

20

38.     In contravention of American Medical Association ("AMA") regulations,
defendant downcodes claims by utilizing a software program which is not designed for
that purpose. In reality, such programs are designed specifically to monitor, identify and
measure only the frequency of codes submitted by a given physician, not to determine
whether a claim should be paid or denied. This is known as "patterns" review. If the
computer program identifies a given physician as an outlier who performs certain
services more frequently than other physicians, the program will flag that physician's
claim for that service. The program is intended to be used only for such identification of
outliers, to enable a review of whether the frequently-provided service is in fact
medically appropriate in a given instance. Nevertheless, defendant improperly uses the
program to identify claims so that it can automatically downcode such claims, without
performing a chart audit or review to determine whether the downcoding is appropriate.

39.     These kinds of "reviews" are known by the AMA as "black box edits"
because they are based upon statistical data that is not available or reviewable by
physicians or the AMA. In fact, despite the fact that the downcoding has been repeatedly
shown to have been erroneously performed, when such downcodes are appealed,
defendant upholds the downcoding in every case, without providing any explanation (as
is required to be in compliance with proper E/M coding and documentation guidelines).

21

Furthermore, defendant performs these reviews without performing a documented review
by a certified procedural coder or any other qualified expert in coding and
documentation.

## Bundling/Global Periods

40. In cases where multiple healthcare services are provided to a patient on the
same day or in the same visit, Anthem routinely and unjustifiably refuses to pay for all or
part of the healthcare services provided -- a practice known as "bundling." Anthem also
routinely and unjustifiably denies payment for treatments that fall within its ever-
expanding "global period" (a period during which additional follow-up treatment is
included in the original cost of coverage for a procedure), notwithstanding the fact that
the additional treatment is wholly unrelated to the treatment for which the global period is
applicable. There are "global periods" associated with major and minor surgeries during
which these associated services are presumed to be part of the "package." These periods
range from zero or ten days for minor surgeries to 90 days for major surgeries. In fact,
AMA rules require that doctors additionally be paid for unrelated E/M services that are
performed in addition to the "package" surrounding medically indicated procedure, even
when the services are provided during the "global period" of the procedure. Defendant,
nevertheless, systematically and wrongfully denies payment for such services.

22

**Modifiers**

41.     Anthem routinely and unjustifiably denies increased level of

reimbursement or "modifiers" for complicated cases that require participating physicians

to expend additional time and resources.  Physicians also use "modifiers" when billing a

service or procedure that is particularly complicated or otherwise out of the ordinary, so

that they may be properly compensated for the elevated level of care attendant to more

complicated services.

42.     Under AMA rules, no additional documentation is required for doctors to

be paid for these additional or more complex services.  Significantly, there is no

provision for non-payment, downcoding, or change or type of service with the use of

modifiers in the AMA or CPT rules.

**Defendant's Wrongful Denial Of Medical Claims To Achieve Internal Financial Targets**

43.     Anthem also systematically denies claims in order to achieve financial

benchmarks without regard for individual medical needs.  Anthem employees who are

either unwilling or unable to engage in this practice are reprimanded and/or terminated.

During the Class Period, in an effort to reduce PMPM costs, Anthem began to track

claims personnel's approval of member services.  Utilization and claims personnel were

instructed by Anthem that certain targets and goals were established for utilization of

23

healthcare services, including, *inter alia*, hospital stays, skilled nursing facility utilization and home care utilization. Anthem would then monitor and track claims personnel's compliance with the targets set by management.

44.     If a specific target was not met, the UM supervisor responsible for overseeing the particular claims personnel would be reprimanded by senior management and verbally warned that there would be serious ramifications if a particular target was not met the following month. The UM supervisor would then communicate this information to his or her staff.

45.     Conversely, claims personnel could receive a bonus (as much as 25% of their salary) based upon whether the savings were achieved through attainment of the company's utilization targets. Anthem's criteria to determine medical necessity are not based upon individual medical need, but rather Anthem applies its criteria to meet its financial goals and utilization targets. For example, at the end of the month, in order to meet cost-cutting targets, medical necessity criteria are interpreted more strictly.

46.     Anthem closely monitors the utilization rates of participating physicians, and penalizes them for "high utilization." During the Class Period, Anthem, in order to reduce utilization of healthcare services, established an undisclosed policy to "[m]ine claims data to identify high utilizing providers and work with them on *corrective action*

24

DRUBNER, HARTLEY, O'CONNOR & MENGACCI, L L C  ATTORNEYS AT LAW
500 CHASE PARKWAY, WATERBURY, CONNECTICUT 06708
JURIS #16922 • (203) 753-9291 • FAX # (203) 753-6373

*plans or terminate them.* " (Emphasis added). In essence, Anthem punishes doctors for making medical decisions based solely on its independent clinical judgment, rather than on the goal of utilization reduction.

## Anthem Improperly Influences Claims Administrators

47. Anthem's claims administrators are responsible for the review, and ultimate approval or denial, of claims for health care services. Anthem, through its undisclosed systemic internal policies and practices, places tremendous pressure on these claims administrators to achieve cost targets by reducing the overall utilization of healthcare services.

48. Anthem drastically reduced the number of UM staff handling member inquiries in the UM department. Anthem instituted a policy limiting the amount of time that may be spent reviewing a case to just a few minutes. These policies result in coverage often being denied arbitrarily and unnecessarily. Therefore, healthcare services recommended by plaintiff physicians and members of the Class will routinely be denied by a non-physician reviewer basing his or her determinations on arbitrary guidelines, in some instances, even after the services have been provided. In fact, even if a physician reviewer is involved at all in the review of a case, he or she will routinely rubber stamp the guideline-based denial without an independent consideration of the medical necessity

25

of the services involved, and without consulting a physician with expertise in the particular area of medicine relevant to the case under consideration.

49.     Compounding the pressures placed upon the UM staff to deny coverage are the instructions by non-physician utilization staff that review nurses should remain focused on their financial targets when making their utilization determinations.

50.     Moreover, clinical review nursing staff have been given psychological testing to assess their ability to make decisions based on financial considerations at the expense of member healthcare. Nurses who received unfavorable assessments in this regard were told that they would have to learn to make decisions based on financial considerations or face termination.

51.     In addition, during this time, Anthem also reduced the salaries of clinical staff nurses, thereby rendering these decision-makers more susceptible to financial incentives geared toward reducing coverage approvals.

52.     By subjecting its utilization management staff to these extreme pressures, Anthem has made it virtually impossible for its UM staff to perform its function of properly assessing each individual claim for medical necessity

26

## Anthem Implements A System of Financial Rewards and Punishments Upon UM Staff In Order To Meet Cost Targets

53.     Anthem's UM staff are given financial incentives to attain cost-cutting benchmarks (by cutting utilization), and are punished when these goals are not met, a policy that clearly encourages UM staff to render more denial decisions in their reviews.

54.     In fact, during the Class Period, in an effort to reduce PMPM costs, Anthem began to track claims personnel's approval of member services. Claims personnel were instructed by Anthem that certain targets and goals were established for measuring member utilization of healthcare services, including, *inter alia*, hospital stays, skilled nursing facility utilization and home care utilization. Anthem would then monitor and track on a monthly basis, claims personnel's compliance with the targets and goals set by management.

55.     The UM staff and supervisor in charge of each group are given responsibility for meeting the monthly financial goals for their particular division. If a specific target was not met in a particular month, the medical manager responsible for overseeing the particular claims personnel would be reprimanded by senior management and verbally warned that there would be serious ramifications if that particular target was not met the following month. The medical manager would then communicate this information to his or her staff.

27

56.     Indeed, Anthem's internal utilization management policies state that "[d]ays of care and other cost savings performance targets have been clearly communicated to the Utilization Management Department management staff and *variance from these targets is reported, analyzed, and acted on at least quarterly.*" (Emphasis added.)

57.     As a consequence of these policies and procedures, all of the medical staff involved in utilization management must either meet the dictated monthly financial targets by all means necessary or risk losing their jobs. In addition, medical managers routinely review the financial information for their respective divisions mid-month. and often more closely scrutinize claims toward the end of the month in an effort to meet the monthly targets.

### Anthem Monitors and Penalizes Physicians for High Utilization

58.     Likewise, participating physicians are monitored for utilization and are reprimanded and/or terminated for high utilization. In this regard, Anthem improperly employs the use of computer software programs to arbitrarily deny claims submitted by physicians who have been identified as having a high rate of utilization.

28

DRUBNER, HARTLEY, O'CONNOR & MENGACCI, L.L.C. ATTORNEYS AT LAW
500 CHASE PARKWAY, WATERBURY, CONNECTICUT 06708
JURIS #16922 • (203) 753-9291 • FAX # (203) 753-6373

## Defendant's Improper Use Of M&R Guidelines

59.     Significantly, defendant's contracts with physicians require that
participants "provide Covered Services in accordance with applicable laws and standards
of care and skill prevailing in the Provider's practice community." Contrary to
defendant's contractual undertakings, Anthem has adopted systemic internal policies to
govern the medical necessity determination process, which are in direct conflict with
applicable laws and standards of care and skill prevailing in the community.  Anthem
does not make medical necessity decisions in accordance with applicable professional
and legal standards. Instead, Anthem surreptitiously uses inappropriate and inaccurate
"guidelines" for these crucial decisions.

60.     To make these decisions, Anthem utilizes clinical guidelines promulgated
by third party actuarial companies, including those developed and marketed by Milliman
and Robertson ("M&R") as a means to control healthcare expenses through application of
its stringent guidelines. Anthem's primary purpose in relying on M&R and related
guidelines is to reduce medical expenses by minimizing the level of medical care that it
must cover, in its ongoing efforts to maximize its bottom line.

61.     The M&R guidelines set forth the level of medical care for which Anthem
will provide coverage for its subscribers, including the number of days of hospitalization

29

permitted for a particular condition and when members will be referred to specialists. Both Anthem's non-physician reviewers and its medical directors rely on these guidelines for determining medical necessity, particularly since they often are not trained or experienced in making clinical judgments concerning most of the conditions they face.

62.    The M&R guidelines are not "based on sound scientific research findings, professional literature, clinical experience, appropriate, well-recognized methodologies," and do not "reflect the standard of care practiced in the medical/hospital community in the clinical practice of medicine," as is required by The Board of Trustees of the American College of Medical Quality.

63.    Instead, M&R uses actuarial tables to identify the amount of medical care (including length of hospital stays) required in the "optimal" or "best case" circumstances. M&R develops its guidelines by determining, on an actuarial basis, the 10 percent of patients who had the shortest length of hospitalization for particular treatments and setting this as the standard, rather than attempting to establish appropriate guidelines for the "average" or most common patient. In other words, *fully 90 percent* of the patients sampled by M&R needed *more* hospitalization than what the M&R guidelines recommend, and yet M&R's recommendations are used by Anthem as the standard by which to judge *all* coverage decisions based on medical necessity.

30

DRUBNER, HARTLEY, O'CONNOR & MENGACCI, L L.C. ATTORNEYS AT LAW
500 CHASE PARKWAY, WATERBURY, CONNECTICUT 06708
JURIS #16922 • (203) 753-9291 • FAX # (203) 753-6373

64.    Because the M&R guidelines are based on the experiences of a small minority of patients who respond much more favorably to surgery or other treatment than the average individual, the "optimal" scenarios they describe usually are inappropriate for the average patient. As a result, the M&R guidelines for various procedures and illnesses generally call for a hospital discharge in less than half the time spent by the average patient. As explained in a report by the Public Advocate of New York, "the detailed and controversial [M&R] practice guidelines . . . are considerably shorter" than both national averages and the recommendations of most medical specialty organizations, and "are based on >best cases' when, in fact, many cases have complications." *What Ails HMOs B A Consumer Diagnosis and Rx* (January 1996) at 5. As an example, M&R prescribes that mild stroke patients be discharged from the hospital within two days, while the American Heart Association concludes that such patients need at least a week of hospitalization. Moreover, "while M&R recommends discharging a [double] bypass patient in four days, the national average is currently eight days." *Id.* at 78. Other "extremely short" M&R recommendations for a hospital length of stay include: four days for a heart attack, two days for pneumonia, one day for removal of a ruptured disc, one day for a modified radical mastectomy, one day for a gallbladder removal, one day for an appendectomy, and a mere *6-12 hours* for a tonsillectomy or a vaginal delivery. *Id.*

31

65.     As a result of Anthem's adoption and inappropriate use of the M&R
guidelines, its members are frequently denied coverage for treatment that is in fact
medically necessary but has been deemed unnecessary when measured by the unrealistic
M&R guidelines. These determinations are sometimes made retroactively, after
treatment has been provided, forcing plaintiff physicians and other members of the Class
to absorb the cost. Where the determination is made prior to treatment, plaintiff
physicians are forced to expend time and resources appealing decisions. In these
situations members are often in dire medical need, and time is crucial. In the event
defendant continues to refuse treatment, plaintiff physicians may have an independent
moral and ethical obligation to provide treatment and absorb the loss.

66.     In addition to the M&R guidelines' being used as a basis for the denial of
coverage, the monitoring of physicians' utilization rates described above is based upon an
assessment of their adherence to or divergence from targets set forth in the M&R
guidelines, including:

- emergency room utilization of patients by primary care physicians;

- referrals to specialists by primary care physicians;

- average number of member visits to specialists;

- mental health or behavior health utilization; and

32

- percentage of procedures performed inpatient that are typically outpatient
procedures.

67.     Through improper application of M&R guidelines, Anthem's claims
handlers deny claims without regard to the medical necessity of the members, and
without clinical review and/or consultation. For instance, a participating physician was
denied authorization to provide continued postoperative inpatient treatment three days
after a member patient was operated on by the physician. Although the denial of services
was purportedly based on a "physician review of the medical information provided" the
text of the letter did not contain the name of the physician nor did it contain information
with respect to the medical basis for the determination. As this example demonstrates,
without considering individual factors impacting patients, such as co-morbidities and
other relevant clinical data, Anthem will deny reimbursement for healthcare services as
being unnecessary, even though the plan members' attending physicians have determined
that particular healthcare services are necessary.

### Defendant's Failure To Provide Adequate Staffing

68.     Anthem has created and maintained an administrative system that is
inefficient and designed to frustrate payment of participating physicians by requiring
physicians to make excessive telephone inquiries prior to obtaining pre-certification for

33

approval to provide healthcare services, and in order to seek reimbursement.

Participating physicians are routinely put on hold for extended periods of time and are routinely required to talk to numerous individuals prior to having their call directed to the proper authority. Furthermore, failure to comply with any administrative policy or procedure is grounds for denial of payment. For instance, Anthem denied payment to a physician who provided emergency medical services to a plan member for failure to obtain pre-certification, notwithstanding the fact that the physician diligently sought out the patient's insurance information and, through no fault of his own, was given incorrect information as to the identity of the patient's insurer.

### Defendant's Failure To Make Timely Payments And Pay Interest

69.     Pursuant to the terms of its contracts with plaintiffs, Anthem is required to pay claims for reimbursement within a specified period of time. In violation of these terms, Anthem routinely and unjustifiably fails to make payments for proper claims within the contractually allotted time period.

70.     Additionally, pursuant to Connecticut General Statutes § 38a-816(15), Anthem is required to make payment to the plaintiff physicians and other members of the Class within 45 days of receipt of the bill for healthcare services rendered to defendant's plan members, unless the bill is disputed in good faith. In direct contravention of this

34

requirement, Anthem routinely and unjustifiably fails to make payments within the statutorily prescribed time period. Moreover, defendant fails to pay interest for claims that are improperly withheld.

71.     Moreover, pursuant to § 38a-816(15) Anthem is required to notify the plaintiff physicians and other members of the Class in writing, within 30 days of receipt of a bill for healthcare services rendered to defendant's plan members that it is disputing all or a portion of a bill. Anthem routinely and unjustifiably fails to comply with the provisions of this statute.

72.     Similarly, after a denial has been overturned on appeal, Anthem fails to pay interest for the period during which reimbursement was wrongfully withheld.

## The Impact Of Defendant's Scheme

73.     As a result of Anthem's failure to cooperate with plaintiff physicians and members of the Class in reimbursing them for medically necessary healthcare services rendered to defendant's members, plaintiffs have not received monies to which they are contractually entitled and have been required to expend an unreasonable amount of time and resources in efforts to obtain these monies.

35

74.     Over the past several years, Anthem has increasingly applied the

foregoing improper policies and practices, resulting in the rapid rise in the number of

wrongful denials of claims for reimbursement.

75.     In addition to the loss of lawful reimbursement, plaintiffs and the members

of the Class have been required to expend large sums attempting to compel Anthem to

pay monies owed.

76.     Anthem's improper, unfair and/or deceptive course of conduct and

business practices have resulted in great harm to the practices of plaintiffs and other

members of the Class.

## FIRST COUNT: (BREACH OF CONTRACT)

77.     Plaintiffs incorporate by reference the foregoing paragraphs as if fully set

forth herein and further allege as follows.

78.     Defendant was and is a party to various written contracts for the provision

of healthcare services by plaintiffs and members of the Class to defendant's plan

members.  Under the terms of these contracts, defendant was and is obligated to pay for

medically necessary healthcare services provided by plaintiffs and members of the Class

to defendant's plan members.  Defendant is obligated to make such payments at specified

rates within a specified period of time upon receipt of the appropriate claim forms and/or

36

provide timely notification of any denials of claims for reimbursement and the reasoning underlying any such denials.

79.     Pursuant to the terms of these contracts, plaintiffs and members of the Class provided medically necessary covered services to defendant's plan members and submitted claims for payment in accordance with their obligations and complied with all other material aspects of the contracts.

80.     Defendant has, nevertheless, breached its contractual obligations by engaging in a myriad of wrongful acts and practices having the purpose and effect of delaying, impeding, reducing and/or eliminating altogether the ability of plaintiffs and members of the Class to receive the reimbursement to which they are contractually and lawfully entitled.

81.     Defendant has breached its contractual obligations to the plaintiffs and members of the Class by engaging in the acts and practices set forth above, including, among others:

f.      Systematically denying and/or reducing physicians' reimbursement for medically necessary services through (i) improper bundling; (ii) improper downcoding; (iii) failing to pay modifiers; (iv) improper application of global periods; and (v) improper use of patterns review software;

37

DRUBNER, HARTLEY, O'CONNOR & MENGACCI, L L C  ATTORNEYS AT LAW
500 CHASE PARKWAY, WATERBURY, CONNECTICUT 06708
JURIS #16922 • (203) 753-9291 • FAX # (203) 753-6373

g.      Denying medically necessary claims through the improper use of
so-called "guidelines" which do not comply with accepted medical treatment standards;

h.      Failing to adequately disclose material information regarding
defendant's utilization review and quality management policies and fees schedules and
arbitrarily altering these policies and schedules without adequate disclosure:

i.      Forcing physicians and their staff to expend an unreasonable
amount of time and resources attempting to obtain the reimbursement to which they are
entitled;

j.      Failing to make payments within the time periods allotted under
the contracts and applicable Connecticut State law;

k.      Failing to pay interest on late claims as required under applicable
Connecticut State law;

l.      Failing to provide an adequate explanation for the denial of claims
for reimbursement; and

m.      Failing to ensure that procedures exist to properly consider
physicians' claims for reimbursement, both initially and in the appeals process.

82.     As a proximate result of the foregoing, plaintiffs and members of the Class
have been damaged in an amount to be determined at the trial of this action.

38

## SECOND COUNT: (BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING)

83.     Plaintiffs incorporate by reference the foregoing paragraphs as if fully set forth herein and further allege as follows.

84.     By virtue of the contractual relationship between the parties, defendant owed plaintiffs and members of the Class an implied duty of good faith and fair dealing, which defendant has breached by engaging in the numerous acts and practices set forth in this Complaint, which are designed to delay, impede, and/or eliminate altogether the ability of plaintiffs and the Class to receive reimbursement for the services provided to defendant's plan members.

85.     Defendant has further breached its implied duty of good faith and fair dealing by failing to include interest on the amounts that it belatedly pays, without justification, to plaintiffs and members of the Class, despite defendant's obligations to do so under its contracts and CUIPA.

86.     Defendant has further breached its implied duty of good faith and fair dealing by refusing to provide adequate and/or legitimate explanations for its delay, reduction or denial of payments to physicians and by failing to provide sufficient information and procedures to ensure that physicians' claims for reimbursement are properly considered, both initially and in the appeals process set forth in the contracts.

39

87.     Defendant has further breached its implied duty of good faith and fair dealing by engaging in the unfair and deceptive acts and practices described herein, thereby requiring plaintiffs and members of the Class to expend an unreasonable amount of time and resources simply pursuing the payments to which they are contractually and lawfully entitled.

88.     As a proximate result of the foregoing, plaintiffs and the Class have been damaged in an amount to be determined at the trial of this action.

## THIRD COUNT: (VIOLATION OF CUTPA)

89.     Plaintiffs incorporate by reference the foregoing paragraphs as if fully set forth herein and further allege as follows.

90.     CUTPA prohibits businesses from using unfair or deceptive acts or practices in conducting their business.

91.     In violation of CUTPA, defendant has engaged in wide-ranging variety of unfair and deceptive acts and practices in conducting its business that have caused considerable loss to plaintiffs and the Class. These acts and practices jeopardize both the quality of medical care in the State of Connecticut and the ability of the people within the state to obtain the range of medical services and physicians that should be available to them.

40

92.     Contrary to defendant's representations and obligations. defendant has unfairly and deceptively employed an arsenal of acts and practices designed to delay, hinder, reduce and/or eliminate making payments to plaintiffs and the Class for covered services provided to defendant's plan members.

93.     As described above, the unfair and deceptive acts and practices employed by defendant in violation of CUTPA include:

a.      Systematically denying and/or reducing physicians' reimbursement for medically necessary services through: (i) improper bundling; (ii) improper downcoding; (iii) failing to pay modifiers; (iv) improper application of global periods; and (v) improper use of patterns review software;

b.      Denying medically necessary claims through the improper use of so-called "guidelines" which do not comply with accepted medical treatment standards;

c.      Failing to adequately disclose material information regarding defendant's utilization review and quality management policies and fees schedules and arbitrarily altering these policies and schedules without adequate disclosure;

d.      Forcing physicians and their staff to expend an unreasonable amount of time and resources attempting to obtain the reimbursement to which they are entitled;

41

e.     Failing to make payments within the time periods allotted under the contracts and applicable Connecticut State law;

f.     Failing to pay interest on late claims as required under applicable Connecticut State law;

g.     Failing to provide an adequate explanation for the denial of claims for reimbursement;

h.     Failing to ensure that procedures exist so that physicians' claims for reimbursement are appropriately and adequately considered in a timely manner, both initially and in the appeals process;

i.     Exploiting the parties' unequal bargaining power in order to force physicians to enter into one-sided contracts on a take-it-or-leave-it basis; and

j.     Refusing to negotiate with physicians regarding the terms of these contracts, even when they impact significant quality of care issues.

94.     Indeed, that defendant's conduct violates CUIPA in and of itself constitutes a violation of CUTPA.

95.     The many unfair and deceptive acts and practices that defendant has used in conducting its business have proximately caused plaintiffs and members of the Class to suffer financial losses and increased overhead to such an extent as to jeopardize the

42

financial wherewithal of the physicians' medical practices themselves, as well as their ability to continue to provide their patients appropriate medical care in the face of defendant's egregious conduct.

96.     The unfair and deceptive acts and practices which defendant's have engaged in have also been damaging to the physician-patient relationship as well as to the goodwill and professional standing of the plaintiffs' medical practices.

97.     As a proximate result of the foregoing, plaintiffs and the Class have been damaged in an amount to be determined at the trial of this action. Moreover, in addition to the actual damages suffered by the plaintiffs and the Class, the egregious nature of defendant's systematic unfair and deceptive conduct warrants an award of punitive damages, as well of reasonable attorneys' fees and costs, as are specifically provided for under CUTPA.

## FOURTH COUNT: (NEGLIGENT MISREPRESENTATION)

98.     Plaintiffs incorporate by reference the foregoing paragraphs as if fully set forth herein and further allege as follows.

99.     In order to induce plaintiffs and members of the Class to become participating physicians, defendant has made material misrepresentations that participating physicians would be fully paid in a timely manner for medically necessary

43

services that they appropriately provided to their patients and for which they submitted proper claims documentation. These misrepresentations were contained in standardized materials that defendant provided to physicians, including agreements and associated attachments.

100.    Defendant knew and intended that plaintiffs and members of the Class would rely on defendant's representations.

101.    Defendant had a duty to plaintiffs and the Class to fully and accurately represent the services that participating physicians would be reimbursed for providing, the standards governing provision of those services, and the amounts and procedures by which participating physicians would be paid.

102.    Defendant knew, ought to have known, and had the duty to know that defendant would not pay plaintiffs and the Class timely and fully for the services that they appropriately provided to their patients and for which they submitted proper claims documentation.

103.    Defendant knew, ought to have known, and had the duty to know that defendant would instead use various acts and practices, as set forth in this Complaint, to delay, hinder and reduce payments to the plaintiffs and the Class, including:

44

a. Systematically denying and/or reducing physicians' reimbursement for medically necessary services through: (i) improper bundling; (ii) improper downcoding; (iii) failing to pay modifiers; (iv) improper application of global periods; and (v) improper use of patterns review software;

b. Denying medically necessary claims through the improper use of so-called "guidelines" which do not comply with accepted medical treatment standards;

c. Failing to adequately disclose material information regarding defendant's utilization review and quality management policies and fees schedules and arbitrarily altering these policies and schedules without adequate disclosure;

d. Forcing physicians and their staff to expend an unreasonable amount of time and resources attempting to obtain the reimbursement to which they are entitled;

e. Failing to make payments within the time periods allotted under the contracts and applicable Connecticut State law;

f. Failing to pay interest on late claims as required under applicable Connecticut State law;

g. Failing to provide an adequate explanation for the denial of claims for reimbursement;

45

h.     Failing to ensure that procedures exist so that physicians' claims for reimbursement are appropriately and adequately considered in a timely manner, both initially and in the appeals process;

i.     Exploiting the parties' unequal bargaining power in order to force physicians to enter into one-sided contracts on a take-it-or-leave-it basis; and

j.     Refusing to negotiate with physicians regarding the terms of these contracts, even when they impact significant quality of care issues.

104.   Plaintiffs and members of the Class justifiably relied, to their detriment, on defendant's misrepresentations that the participating physicians would be fully paid in a timely manner when they submitted the proper claims documentation for the services that they appropriately provided to their patients.

105.   Defendant knew that plaintiffs and the Class would be harmed financially, as well as in their relationship with their patients, as plaintiffs and the Class indeed have been, by the wrongful, undisclosed practices that defendant utilized to reduce, hinder and deny payments to physicians who provided appropriate services and submitted the required claims documentation. In reliance on these misrepresentations, plaintiffs and members of the Class agreed to and did provide to defendant's members the medical services that the members needed and submitted proper claims documentation.

46

DRUBNER, HARTLEY, O'CONNOR & MENGACCI, L.L.C  ATTORNEYS AT LAW
500 CHASE PARKWAY, WATERBURY, CONNECTICUT 06708
JURIS #16922 • (203) 753-9291 • FAX # (203) 753-6373

106. By reason of the foregoing, plaintiffs and members of the Class have been damaged in an amount to be determined at the trial of this action.

**FIFTH COUNT: (UNJUST ENRICHMENT)**

107. Plaintiffs incorporate by reference the foregoing paragraphs as if fully set forth herein and further allege as follows.

108. Defendant charges and receives premiums from, or on behalf of, its members for the purpose of providing these members with coverage for healthcare services.

109. Defendant induced the plaintiffs and members of the Class to provide medical services to members of defendant's plan by misrepresenting that plaintiffs and the Class would be fully paid in a timely manner for the medically necessary services they provided and for which they submitted the appropriate claims documentation.

110. In reliance on these misrepresentations, plaintiffs and members of the Class agreed to and did provide to defendant's members the medical services that the members needed and submitted proper claims documentation.

111. Defendant has, nonetheless, wrongfully failed to timely and fully pay plaintiffs and members of the Class for the services they have provided to defendant's plan members.

47

112.   While delaying, reducing and denying payments to plaintiffs and the Class for the services they have provided, defendant has retained the premiums it has received for the purpose of providing coverage for those services.

113.   Defendant has therefore received the benefit of the services provided by the plaintiffs and the members of the Class while wrongfully retaining the premiums it has received that were intended to pay for such services.

114.   Defendant has therefore been unjustly enriched in the amount that the defendant has wrongfully retained.

115.   Furthermore, defendant routinely make late payments and yet refuses to pay plaintiffs and the Class interest on those late payments.

116.   Defendant is therefore also unjustly enriched in an amount equal to the time value of the payments that it belatedly makes to plaintiffs and the Class without paying interest.

117.   As a proximate result of the foregoing, plaintiffs and the Class have been damaged in an amount to be determined at the trial of this action.

48

1-cv-04015-FAM   Document 2   Entered on FLSD Docket 09/28/2001   Page

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs demand that, upon trial by jury, this Court enter judgment against defendant for themselves and the members of the Class as follows:

a      Declaring that defendant's practices as described herein are in breach of the contracts between the parties and are against public policy;

b      Determining that the action is a proper class action maintainable under Connecticut Rules of Court § 9-7 and certifying an appropriate plaintiffs' class;

c      Awarding plaintiffs and the Class their damages in an amount to be determined by the jury;

d      Awarding plaintiffs and the Class punitive damages against defendant in an amount to be determined by the jury;

e      Awarding plaintiffs and the Class permanent injunctive relief prohibiting, restraining, and enjoining defendant from: (i) continuing to direct its internal agents to reduce or fully deny reimbursement without regard to the validity or necessity of the services provided; (ii) continuing to employ so-called "guidelines" in an unintended manner to deny claims for reimbursement; (iii) continuing to bundle claims for separate procedures thereby denying plaintiffs all or part of the payment due for some procedures; (iv) denying payment of modifiers for cases that involve excessive time and resources;

49

DRUBNER, HARTLEY, O'CONNOR & MENGACCI, L.L.C. ATTORNEYS AT LAW
500 CHASE PARKWAY, WATERBURY, CONNECTICUT 06708
JURIS #16922 • (203) 753-9291 • FAX # (203) 753-6373

(v) continuing to downcode procedures performed by plaintiff physicians; (vi) continuing to use software that automatically downcodes healthcare services provided by plaintiff physicians; (vii) continuing to deny reimbursement to plaintiff physicians who are identified as "high utilizers"; (viii) continuing to violate provisions of Connecticut statutory law regarding payment and interest; (ix) forcing physicians and their staff to expend an unreasonable amount of time and resources attempting to obtain the reimbursement to which they are entitled; failing to provide an adequate explanation for the denial of claims for reimbursement; (x) failing to ensure that procedures exist so that physicians' claims for reimbursement are appropriately and adequately considered in a timely manner, both initially and in the appeals process; (xi) exploiting the parties' unequal bargaining power in order to force physicians to enter into one-sided contracts on a take it or leave it basis; and (xii) otherwise interfering with or obstructing the right to full and timely reimbursement to plaintiffs and members of the Class.

f.      Awarding plaintiffs and the Class their costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees and other costs; and

g.      Granting such other and further relief as the Court deems just and proper.

50

DRUBNER, HARTLEY, O'CONNOR & MENGACCI, L.L.C. ATTORNEYS AT LAW
500 CHASE PARKWAY, WATERBURY, CONNECTICUT 06708

Dated: February 14, 2001

THE PLAINTIFFS

By: _____
James E. Hartley, Jr.
Gary B. O'Connor
H.C. Kwak
DRUBNER, HARTLEY, O'CONNOR
& MENGACCI, L.L.C.
500 Chase Parkway
Waterbury, CT 06708
Tel:   (203) 753-9291
Fax:   (203) 753-6373

Gregory J. Pepe
NEUBERT, PEPE & MONTEITH, P.C.
195 Church Street, 13th Floor
New Haven, CT 06510-2026
Tel:   (203) 821-2000
Fax:   (203) 821-2009

Christopher A. Seeger
Stephen A. Weiss
SEEGER WEISS LLP
One William Street
New York, NY 10004
Tel:   (203) 584-0700
Fax:   (203) 584-0799

*Their Attorneys*

51

RETURN DATE: MARCH 13, 2001        :        SUPERIOR COURT

STEPHEN R. LEVINSON, M.D., KAREN
LAUGEL, M.D. and J. KEVIN LYNCH,
M.D., on behalf of themselves and others
similarly situated,                :        J. D. OF NEW HAVEN

VS.                               :        AT NEW HAVEN

ANTHEM HEALTH PLANS, INC., d/b/a
ANTHEM BLUE CROSS AND BLUE
SHIELD OF CONNECTICUT             :        FEBRUARY 14, 2001

## STATEMENT OF AMOUNT IN DEMAND

The amount in demand is not less than FIFTEEN THOUSAND ($15,000.00)

DOLLARS, exclusive of costs and interest.

THE PLAINTIFFS

By: _____

James E. Hartley, Jr.
Gary B. O'Connor
H.C. Kwak
DRUBNER, HARTLEY, O'CONNOR
& MENGACCI, L.L.C.
500 Chase Parkway
Waterbury, CT 06708
Tel:   (203) 753-9291
Fax:   (203) 753-6373

52

Gregory J. Pepe
NEUBERT, PEPE & MONTEITH, P.C.
195 Church Street, 13th Floor
New Haven, CT 06510-2026
Tel:   (203) 821-2000
Fax:  (203) 821-2009

Christopher A. Seeger
Stephen A. Weiss
SEEGER WEISS LLP
One William Street
New York, NY 10004
Tel:   (203) 584-0700
Fax:  (203) 584-0799

*Their Attorneys*

53

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

STEPHEN R. LEVINSON., M.D., KAREN
LAUGEL, M.D., and J. KEVIN LYNCH,
M.D., on behalf of themselves and other
similarly situated,

           Plaintiffs,

           *v.*

ANTHEM HEALTH PLANS, INC. d/b/a
ANTHEM BLUE CROSS AND BLUE
SHIELD OF CONNECTICUT,

           Defendant.

Civil Action _____

March 16, 2001

## NOTICE OF FILING PETITION IN STATE COURT

The undersigned represents that, on March 16, 2001, he filed with the Clerk of the

Superior Court of the State of Connecticut, Judicial District at New Haven, 235 Church Street,

New Haven, Connecticut, a copy of the petitioner/defendant's Petition for Removal by filing said

copy with the Clerk of the Superior Court, New Haven Judicial District, 235 Church Street, New

Haven, Connecticut.

Respectfully submitted,

ANTHEM PLANS, INC.

By: _____

Patrick M. Noonan (Fed. Bar # ct00189)
Michael G. Durham (Fed Bar # ct05342)
DELANEY, ZEMETIS, DONAHUE,
  DURHAM & NOONAN
741 Boston Post Road
Guilford, CT 06437

**DELANEY, ZEMETIS, DONAHUE, DURHAM & NOONAN, P.C.**
CONCEPT PARK • 741 BOSTON POST ROAD
GUILFORD, CONNECTICUT 06437
TEL: (203) 458-9168 • FAX: (203) 458-4424
JURIS NO. 415438

## CERTIFICATION

This is to certify that a copy of the foregoing was mailed, postage prepaid, on the above-written date, to:

James E. Hartley, Jr.
Drubner, Hartley, O'Conner & Mengacci, L.L.C.
500 Chase Parkway
Waterbury, CT 06708
        Tel: (203) 753-9291
        Fax: (203) 753-6373

Gregory J. Pepe
Neubert, Pepe & Monteith, P.C.
195 Church Street, 13th Floor
New Haven, CT 06510-2026-
        Tel: (203) 821-2000
        Fax: (203) 821-2009

Christopher A. Seeger
Stephen A. Weiss
Seeger Weiss, L.L.P.
One William Street
New York, NY 10004
        Tel: (203) 584-0700
        Fax: (203) 584-0799

Patrick M. Noonan

| DOCKET NO. CV-01-0448288-S | : | SUPERIOR COURT |
| STEPHEN R. LEVINSON, M.D., ET AL | : | J.D. OF NEW HAVEN |
| vs. | : | AT NEW HAVEN |
| ANTHEM PLANS, INC. | : | March 16, 2001 |

## NOTICE OF FILING PETITION FOR REMOVAL

PLEASE TAKE NOTICE that, on March 16, 2001, the defendant, Anthem Health Plans, Inc. d/b/a Anthem Blue Cross and Blue Shield of Connecticut ("Anthem"), filed its Petition for Removal, a copy of which is attached hereto, in the Office of the Clerk of the United States District Court for the District of Connecticut.

You also are advised that the aforesaid defendant, upon filing of the Petition for Removal, filed a copy of the Petition with the Clerk of the Superior Court, Judicial District of New Haven at New Haven, in accordance with Section 1446(d) of Title 28 of the United States Code.

THE DEFENDANT
ANTHEM PLANS, INC.

By: _____

Patrick M. Noonan
Delaney, Zemetis, Donahue,
Durham & Noonan, P.C.
741 Boston Post Road
Guilford, CT 06437
(203) 458-9168

DELANEY, ZEMETIS, DONAHUE, DURHAM & NOONAN, P.C.
CONCEPT PARK • 741 BOSTON POST ROAD
GUILFORD, CONNECTICUT 06437
TEL (203) 458-9168 • FAX (203) 458-4424
JURIS NO 415438

## **CERTIFICATION**

This is to certify that a copy of the foregoing was mailed, postage prepaid, on the above-written date, to:

James E. Hartley, Jr.
Drubner, Hartley, O'Conner & Mengacci, L.L.C.
500 Chase Parkway
Waterbury, CT 06708
    Tel: (203) 753-9291
    Fax: (203) 753-6373

Gregory J. Pepe
Neubert, Pepe & Monteith, P.C.
195 Church Street, 13th Floor
New Haven, CT 06510-2026-
    Tel: (203) 821-2000
    Fax: (203) 821-2009

Christopher A. Seeger
Stephen A. Weiss
Seeger Weiss, L.L.P.
One William Street
New York, NY 10004
    Tel: (203) 584-0700
    Fax: (203) 584-0799

Patrick M. Noonan

The JS–44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Stephen R. Levinson, M.D., Karen Laugel, M.D., and J. Kevin Lynch, M.D.

## DEFENDANTS

Anthem Health Plans, Inc., d/b/a Anthem Blue Cross and Blue Shield of Connecticut

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF   Bridgeport
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT New Haven
(IN U.S. PLAINTIFF CASES ONLY)

NOTE    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(C)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

James E. Hartley, Jr., Esquire
Drubner, Hartley, O'Connor & Mengacci, LLC
500 Chase Parkway, Waterbury, CT 06708

ATTORNEYS (IF KNOWN)

Michael Durham/Patrick Noonan, Esquire
Delaney, Zemetis, Donahue, Durham & Noonan
741 Boston Post Rd., Guilford, CT 06437

## II. BASIS OF JURISDICTION   (PLACE AN "X" IN ONE BOX ONLY)

☐ 1  U.S. Government Plaintiff

☒ 3  Federal Question
(U.S. Government Not a Party)

☐ 2  U.S. Government Defendant

☐ 4  Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES   (PLACE AN "X" IN ONE BOX FOR PLAINTIFF
(For Diversity Cases Only)                AND ONE BOX FOR DEFENDANT)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury — | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | ☐ 423 Withdrawal | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury — | of Property 21 USC 881 | 28 USC 157 | ☐ 450 Commerce/ICC Rates/etc |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers | Injury Product Liability | ☐ 650 Airline Regs. | | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | | ☐ 660 Occupational | ☐ 820 Copyrights | ☐ 810 Selective Service |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | ☐ 830 Patent | ☐ 850 Securities/Commodities/ |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | ☐ 840 Trademark | Exchange |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | | | ☐ 875 Customer Challenge |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | **LABOR** | **SOCIAL SECURITY** | 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | | | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | Product Liability | Act | ☐ 862 Black Lung (923) | ☐ 893 Environmental Matters |
| | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 894 Energy Allocation Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 864 SSID Title XVI | ☐ 895 Freedom of |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 730 Labor/Mgmt. Reporting | ☐ 865 RSI (405(g)) | Information Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | & Disclosure Act | | ☐ 900 Appeal of Fee Determination |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **HABEAS CORPUS:** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | Under Equal Access to Justice |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | State Statutes |
| ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | ☒ 791 Empl. Ret. Inc | or Defendant) | ☐ 890 Other Statutory Actions |
| | | ☐ 550 Civil Rights | Security Act | ☐ 871 IRS — Third Party | |
| | | ☐ 555 Prison Condition | | 26 USC 7609 | |

## V. ORIGIN   (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 Original Proceeding

☒ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

Transferred from
☐ 5 another district
(specify)

☐ 6 Multidistrict Litigation

Appeal to District Judge from
☐ 7 Magistrate Judgment

## VI. CAUSE OF ACTION   (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

ERISA and FEHBA

## VII. REQUESTED IN COMPLAINT:

CHECK IF THIS IS A **CLASS ACTION**
☐ UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint
**JURY DEMAND:**   ☐ YES

## VIII. RELATED CASE(S) IF ANY   (See instructions):

JUDGE   Underhill
Thompson

3:00CV2037 (SRU
DOCKET NUMBER 3:00CV1716 (AW

DATE

March 16, 2001

SIGNATURE OF ATTORNEY OF RECORD

Patrick M. Noonan, Esquire, Delaney, Zemetis, Donahue & Noonan, PC

FOR OFFICE USE ONLY

RECEIPT #  _____  AMOUNT  _____  APPLYING IFP  _____  JUDGE  _____  MAG. JUDGE  _____

UNITED STATES DISTRICT COURT

3/16 01

DISTRICT OF CONNECTICUT

ORDER ON PRETRIAL DEADLINES:   Civil Action No.                      (RNC)

(a)   In accordance with Local Civil Rule 38, within 30 days of the appearance of a defendant, the parties must confer for the purposes described in Fed. R. Civ. P. 26(f).   Within 10 days thereafter, the parties must jointly file a report using Form 26(f), which appears in the Appendix to the Local Civil Rules.   The report will be used to establish a scheduling order, which will include a date by which the case must be ready for trial.

(b)   Before a party files a motion to dismiss or a motion for summary judgment, a prefiling conference will be held.   A party wishing to file such a motion must submit a letter to chambers requesting a prefiling conference and briefly describing the nature and basis of the proposed motion.   The letter must be submitted no later than 45 days before the discovery deadline. Failure to request a prefiling conference will result in the waiver of the right to file a motion. Except in cases involving pro se parties, no request for a prefiling conference may be submitted unless the attorney making the request has conferred with other counsel of record and discussed the proposed motion in a good faith effort to clarify the issues, eliminate or reduce the area of controversy and arrive at a mutually satisfactory resolution. Cf. D. Conn. L. Civ. R. 9(2) (requiring counsel to confer before filing motions relating to discovery disputes).   Except in cases involving pro se parties, any request for a prefiling conference must include a statement that the attorney submitting the request has conferred with other counsel and must briefly describe the results of the conference.

(c)   In accordance with Fed. R. Civ. P. 16(b), motions for modification of the dates set forth in the scheduling order issued pursuant to the parties' 26(f) report will not be granted except for good cause.   This standard requires a particularized showing that the scheduling order could not be complied with despite due diligence on the part of the party seeking the modification.   Any such motion must be filed in writing at least five days before expiration of the date in question.

(d)   'Formal discovery pursuant to the Federal Rules of Civil Procedure may commence once the parties have conferred as required by Fed. R. Civ. P. 26(f) and Local Civil Rule 38.   Informal discovery by agreement of the parties is encouraged and may commence at anytime.   Unless otherwise ordered, discovery must be completed within 6 months after the filing of the complaint, the filing of a petition for removal, or the date of transfer of an action from another District.

A copy of this Order must be served by the plaintiff on all defendants.

Kevin F. Rowe
Clerk of the Court

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

STEPHEN R. LEVINSON., M.D., KAREN
LAUGEL, M.D., and J. KEVIN LYNCH,
M.D., on behalf of themselves and other
similarly situated,

             Plaintiffs,

      v.

ANTHEM HEALTH PLANS, INC. d/b/a
ANTHEM BLUE CROSS AND BLUE
SHIELD OF CONNECTICUT ,

             Defendant.

Civil Action 3:01CV426(RNC)

March 15, 2001

## **MOTION FOR EXTENSION OF TIME**

Defendant hereby moves, pursuant to Local Civil Rule 9(b), for a 30-day extension of

time beyond the time of the Court's decision on the plaintiff's motion to remand, within which to

file a response to plaintiff's complaint. This extension is necessary because the issues raised in

the complaint are complex and defense counsel needs additional time to frame a response.

Plaintiff's counsel has indicated that he intends to file shortly a motion to remand the case

to State Court and that he has no objection to the granting of this motion.



**DELANEY, ZEMETIS, DONAHUE, DURHAM & NOONAN, P.C.**
CONCEPT PARK • 741 BOSTON POST ROAD
GUILFORD, CONNECTICUT 06437
TEL: (203) 458-9168 • FAX: (203) 458-4424
JURIS NO. 415438

This is the first such request for an extension of time.

THE DEFENDANT
ANTHEM HEALTH PLANS, INC.

By: _____

Michael G. Durham (Fed. Bar # ct05342)
Patrick M. Noonan (Fed. Bar # ct00189)
DELANEY, ZEMETIS, DONAHUE,
  DURHAM & NOONAN
741 Boston Post Road
Guilford, CT 06437

Craig A. Hoover (Fed. Bar # ct21931)
Jeffrey Pariser (Fed. Bar # ct22245)
Jeremy T. Monthy (Fed. Bar # ct22244)
555 13th Street, N.W.
Washington, DC 20004
(202) 637-5600

Attorneys for Defendants

2

## CERTIFICATION

This is to certify that a copy of the foregoing was mailed, postage prepaid, on the

above-written date, to:

James E. Hartley, Jr., Esquire
Drubner, Hartley, O'Connor & Mengacci, LLC
500 Chase Parkway
Waterbury, CT 06708

Michael G. Durham



IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

STEPHEN R. LEVINSON., M.D., KAREN
LAUGEL, M.D., and J. KEVIN LYNCH,
M.D., on behalf of themselves and other
similarly situated,

Plaintiffs,

v.

ANTHEM HEALTH PLANS, INC. d/b/a
ANTHEM BLUE CROSS AND BLUE
SHIELD OF CONNECTICUT ,

Defendant.

Civil Action 3:01CV426(RNFC)

March 23, 2001

## MOTION TO TRANSFER

Defendant Anthem Health Plans, Inc. hereby moves, pursuant to Local Civil Rule 10(b)1, that this case be transferred to the docket of Judge Thompson. The reason for this motion is that there are two similar cases involving ERISA managed care class actions brought against the same defendant, both of which have been assigned to Judge Thompson. Those cases are The State of Connecticut v. Anthem Blue Cross and Blue Shield of Connecticut, et al, Civil Action No. 300CV1716 (AWT) and Connecticut State Medical Society v. Anthem Health Plans, Inc., Civil Action No. 3:01CV428 (AWT). Therefore, since they are related cases and since the first case to be filed, The State of Connecticut v. Anthem Blue Cross and Blue Shield of Connecticut, et al, has been assigned to Judge Thompson, this matter should also be assigned to Judge Thompson.

DELANEY, ZEMETIS, DONAHUE, DURHAM & NOONAN, P.C.
CONCEPT PARK  •  741 BOSTON POST ROAD
GUILFORD, CONNECTICUT 06437
TEL:  (203) 458-9168  •  FAX:  (203) 458-4424
JURIS NO. 415438

Respectfully submitted,

By: _____

Patrick M. Noonan (Fed. Bar # ct00189)
Michael G. Durham (Fed Bar # ct05342)
DELANEY, ZEMETIS, DONAHUE,
 DURHAM & NOONAN
741 Boston Post Road
Guilford, CT  06437

Craig A. Hoover  (Fed. Bar # ct21931)
Jeffrey Pariser  (Fed. Bar # ct22245)
Jeremy T. Monthy (Fed. Bar # ct22244)
555 13th Street, N.W.
Washington, DC  20004
(202) 637-5600

Attorneys for Defendants

2

## **CERTIFICATION**

This is to certify that a copy of the foregoing was mailed, postage prepaid, on the

above-written date, to:

James E. Hartley, Jr.
Drubner, Hartley, O'Conner & Mengacci, L.L.C.
500 Chase Parkway
Waterbury, CT 06708
         Tel: (203) 753-9291
         Fax: (203) 753-6373

Gregory J. Pepe
Neubert, Pepe & Monteith, P.C.
195 Church Street, 13th Floor
New Haven, CT 06510-2026-
         Tel: (203) 821-2000
         Fax: (203) 821-2009

Christopher A. Seeger
Stephen A. Weiss
Seeger Weiss, L.L.P.
One William Street
New York, NY 10004
         Tel: (203) 584-0700
         Fax: (203) 584-0799

Patrick M. Noonan

3

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

STEPHEN R. LEVINSON. M.D., KAREN          : CIVIL ACTION NO. 3:01CV426RNC
LAUGEL. M.D. and J. KEVIN LYNCH,          :
M.D., on behalf of themselves and others  :
similarly situated,                        :
                    Plaintiffs            :
VS.                                        :
                                           :
ANTHEM HEALTH PLANS. INC.                  :
                    Defendant             : MARCH 23, 2001

## NOTICE OF APPEARANCE

TO:    Clerk of the Court
       U.S. District Court
       District of Connecticut
       450 Main Street
       Hartford, CT 06103

Please enter the appearance of the undersigned attorneys for the Plaintiffs, Stephen R.

Levinson, M.D., Karen Laugel, M.D. and J. Kevin Lynch, M.D., on behalf of themselves and

others similarly situated.

Dated at Waterbury, Connecticut this 23rd day of March, 2001.

PLAINTIFFS,
STEPHEN R. LEVINSON, M.D., KAREN
LAUGEL, M.D. and J. KEVIN LYNCH,
M.D., on behalf of themselves and others
similarly situated,

By_____

James E. Hartley, Jr. (#ct 08275)
Drubner, Hartley, O'Connor &
Mengacci, L.L.C.
500 Chase Parkway
Waterbury, CT 06708
(203)753-9291
Its Attorneys

By_____

Gary B. O'Connor (#ct 11216)
Drubner, Hartley, O'Connor &
Mengacci, L.L.C.
500 Chase Parkway
Waterbury, CT 06708
(203)753-9291
Its Attorneys

By_____

H.C. Kwak (#ct 19957)
Drubner, Hartley, O'Connor &
Mengacci, L.L.C.
500 Chase Parkway
Waterbury, CT 06708
(203)753-9291
Its Attorneys

## CERTIFICATION

I hereby certify that a copy of the foregoing was mailed, postage prepaid, on this 23rd day of March, 2001 to the following parties:

Patrick M. Noonan, Esq.
Delaney, Zemetis, Donahue, Durham &
Noonan, P.C.
Concept Park
741 Boston Post Road
Guilford, CT  06437

James E. Hartley, Jr.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| STEPHEN R. LEVINSON., M.D., KAREN LAUGEL, M.D., and J. KEVIN LYNCH, M.D., on behalf of themselves and other similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ANTHEM HEALTH PLANS, INC. d/b/a ANTHEM BLUE CROSS AND BLUE SHIELD OF CONNECTICUT ,<br><br>Defendant. | Civil Action 3:01CV426(RNC)<br><br><br><br>March 23, 2001 |

## MOTION FOR ADMISSION OF ATTORNEY PRO HAC VICE

Pursuant to Local Rule 2(d), the defendants, Anthem Blue Cross and Blue Shield of Connecticut and Anthem Health Plans, Inc. (hereinafter collectively referred to as "Anthem"), through its undersigned counsel, hereby moves for the admission of Craig A. Hoover as attorney *pro hac vice*. In support of its motion, the undersigned represents:

1.    Attorney Hoover is an active member of the bars of the District of Columbia (since March 8, 1985), State of Virginia (since April 15, 1987) and State of California (since June 7, 1984).

2.    Attorney Craig A. Hoover does not have any grievance pending against him, has never been reprimanded, suspended, placed on inactive status, disbarred, nor has ever resigned from the practice of law.

3.    Attorney Hoover's representation of Anthem and its affiliates is longstanding and pre-dates this cause of action. In addition, Attorney Hoover has over the past three years

**DELANEY, ZEMETIS, DONAHUE, DURHAM & NOONAN, P.C.**
CONCEPT PARK • 741 BOSTON POST ROAD
GUILFORD, CONNECTICUT 06437
TEL: (203) 458-9168 • FAX: (203) 458-4424
JURIS NO 415438

appeared *pro hac vice* on behalf of Anthem in prior major litigation in Connecticut arising out

of the merger between Anthem and Blue Cross/Blue Shield.[1]

4.      The undersigned submits that the admission of Attorney Hoover would benefit

Anthem and would serve the interests of justice.

WHEREFORE, Anthem requests that this motion be granted.

Respectfully submitted,

By: _____

Patrick M. Noonan (Fed. Bar # ct00189)
Michael G. Durham (Fed Bar # ct05342)
DELANEY, ZEMETIS, DONAHUE,
 DURHAM & NOONAN
741 Boston Post Road
Guilford, CT 06437

Craig A. Hoover (Fed. Bar # ct21931)
Jeffrey Pariser (Fed. Bar # ct22245)
Jeremy T. Monthy (Fed. Bar # ct22244)
555 13th Street, N.W.
Washington, DC 20004
(202) 637-5600

Attorneys for Defendants

---

[1] Richard Blumenthal v. Anthem Insurance Companies, Docket No. CV 97 05758595; Connecticut Employees Union Independent v. State of Connecticut Department of Insurance, Docket No. CV-97-0573468 5; Daniel E. Livingston v. Blue Cross & Blue Shield, Docket No. CV-97-0579043S; Nancy Wyman, Comptroller v. State of Connecticut Department of Insurance, Docket No. CV-97-0573695 5; Nancy Wyman v. Comptroller v. John Croweak, Docket No. CV 97 0576030 S. All actions were pending in the Superior Court for the Judicial District of Hartford/New Britain at Hartford, and were resolved expeditiously. Edward Collins. M.D.. et al. v. Anthem Health Plans. Inc., Docket No. X01CV99-0156198 5, is presently pending in the Judicial District of Waterbury.

## **CERTIFICATION**

This is to certify that a copy of the foregoing was mailed, postage prepaid, on the

above-written date, to:

James E. Hartley, Jr.
Drubner, Hartley, O'Conner & Mengacci, L.L.C.
500 Chase Parkway
Waterbury, CT 06708
    Tel: (203) 753-9291
    Fax: (203) 753-6373

Gregory J. Pepe
Neubert, Pepe & Monteith, P.C.
195 Church Street, 13th Floor
New Haven, CT 06510-2026-
    Tel: (203) 821-2000
    Fax: (203) 821-2009

Christopher A. Seeger
Stephen A. Weiss
Seeger Weiss, L.L.P.
One William Street
New York, NY 10004
    Tel: (203) 584-0700
    Fax: (203) 584-0799

Patrick M. Noonan



IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

STEPHEN R. LEVINSON., M.D., KAREN
LAUGEL, M.D., and J. KEVIN LYNCH,
M.D., on behalf of themselves and other
similarly situated,

              Plaintiffs,

Civil Action 3:01CV426(RNC)

*v.*

ANTHEM HEALTH PLANS, INC. d/b/a
ANTHEM BLUE CROSS AND BLUE
SHIELD OF CONNECTICUT ,

              Defendant.

March 23, 2001

## **MOTION FOR ADMISSION OF ATTORNEY PRO HAC VICE**

Pursuant to Local Rule 2(d), defendants, Anthem Blue Cross and Blue Shield of Connecticut and Anthem Health Plans, Inc. (hereinafter collectively referred to as "Anthem") through its undersigned counsel, hereby move for the admission of Jeffrey D. Pariser as attorney *pro hac vice.* In support of its motion, the undersigned represents:

1.    Attorney Pariser is an associate with the law firm of Hogan & Hartson, Columbia Square, 555 Thirteenth Street, NW, Washington, DC 20004-1109, (202) 637-5600.

2.    Attorney Pariser is an active member of the bars of the District of Columbia since February 1, 1999, State of New York since April 5, 1994, and State of New Jersey since December 21, 1993.

**DELANEY, ZEMETIS, DONAHUE, DURHAM & NOONAN, P.C.**
CONCEPT PARK • 741 BOSTON POST ROAD
GUILFORD, CONNECTICUT 06437
TEL  (203) 458-9168 • FAX: (203) 458-4424
JURIS NO. 415438

3.     Attorney Jeffrey D. Pariser does not have any grievance pending against him, has never been reprimanded, suspended, placed on inactive status, disbarred, nor has ever resigned from the practice of law.

4.     Attorney Pariser's specialized skills and knowledge of the subject matter of this action are of a clear benefit to Anthem and establish good cause for granting the Motion.

5.     The undersigned submits that the admission of Attorney Pariser would benefit Anthem and would serve the interests of justice.

WHEREFORE, Anthem requests that this motion be granted.

Respectfully submitted,

By: _____

Patrick M. Noonan (Fed. Bar # ct00189)
Michael G. Durham (Fed Bar # ct05342)
DELANEY, ZEMETIS, DONAHUE,
  DURHAM & NOONAN
741 Boston Post Road
Guilford, CT  06437

Craig A. Hoover  (Fed. Bar # ct21931)
Jeffrey Pariser  (Fed. Bar # ct22245)
Jeremy T. Monthy (Fed. Bar # ct22244)
555 13th Street, N.W.
Washington, DC  20004
(202) 637-5600

Attorneys for Defendants

2

## CERTIFICATION

This is to certify that a copy of the foregoing was mailed, postage prepaid, on the

above-written date, to:

James E. Hartley, Jr.
Drubner, Hartley, O'Conner & Mengacci, L.L.C.
500 Chase Parkway
Waterbury, CT 06708
        Tel: (203) 753-9291
        Fax: (203) 753-6373

Gregory J. Pepe
Neubert, Pepe & Monteith, P.C.
195 Church Street, 13th Floor
New Haven, CT 06510-2026-
        Tel: (203) 821-2000
        Fax: (203) 821-2009

Christopher A. Seeger
Stephen A. Weiss
Seeger Weiss, L.L.P.
One William Street
New York, NY 10004
        Tel: (203) 584-0700
        Fax: (203) 584-0799

Patrick M. Noonan

RECEIPT FOR PAYMENT
DISTRICT COURT OF
CONNECTICUT
HARTFORD DIVISION

H002837
----------------------------------------
RECEIVED FROM:

DELANEY ZEMETIS DONAHUE
DURHAM AND NOONAN
741 BOSTON POST ROAD
GUILFORD, CT 06437
----------------------------------------
Case Number: 3:01CV426
----------------------------------------
F/U/B/O:

Party ID:
LEVINSON, ET AL, ANTHEM HEALTH P

Tender Type:        CHECK
                          $75.00
01-6855XX

pro Hac Vice

Remarks: check # 1773 USDJ:RNC
          Craig A. Hoover, Jeffrey
          D. Pariser & Jeremy T.
          Monthy
----------------------------------------
          Subtotal:      $75.00
----------------------------------------
                         $75.00
Receipt Total:
================================
* Checks and drafts are accepted
subject to collections and full
credit will only be given when
the check or draft has been
accepted by the financial
institution on which it was drawn.

Date:    3/26/01
Clerk:
----------------------
          JW

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

J., M.D., KAREN
EVIN LYNCH,
lves and other

aintiffs,                     Civil Action 3:01CV426(RNC)

JS, INC. d/b/a
AND BLUE
UT,

endant.                       March 23, 2001

## R ADMISSION OF ATTORNEY PRO HAC VICE

:ule 2(d), defendants Anthem Blue Cross and Blue Shield of

ilth Plans, Inc. (hereinafter collectively referred to as "Anthem")

isel, hereby move for the admission of Jeremy T. Monthy as

..... .... in support of its motion, the undersigned represents:

1.    Attorney Monthy is an associate with the law firm of Hogan & Hartson,

Columbia Square, 555 Thirteenth Street, NW, Washington, DC 20004-1109, (202) 637-5600.

2.    Attorney Monthy is an active member of the bars of the District of Columbia

since August 4, 2000, and the State of New York since January 25, 2000.

**DELANEY, ZEMETIS, DONAHUE, DURHAM & NOONAN, P.C.**
CONCEPT PARK • 741 BOSTON POST ROAD
GUILFORD, CONNECTICUT 06437
TEL: (203) 458-9168 • FAX: (203) 458-4424
JURIS NO. 415438

3.      Attorney Jeremy T. Monthy does not have any grievance pending against him, has never been reprimanded, suspended, placed on inactive status, disbarred, nor has ever resigned from the practice of law.

4.      Attorney Monthy's specialized skills and knowledge of the subject matter of this action are of a clear benefit to Anthem and establish good cause for granting the Motion.

5.      The undersigned submits that the admission of Attorney Monthy would benefit Anthem and would serve the interests of justice.

WHEREFORE, Anthem requests that this motion be granted.

Respectfully submitted,

By: _____

Patrick M. Noonan (Fed. Bar # ct00189)
Michael G. Durham (Fed Bar # ct05342)
DELANEY, ZEMETIS, DONAHUE,
  DURHAM & NOONAN
741 Boston Post Road
Guilford, CT  06437

Craig A. Hoover  (Fed. Bar # ct21931)
Jeffrey Pariser  (Fed. Bar # ct22245)
Jeremy T. Monthy (Fed. Bar # ct22244)
555 13th Street, N.W.
Washington, DC  20004
(202) 637-5600

Attorneys for Defendants

2

## CERTIFICATION

This is to certify that a copy of the foregoing was mailed, postage prepaid, on the

above-written date, to:

James E. Hartley, Jr.
Drubner, Hartley, O'Conner & Mengacci, L.L.C.
500 Chase Parkway
Waterbury, CT 06708
     Tel: (203) 753-9291
     Fax: (203) 753-6373

Gregory J. Pepe
Neubert, Pepe & Monteith, P.C.
195 Church Street, 13th Floor
New Haven, CT 06510-2026-
     Tel: (203) 821-2000
     Fax: (203) 821-2009

Christopher A. Seeger
Stephen A. Weiss
Seeger Weiss, L.L.P.
One William Street
New York, NY 10004
     Tel: (203) 584-0700
     Fax: (203) 584-0799

Patrick M. Noonan

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
------------------------------ X
STEPHEN R. LEVINSON, M.D., KAREN  :
LAUGEL, M.D. and J. KEVIN LYNCH,      :
M.D., on behalf of themselves and others  :
similarly situated,                          :
                        Plaintiff,      :
                                        :   Civil Action No.
VS.                                     :   3:01CV426(RNC)
                                        :
ANTHEM HEALTH PLANS, INC., d/b/a  :   March 28, 2001
ANTHEM BLUE CROSS AND BLUE        :
SHIELD OF CONNECTICUT,               :
                        Defendant.   :
------------------------------ X
```

## MEMORANDUM OF PLAINTIFFS IN SUPPORT OF
## EXPEDITED MOTION TO REMAND AND FOR ATTORNEY'S FEES AND EXPENSES

U.S. DISTRICT COURT
HARTFORD. CONN.
CLERK
DISTRICT COURT

Mar 28   4 28 PM '01

FILED

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

I.      THE APPLICABLE STANDARDS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

II.     ANTHEM HAS FAILED TO ESTABLISH THE EXISTENCE OF A FEDERAL
        QUESTION AND, THEREFORE, REMOVAL WAS WHOLLY IMPROPER . . . . . . . 8

        A.      Plaintiffs' Claims Are Not Preempted By ERISA . . . . . . . . . . . . . . . . . . . . . . 8

                1.      Plaintiffs' Claims Are Not Completely Preempted
                        Under § 1132(a)(1)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

                2.      Plaintiffs' Claims Are Not Preempted Under § 1144(a) . . . . . . . . . . . . 16

        B.      Plaintiffs' Claims Are Not Preempted By FEHBA . . . . . . . . . . . . . . . . . . . . . 19

III.    PLAINTIFFS ARE ENTITLED TO COSTS AND ATTORNEY'S FEES . . . . . . . . . . 21

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

## TABLE OF AUTHORITIES

### CASES

Aetna U.S. Healthcare, Inc. v. Maltz,
No. 98 CIV 8829, 1999 U.S. Dist. LEXIS 6708 (S.D.N.Y. May 4, 1999) .............................. 17

Baptist Hosp. v. Timke,
832 F. Supp. 338 (S.D. Fla. 1993) .................................................................................... 19, 20

Blue Cross of California v. Anesthesia Care Associates Medical Group, Inc.
187 F.3d 1045 (9th Cir. 1999) ......................................................................................... 12, 15

Burbank Podiatry Assoc. Group v. Blue Cross of Cal.,
No. C 98-2326, 1999 U.S. Dist. LEXIS 1397 (N.D. Cal. Feb. 2, 1999) ................................... 16

Carter v. Blue Cross & Blue Shield of Fla., Inc.,
61 F. Supp. 2d 1241 (N.D. Fla. 1999)............. .....................................................................21

Caterpillar, Inc. v. Williams,
482 U.S. 386, 107 S. Ct. 2425 (1987) ............................................................................... 7, 17

Eastern States Health & Welfare Fund v. Philip Morris, Inc.,
11 F. Supp. 2d 384, 399 (S.D.N.Y. 1999) ................................................................................ 8

Franchise Tax Bd. v. Construction Laborers Vacation Trust,
463 U.S. 1, 103 S. Ct. 2841 (1983) ................................................................................. 11, 21

Harris v. Provident Life and Accident Ins. Co.,
26 F.3d 930, 934 (9th Cir. 1994) ......................................................................................... 11

Hospice of Metro Denver, Inc. v. Group Health Ins.,
944 F.2d 752 (10th Cir. 1991) ............................................................................................. 15

Lakeland Anesthesia, Inc. v. Aetna U.S. Healthcare, Inc.,
No. 00-1061, 2000 U.S. Dist. LEXIS 8540 (E.D. La. June 15, 2000) .................................... 16

Lakeview Med. Ctr. v. Aetna Health Mgmt., Inc.,
No. 00-CV-1761, 2000 U.S. Dist. LEXIS 17271 (E.D. La. Nov. 17, 2000) ........................... 16

Lordmann Enters., Inc. v. Equicor, Inc.,
32 F.3d 1529 (11th Cir. 1994) .................................................................................... 17, 18

In re Managed Care Litig.,
MDL No. 1334 (S.D. Fla. Mar. 2, 2001) ........................................................ 5, 18, 19

McDermott Food Brokers, Inc. v. Kessler,
899 F. Supp. 928 (N.D.N.Y. 1995) ................................................................ 6, 7, 8

Metropolitan Life Ins. Co. v. Taylor,
481 U.S. 58, 107 S. Ct. 1542 (1987) ..................................................................... 10

Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41 (1987) ................................................ 10

Pressroom Unions-Printers League Income Sec. Fund v. Continental Assurance Co.,
700 F.2d 889 (2d Cir. 1983) ............................................................................. 10, 11

Pritt v. Blue Cross and Blue Shield of W. Va., Inc.,
699 F. Supp. 81 (S.D. W. Va. 1988) ..................................................................... 15

Ramirez v. Humana, Inc.,
119 F. Supp. 2d 1307, 1313 (M.D. Fla. 2000) ........................................................ 20

Reichmeister v. United Healthcare of The Mid-Atlantic, Inc.,
93 F. Supp. 2d 618 (D. Md. 2000)..................................................................12, 13

Riverhills Healthcare, Inc. v. Aetna U.S. Healthcare, Inc.,
No. C-1-00-525, 2000 U.S. Dist. LEXIS 19313 (S.D. Ohio Oct. 23, 2000) ...................... 14, 17

Smith v. Dunham-Bush, Inc.,
959 F.2d 6 (2d Cir. 1992) ............................................................................. 8, 9

Somlyo v. J. Lu-Rob Enters., Inc.,
932 F.2d 1043 (2d Cir. 1991) ............................................................................. 6

St. Francis Hosp. & Med. Ctr. v. Blue Cross & Blue Shield, Inc.,
776 F. Supp. 659 (D. Conn. 1991) ..................................................................... 7, 11

Stone & Webster Eng'g Corp. v. Ilsley,
690 F.2d 323 (2d Cir. 1982) ............................................................................. 11

Toumajian v. Frailey,
135 F.3d 648 (9th Cir. 1998) ............................................................................. 8, 9

Tovey v. Prudential Ins. Co. of Am.,
42 F. Supp. 2d 919, 922 (W.D. Mo. 1999) ............................................................. 9

-iii-

United Food & Commercial Workers Union, Local 919,
AFL-CIO v. CenterMark Props. Meriden Square, Inc.,
30 F.3d 298 (2d Cir. 1994) ............................................................................................................... 6

Variety Children's Hosp., Inc. v. Blue Cross/Blue Shield,
942 F. Supp. 562 (S.D. Fla. 1996) ................................................................................................ 18

Warner v. Ford Motor Co.,
46 F.3d 531, 535 (6th Cir. 1995) .................................................................................................... 9

## STATUTES

5 U.S.C. § 8902(m)(l)  ..................................................................................................... passim

28 U.S.C. § 1331  ...................................................................................................................... 6

28 U.S.C. § 1441(a)  ................................................................................................................. 6

28 U.S.C. § 1447(c)  ........................................................................................................... 2, 4

29 U.S.C. § 1132(a)  .......................................................................................................... passim

29 U.S.C. § 1144(a)  .......................................................................................................... passim

5 C.F.R. § 890.101(a)  ............................................................................................................ 20

5 C.F.R. § 890.107(c)  ............................................................................................................ 20

Conn. Gen. Stat.  42-1106 ................................................................................................... 2, 3

Plaintiffs Stephen R. Levinson M.D., Karen Laugel, M.D. and J. Kevin Lynch, M.D., by their attorneys, submit this memorandum in support of their motion to remand this action to state court pursuant to 28 U.S.C. § 1447(c) on the basis that defendant Anthem Health Plans, Inc. ("Anthem" or "defendant") improperly removed the action from the Superior Court of the State of Connecticut for the Judicial District of New Haven (the "Superior Court"). Plaintiffs seek disposition of this motion on an expedited basis because Anthem has removed this action to federal court utterly without basis with the intent of delaying this action by seeking transfer of the action to Florida to become mired in unrelated multi-district litigation there. Indeed, Anthem has already expressed its intent to write to the Judicial Panel on Multidistrict Litigation in that regard.[1]

Outrageously, Anthem has removed this action despite the fact that the Florida Court handling the multi-district litigation has already rejected in no uncertain terms the invalid ground that Anthem has offered up for removal.[2] Consequently, unless this motion to remand is decided quickly, plaintiffs risk the delay and burden of having this action bogged down in Florida only to have the Florida Court then remand the action back to Connecticut Superior Court. Plaintiffs therefore seek to have this motion to remand decided expeditiously in an effort to avoid a profound waste of judicial resources, as well as the resources of the parties.

## PRELIMINARY STATEMENT

Defendant removed this action on the undisputably false contention that plaintiffs' claims - - which are brought on behalf of the class of physicians who are members of the Connecticut State Medical Society ("CSMS") and based only on state law, including the Connecticut Unfair Trade

---

[1] See discussion in this memorandum at page 5.

[2] See discussion in this memorandum at pages 17-20.

2

Practices Act, Conn. Gen. Stat. §§ 42-110b, et seq. -- purportedly involve federal questions under the Employee Retirement Income Securities Act of 1974, 29 U.S.C. §§ 1001, et seq. ("ERISA") and the Federal Employee Health Benefits Act, 5 U.S.C. §§ 8901, et seq. ("FEHBA"). As set forth below, defendant's Petition for Removal of Civil Action (the "Petition") is based on mischaracterizations of both law and fact, however, and is contrary to controlling authority of the Second Circuit, the Supreme Court and other courts that have considered these issues.

Specifically, the Second Circuit has held that in order to remove an action under ERISA, a plaintiff's claims must both "relate to" an ERISA plan and be one of several enumerated claims brought by an ERISA participant, beneficiary or fiduciary. Only if both of those requirements are met is ERISA considered to preempt the claims asserted such that removal may be appropriate. Anthem is unable to satisfy either of these criteria, however.

First, the plaintiff physicians are neither participants, beneficiaries nor fiduciaries of an Anthem plan. Accordingly, the plaintiffs simply do not have standing to assert their claims under ERISA. This fact by itself establishes that this action never should have been removed in the first instance.

Second, plaintiffs' claims are clearly predicated on Anthem's unfair and deceptive practices designed to deny, delay and/or impede the ability of the plaintiff physicians to obtain the reimbursement to which they are lawfully entitled under their own contracts with Anthem. Therefore, contrary to Anthem's assertions, plaintiffs' Complaint does not assert claims for benefits under ERISA plans.

Third, although this Court need not reach the issue, under well-settled authority, plaintiffs' claims do not "relate to" an ERISA plan and are therefore for that reason as well not preempted.

3

Indeed, Anthem's Petition egregiously fails to mention that the very court to which Anthem has indicated that it intends to seek to transfer this action has held -- two weeks prior to Anthem filing its Petition -- that claims brought by providers such as the plaintiff physicians do not "relate to" ERISA plans, and stated that finding such claims to be preempted would "defeat rather than promote" the goals of ERISA.[3] That holding is consistent with numerous other opinions that have found that claims brought by health care providers such as the plaintiff physicians do not relate to ERISA plans and are not preempted. Accordingly, removal under ERISA was wholly-improper.

Removal under FEHBA is similarly inappropriate. As an initial matter, a number of courts have held that FEHBA is not a complete preemption statute. In any event, as Connecticut physicians, plaintiffs do not have standing to assert their claims under FEHBA. Moreover, courts have held that the use of the term "relates to" under FEHBA is analogous to the use of that term under ERISA. The same authority that establishes that plaintiff's claims do not "relate to" any ERISA plans therefore also establishes that they do not relate to any FEHBA plans.

In sum, Anthem's arguments in support of removal are so fundamentally flawed that they cannot be described as anything other than frivolous. Plaintiffs therefore respectfully submit that this action should be remanded to the Connecticut Superior Court forthwith and plaintiffs should be awarded their costs and attorney's fees, as explicitly provided in 28 U.S.C. § 1447(c), for having to bring this motion.

---

[3]See discussion in this memorandum at page 17-19.

4

## PROCEDURAL HISTORY

On February 14, 2001, plaintiffs filed their Complaint in the Superior Court, alleging that Anthem has repeatedly engaged in numerous unfair and deceptive acts and practices that are designed to delay, deny, impede and reduce lawful reimbursement to plaintiff CSMS physicians who contract with Anthem to provide care to Anthem's members, in violation of those physicians' contracts with Anthem. The Complaint alleges that defendant's improper practices constitute clear violations of the Connecticut Unfair Trade Practices Act and the Unfair Insurance Practices Act, breach of contract, breach of the duty of good faith and fair dealing, negligent misrepresentation and unjust enrichment, and seek damages and injunctive and declaratory relief based on Anthem's unfair and unlawful contracting practices with the participating provider plaintiff physicians.

On March 16, 2001, defendant filed its Petition for Removal with this Court, claiming that plaintiffs' claims are preempted under ERISA. Subsequently, defendant has indicated that it intends to send a letter to the Judicial Panel on Multidistrict Litigation (the "MDL Panel"), identifying this action as a potential "tag along" action to a number of actions brought against managed care organizations that have been consolidated in the United States District Court for the Southern District of Florida under the caption In re Managed Care Litigation, MDL 1334.

On March 22, 2001, counsel for plaintiffs wrote a letter to counsel for defendant explaining that, under controlling Second Circuit authority, defendants had improvidently removed this action. In that letter, counsel for the plaintiffs urged Anthem to voluntarily stipulate to the remand of the action to state court and stated that if it would not agree to do so, plaintiffs intended to move to remand the action and would seek attorney's fees and expenses. Defendant

5

has not voluntarily remanded the action.  Plaintiffs therefore now moves to remand the action

back to the Connecticut Superior Court based on the lack of federal jurisdiction over this matter.

## ARGUMENT

### I.     THE APPLICABLE STANDARDS

The requirements for removal of an action are set forth in 28 U.S.C. § 1441(a), which

statutory provision states that:

> [e]xcept as otherwise expressly provided by Act of Congress, any civil action brought in a
> State court of which the district courts of the United States have original jurisdiction,  may
> be removed by the defendant, or the defendants, to the district court of the United States .
> . . .

The requirement that the federal district courts have "original jurisdiction" compels a removing

defendant to show that the plaintiff could have chosen to proceed in district court in the first

instance, either because a federal question is present under 28 U.S.C. § 1331, or because diversity

jurisdiction exists.[4]  The burden of demonstrating that the Court has federal jurisdiction and that

removal was therefore proper rests solely with the defendant.  See, e.g., United Food &

Commercial Workers Union, Local 919, AFL-CIO v. CenterMark Props. Meriden Square, Inc., 30

F.3d 298, 301 (2d Cir. 1994) ("[w]here, as here, jurisdiction is asserted by a defendant in a

removal petition, it follows that the defendant has the burden of establishing that removal is

proper").

Moreover, in determining whether a complaint has been properly removed, the removal

statutes must be strictly construed and any doubts will be resolved against removal.  See, e.g.,

Somlyo v. J. Lu-Rob Enters., Inc., 932 F.2d 1043, 1045-56 (2d Cir. 1991); McDermott Food

_____

[4]Defendant does not allege that the elements of diversity jurisdiction exist.  Accordingly,
the only issue before this Court is whether federal question jurisdiction exists.

6

Brokers, Inc. v. Kessler, 899 F. Supp. 928, 931 (N.D.N.Y. 1995) (addressing defendants' argument that claims were preempted by ERISA and stating that "[a]ny doubt should be resolved in favor of the absence of subject-matter jurisdiction and in favor of remand"); St. Francis Hosp. & Med. Ctr. v. Blue Cross & Blue Shield, Inc., 776 F. Supp. 659, 661 (D. Conn. 1991) ("[a]ny doubt should be resolved in favor of remand"). Finally, the presence or absence of federal question jurisdiction is generally dependent upon whether a federal question appears on the face of plaintiff's "well-pleaded complaint." Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987). A defense arising under federal law does not confer federal question jurisdiction. Id.

Defendant contends that removal is warranted because plaintiffs' entirely state law claims purportedly arise under ERISA. Pet. ¶ 2. Anthem also argues that removal was appropriate because plaintiff's claims relate to one or more FEHBA plans. Pet. ¶ 3. As shown below, however, Anthem is unable to make the requisite showing that the state law claims brought by the plaintiffs -- Connecticut physicians who are neither Anthem participants, beneficiaries, nor fiduciaries -- fall within the civil enforcement scheme of either ERISA or FEHBA or that plaintiffs' claims "relate to" any ERISA or FEHBA plans. Anthem has therefore failed to meet its burden of establishing that plaintiffs' claims are preempted, as is necessary for removal on the basis of ERISA or FEHBA. Indeed, the basis asserted by Anthem for removal of the action is contrary to controlling authority, which clearly holds that plaintiffs' claims do not fall within the purview of ERISA or FEHBA. Thus, defendant's removal was wholly improper, and plaintiffs' motion to remand this action to the Connecticut Superior Court should be granted.

7

## II.   ANTHEM HAS FAILED TO ESTABLISH THE
### EXISTENCE OF A FEDERAL QUESTION AND
### AND, THEREFORE, REMOVAL WAS WHOLLY IMPROPER

Anthem contends in its Petition that this action is removable because it "involve[s] a federal

question. . . ." Pet. ¶ 2. Anthem is simply flat wrong.

### A.   Plaintiffs' Claims Are Not Preempted By ERISA

As the Second Circuit and other jurisdictions have held, a removal petition based on

ERISA preemption must satisfy two requirements: (1) the plaintiff's claims must "relate to" an

ERISA plan as set forth in 29 U.S.C. § 1144(a); and (2) the claims must also be among those

provided for by the civil enforcement provisions as set forth in 29 U.S.C. § 1132. See, e.g., Smith

v. Dunham-Bush, Inc., 959 F.2d 6, 8 (2d Cir. 1992); Toumajian v. Frailey, 135 F.3d 648, 653 (9th

Cir. 1998) (state law claim must "relate to" an employee benefit plan, and fall within the scope of

ERISA's civil enforcement provisions). As the court explained in McDermott Food Brokers:

> The Second Circuit recently limited removal based on ERISA to causes of action that both
> "relate to" an employee benefit plan within the meaning of 29 U.S.C. § 1144(a) and fall
> within the Act's civil enforcement provisions, 29 U.S.C. § 1132(a). Smith v.
> Dunham-Bush, Inc., 959 F.2d 6, 8 (2d Cir. 1992). If the party that has sought removal
> cannot establish that both parts of this two-prong test are satisfied, a federal court has no
> subject-matter jurisdiction and must remand the case back to state court.

899 F. Supp. at 931 (emphasis added). See also Eastern States Health & Welfare Fund v. Philip

Morris, Inc., 11 F. Supp. 2d 384, 399 (S.D.N.Y. 1998) ("[i]n order for complete preemption under

ERISA to apply, two conditions must obtain: '(1) the cause of action is based on a state law that is

preempted by ERISA, and (2) the cause of action is 'within the scope of the civil enforcement

provisions' of ERISA . . . [citations omitted]'").

8

As the foregoing makes clear, as a prerequisite to establishing the federal question jurisdiction necessary to remove an action under ERISA, a defendant must show that the claims at issue fall within the civil enforcement scheme of § 1132(a)(1)(B). If this first requirement is not met, then any argument that a plaintiff's claims are preempted under § 1144(a) because they "relate to" an ERISA plan is simply a defense that can be raised in state court, but does not provide a proper basis of removal. See, e.g., Smith, 959 F.2d at 10 ("Although appellant's suit is preempted it may be removed only if it comes within the scope of ERISA's civil enforcement provisions") (citation omitted); Toumajian, 135 F.3d at 655 ("[b]ecause we hold that the district court had no jurisdiction, we do not reach Toumajian's claims that his state law claims do not 'relate to' an ERISA plan within the meaning of § 1144(a)"); Warner v. Ford Motor Co., 46 F.3d 531, 535 (6th Cir. 1995) (distinguishing between effect of preemption under § 1144(a) and § 1132(a)(1)(B)); Tovey v. Prudential Ins. Co. of America, 42 F. Supp. 2d 919, 922 (W.D. Mo. 1999).[5]

As shown below, Anthem is unable to establish that plaintiffs' claims fall within the civil enforcement scheme of § 1132(a)(1)(B) or that plaintiffs' claims relate to an ERISA plan as set forth in § 1144(a). The defendant's failure to satisfy either one of these requirements constitutes two independently-sufficient bases for remand to be ordered. The plaintiffs respectfully submit that this action should therefore be remanded to the Connecticut Superior Court forthwith.

---

[5]The distinction between the two types of "preemption" that can occur under ERISA are often referred to as "complete preemption" under § 1132(a)(1)(B) and "ordinary preemption" under 29 U.S.C. § 1144(a). Only "complete preemption" provides the requisite federal question jurisdiction necessary to remove an action. See, e.g., Warner, 46 F.3d at 535 (explaining that the doctrine of complete preemption, which is a jurisdictional doctrine, and ordinary preemption, which is a substantive defense, are "separate and distinct").

9

### 1.    Plaintiffs' Claims Are Not Preempted Under § 1132(a)(1)(B)

Defendant maintains that plaintiffs' state law claims are removable because they purportedly "raise questions of federal law -- including the relevant provision of the ERISA statute, 29 U.S.C. § 1132(a)(1)(B). . . ." Pet. ¶ 2. Section 1132(a)(1)(B) of ERISA explicitly provides, however, that:

> A civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

Accordingly, when a person who is a participant or beneficiary of an employee benefit plan brings suit to enforce certain rights and obligations conferred under the terms of an ERISA plan, such claims are completely preempted under the civil enforcement scheme of § 1132(a). Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 66 (1987)(involving claims brought by a beneficiary of an ERISA plan); Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41 (1987) (same).

The Second Circuit has narrowly construed § 1132, however, thereby limiting the parties who may bring a civil action under ERISA to plan participants, beneficiaries or fiduciaries. For example, in Pressroom Unions-Printers League Income Security Fund v. Continental Assurance Co., 700 F.2d 889, 892 (2d Cir. 1983), the court refused to find that a pension fund had standing to bring a claim for breach of fiduciary duty under ERISA, because it was not a participant, beneficiary or fiduciary under the Act. In refusing to do so, the court clearly held that the entities entitled to bring claims under ERISA's civil enforcement scheme are limited to the parties "specified in § 1132(e)(1)" -- i.e., participants, beneficiaries or fiduciaries. Id. at 892. The court therefore held that "the district court was without subject matter jurisdiction over the [pension

10

fund's] complaint." Id. at 893. See also Franchise Tax Bd. v. Construction Laborers Vacation

Trust, 463 U.S. 1, 27 (1983) ("ERISA carefully enumerates the parties entitled to seek relief under

§ 502; it does not provide anyone other than participants, beneficiaries, or fiduciaries with an

express cause of action for a declaratory judgment on the issues in this case."); Stone & Webster

Eng'g Corp. v. Ilsley, 690 F.2d 323, 326 (2d Cir. 1982) (holding that employers do not have

standing to assert claims under ERISA); Harris v. Provident Life and Accident Ins. Co., 26 F.3d

930, 934 (9th Cir. 1994) (remanding complaint where "[plaintiffs] are not plan participants,

beneficiaries, or fiduciaries, their remaining state claims are not within the scope of § 1132(a) and

therefore not completely preempted.").

Anthem's Petition fails to address the fact that the plaintiff physicians are not Anthem plan

participants, beneficiaries or fiduciaries. The fundamental fact that the plaintiffs do not have

standing to assert claims in federal court under ERISA is fatal to Anthem's removal Petition and

the action must therefore be remanded to state court. See, e.g., St. Francis Hospital, 776 F. Supp.

at 662 (remanding action where plaintiff lacked standing to bring claim under ERISA).[6]

Apparently recognizing the standing limitations under ERISA, Anthem's removal papers

erroneously state that the plaintiff physicians' claims "are essentially derivative in nature in that

they seek reimbursement of benefits under ERISA plans." (Pet. ¶ 2). In making this assertion,

Anthem hopes to bring this action within the holding of those opinions that have found that claims

brought by physicians in their role as assignees of ERISA participants may be removed to federal

---

[6]Furthermore, had plaintiffs actually brought an action in federal court under § 1132(a),
Anthem would no doubt have argued that the plaintiffs, because they are not participants,
beneficiaries or fiduciaries, did not have standing and that therefore the action should be
dismissed.

11

court. See, e.g., Blue Cross of California v. Anesthesia Care Associates Medical Group, Inc., 187 F.3d 1045, 1051-52 (9th Cir. 1999) (acknowledging that assignees of beneficiaries have standing under ERISA, but holding that because plaintiff providers were "asserting state law claims arising out of separate agreements . . . we find no basis to conclude that the mere fact of assignment, converts the Providers' claims into claims to recover benefits"). Tellingly, however, Anthem fails to cite to any paragraph of plaintiffs' Complaint in support of its assertion that plaintiffs bring this action derivatively. In fact, a review of the Complaint reveals that it is devoid of any reference to assignments by ERISA plan members. Moreover, the Complaint clearly alleges that it seeks damages and injunctive and declaratory relief based on Anthem's unfair and unlawful contracting practices with the participating plaintiff physicians. See, e.g., Compl. at ¶¶ 6-10, 13, 25-26, 33-35.

Actions brought by physicians who do not allege assignments from beneficiaries as the basis for their state law claims -- as this action before this Court does not -- are not within the ERISA enforcement scheme and are therefore not preempted. In Reichmister v. United Healthcare of The Mid-Atlantic, Inc., 93 F. Supp. 2d 618 (D. Md. 2000), a group of physicians brought a state law claim for negligent misrepresentation, alleging that the defendant insurer wrongfully refused to reimburse the physicians for medical services provided to a patient who had been a member of an ERISA-governed plan. The defendant argued that the physicians' claims were preempted by ERISA because they had accepted an assignment from the patient of her rights to benefits due under the plan. Id. at 619-20. In rejecting this argument, the Court stated that "[w]hile it is true that state law claims brought in a plaintiff's capacity as an assignee are preempted, . . . this exclusive remedy is limited to situations in which the plaintiff sues in its capacity as assignee." Id. at 620 (citations omitted). The court concluded, however, that "[a]t no

12

point does Plaintiff frame its action around its status as an assignee." Id. at 621. Accordingly, the
fact that the physicians had taken an assignment did not bring their claims within the civil
enforcement scheme of ERISA. Here, notwithstanding Anthem's unfounded assertions regarding
alleged derivativeness of the plaintiffs' claims, it is beyond dispute that the plaintiff physicians have
not brought this action as assignees of any ERISA beneficiaries and their claims are not preempted
under § 1132(a)(1)(B).

Moreover, Anthem's contention that the plaintiff physicians' claims "seek reimbursement of
benefits under ERISA plans" (Pet. ¶ 2) is a blatant mischaracterization of the Complaint intended
to mislead the Court into thinking plaintiffs have brought benefits-related claims under
§ 1132(a)(1)(B). Contrary to defendant's assertion, the Complaint is clearly predicated on
Anthem's "breach[] [of] its contractual obligations to the plaintiff physicians [with its] improper,
unfair and/ or deceptive practices . . . to deny, impede, delay, and reduce lawful reimbursement to
the plaintiff physicians . . . who rendered medically necessary health care services to members of
defendant's managed care plans." Compl. ¶ 7. The policies challenged include, inter alia, denying
reimbursement to physicians through improper "bundling" and "downcoding" of claims;
improperly refusing to pay "modifiers" for complicated cases; improper use of "global periods" to
deny payment for follow up care. Id. ¶ 9. Thus, in no way does the Complaint "seek
reimbursement of benefits under ERISA plans." Pet. ¶ 2. To the contrary, the Complaint
addresses situations in which care has been provided to members, but where the plaintiff physicians
have not been fully compensated under the terms of their provider agreements, regardless of the
terms of any ERISA plans. It is well-settled that claims such as these do not fall within the realm
of § 1132(a)(1)(B).

13

The obvious flaws in Anthem's position that plaintiffs' claims are completely preempted under § 1132(a)(1)(B) of ERISA have been recognized by courts that have addressed these issues. For example, in Riverhills Healthcare, Inc. v. Aetna U.S. Healthcare, Inc., No. C-1-00-525, 2000 U.S. Dist. LEXIS 19313 (S.D. Ohio Oct. 23, 2000), the plaintiff was a physician group practice that had entered into contracts with the defendant managed care organizations to provide healthcare services to the defendants' plan members. The plaintiff filed an action in state court alleging that the defendants had repeatedly breached the terms of the parties' contracts by, inter alia, failing to pay claims on a timely basis, failing to pay interest on late claims, routinely downgrading claims in order to reduce reimbursement obligations, and forcing the plaintiff to appeal claims in order to obtain full reimbursement. Id. at *4-5. The defendants removed the action to federal court arguing that the plaintiff's claims were preempted under § 1132(a) and § 1144(a).

In addressing the plaintiff's remand motion, the court first explained that complete preemption was limited to § 1132 and stated "[t]herefore, even if, as Defendants contend, Plaintiff's claims are preempted by § 1144(a) because they 'relate to any employee benefit plan', they are not removable from state court unless they represent claims for benefits under § 1132(a)(1)(B)." Id. at *7. The court then went on to reject the defendants' argument that plaintiff's claims were preempted under 1132(a)(1)(B), explaining that: "Plaintiff's right to payment derives from the fee schedules set forth in the provider agreements and not from the terms of any individual ERISA plan. Therefore, even though [the plaintiff] may submit claims for payment on behalf of plan beneficiaries, such claims do not constitute claims for plan benefits under § 1132(a)(1)(B)." Id. at *9-10 (citation omitted).

14

The holding in Riverhills is consistent with other opinions that have addressed the issue.

For example, in Anesthesia Care Associates Medical Group, Inc., 187 F.3d 1045 (9th Cir. 1999),

healthcare providers asserted claims for breach of provider agreements. The insurance company

alleged that the providers' claims were "claims for benefits" subject to ERISA's civil enforcement

scheme. Id. at 1050. The Ninth Circuit disagreed, explaining that the plaintiffs' claims arose under

provider agreements, and that such claims were not preempted by ERISA b]ecause they did not

involve a claim for benefits under the plan. Id. Similarly, in Pritt v. Blue Cross and Blue Shield of

West Virginia, Inc., 699 F. Supp. 81 (S.D. W. Va. 1988), a physician brought an action in state

court alleging that the insurance company breached the terms of the provider agreement the parties

had entered into by refusing to make payments for services rendered. The defendant contended

that the plaintiff was "a beneficiary" by virtue of the provider agreement, and that his right to

reimbursement was essentially a claim for benefits under the plan. Id. at 84. The Court rejected

this argument holding:

> Plaintiff does not bring this action to recover benefits assigned to him by participants or
> beneficiaries of an ERISA covered plan. Rather, Plaintiff alleges that Defendant breached
> the terms of the provider contract. This fact, coupled with the fact that the law regards
> provider agreements as direct purchases of services, leads the court to the conclusion that
> contract law should govern disputes relating to the provider agreements, and not ERISA.

Id.

Indeed, courts routinely find that claims brought by medical providers against insurance

companies do not fall within ERISA's civil enforcement scheme, making removal of such actions

improper. See, e.g., Hospice of Metro Denver, Inc. v. Group Health Ins., 944 F.2d 752, 756 (10th

Cir. 1991) (finding claim brought by health care provider against insurance carrier not preempted

by ERISA and distinguishing between claims brought by plan participants for benefits due under

15

the plan); Lakeview Med. Ctr. v. Aetna Health Mgmt., Inc., No. 00-cv-1761, 2000 U.S. Dist.

LEXIS 17271, at *11 (E.D. La. Nov. 17, 2000) (remanding action brought by hospital against

Aetna); Lakeland Anesthesia, Inc. v. Aetna U.S. Healthcare, Inc., No. 00-1061, 2000 U.S. Dist.

LEXIS 8540, at *14-15 (E.D. La. June 15, 2000) (holding that claims brought by physicians

against Aetna were not "completely preempted" under ERISA); Burbank Podiatry Assoc. Group v.

Blue Cross of Cal., No. C 98-2326, 1999 U.S. Dist. LEXIS 1397, at *23-24 (N.D. Cal. Feb. 2,

1999) (remanding action brought by physicians and providers against Blue Cross where

"[p]laintiffs [were] not plan participants, beneficiaries, or fiduciaries within the scope of 29 U.S.C.

§ 1132").

For the reasons set forth above, under indisputable authority, plaintiffs' claims do not fall

within the civil enforcement scheme of § 1132(a), and, therefore, the action was improperly

removed and should be remanded.

### 2.   Plaintiffs' Claims Are Not Preempted Under § 1144(a)

Although this Court need not reach the issue because the fact that the plaintiff physicians

are not beneficiaries, participants or fiduciaries of ERISA plans as required by § 1132 is

independently-sufficient for this motion to remand to be granted, as discussed above, in order to be

removable plaintiffs' claims must also "relate to" an ERISA plan under § 1144(a).[7]  Under the

clear authority of the Supreme Court, however, even if a defendant may eventually be able to

assert a defense based on ERISA preemption, such a defense does not confer federal court

---

[7]29 U.S.C. § 1144(a) provides that ERISA "shall supercede any and all state laws insofar
as they may now or thereafter relate to any employment plan."  Anthem contends without basis in
its Petition that plaintiffs' claims are removable because they "relate to one or more [ERISA]
plans . . . ."  Pet. ¶ 2.

16

jurisdiction. See Caterpillar, 482 U.S. 386. In Caterpillar, the Supreme Court held that "the

presence of a federal question . . . in a defensive argument does not overcome the paramount

policies embodied in the well-pleaded complaint rule," and a defendant "cannot, merely by injecting

a federal question into an action that asserts what is plainly a state-law claim, transform the action

into one arising under federal law, thereby selecting the forum in which the claim shall be litigated."

Id. at 398-99.  Defendant's inability to establish that the physician plaintiffs are participants,

beneficiaries or fiduciaries of an ERISA plan, or that plaintiffs are asserting claims for benefits, is

therefore fatal to Anthem's Petition, and any contention that plaintiffs' claims are preempted under

§ 1144(a) is nothing more than an affirmative defense.  See, e.g., Aetna U.S. Healthcare, Inc. v.

Maltz, No. 98 Civ. 8829, 1999 U.S. Dist. LEXIS  6708, *7 (S.D.N.Y. May 4, 1999) (remanding

action where plaintiff's state law claims did not fall within ERISA's civil enforcement scheme and

noting that "the fact that a defendant might ultimately prove that plaintiff's claims are preempted

under federal law does not establish that they are removable to federal court"); Riverhills, 2000

U.S. Dist. LEXIS 19313, at *9-10.

In any event, under directly relevant authority, plaintiffs' claims do not "relate to" any

ERISA plans.  As described above, plaintiffs allege that Anthem has employed a series of unfair

and deceptive practices in order to reduce or deny lawful reimbursement owed to the plaintiff

physicians for services they have rendered to Anthem plan members.  Courts routinely hold that

such claims are not preempted under § 1144(a).  For example, in addressing whether claims

brought by physicians for reimbursement were preempted under ERISA, the Eleventh Circuit has

held that "state law claims brought by health care providers against plan insurers too tenuously

affect ERISA plans to be preempted by the Act."  Lordmann Enters., Inc. v. Equicor, Inc., 32 F.3d

17

1529, 1533 (11th Cir. 1994).  See also Variety Children's Hosp., Inc. v. Blue Cross/Blue Shield,

942 F. Supp. 562 (S.D. Fla. 1996) (provider claims not preempted under § 1144(a)).

Recent authority involving claims brought by providers against managed care organizations

is directly on point.  In In re Managed Care Litig., which is currently pending in the Southern

District of Florida, the plaintiff physicians brought suit in federal court alleging that the defendant

insurers had wrongfully denied them reimbursement.[8]  The defendants, including Anthem, moved

to dismiss the plaintiffs claims, arguing, inter alia, that the state law claims were preempted under

ERISA.  The District Court disagreed, holding that:

> The Plaintiffs allege that the Defendants engaged in bundling and downcoding, actions
> which might sustain a breach of contract claim without a need for reference to the
> interpretation of ERISA plans.  The Plaintiffs' state law contract claims therefore do not
> "relate to" the ERISA plans, and are not preempted by the Act.

In re Managed Care Litig., MDL No. 1334, Slip Op. at 23 (S.D. Fla. Mar. 2, 2001) (a copy of

which decision is annexed as Exhibit A to this memorandum).  In support of its holding, the Court

concluded that "preemption of provider contract claims would 'defeat rather than promote'

ERISA's goal to 'protect the interest of employees and beneficiaries covered by benefit plans.'"

Id. (quoting Lordmann Enterprises, 32 F.3d at 1533).  The Court further noted that ERISA "does

not provide a cause of action for health care providers who treat ERISA participants.  In short,

preemption of state law claims would leave health care providers with no viable civil remedy."  Id.

at 24.

---

[8]Unlike this action, in addition to bringing claims under state law, the plaintiff physicians in
In re Managed Care Litig. also assert claims under federal law, including RICO.  Id. at 1.  No
question therefore existed that the physicians had standing to bring their action in federal court.

Anthem has stated that it intends to petition the MDL Panel to transfer this action to be consolidated as part of In re Managed Care Litig. Nevertheless, Anthem's Petition egregiously fails to address the obviously relevant holding in that action, which was issued approximately two weeks before Anthem filed its Petition. Moreover, Anthem fails to offer any conceivable reason for why the Florida Court would not reach the same conclusion with respect to this action.[9] For all of the foregoing reasons, it is clear that plaintiffs' claims are not preempted under ERISA and this action should be remanded to Connecticut Superior Court.

## B.   Plaintiffs' Claims Are Not Preempted By FEHBA

Defendant argues that plaintiffs' claims "relate to one or more employee benefit plans established and maintained by the United States Office of Personnel Management" and therefore arise under FEHBA. Pet. at 3. For many of the same reasons that plaintiffs' Complaint is not preempted under ERISA, FEHBA likewise does not preempt plaintiffs' claims.

As an initial matter, a number of courts have found that FEHBA, unlike § 1132(a) of ERISA, does not contain a complete preemption provision necessary to overcome the well-pleaded complaint rule. See, e.g., Baptist Hosp. v. Timke, 832 F. Supp. 338, 340-41 (S.D. Fla. 1993) (remanding action that had been removed to federal court by the defendant on the grounds of FEHBA). As the Court stated in Baptist Hosp.:

---

[9]Accordingly, if plaintiffs' remand motion is not decided until after the MDL Panel has the opportunity to address Anthem's motion to transfer the action, and if Anthem is successful on its motion, the parties will be required to take part in time consuming proceedings before the MDL Panel only to have the action remanded back to Connecticut Superior Court after it has been transferred to Florida. Anthem's failure to notify this Court of the recent holding in In re Managed Care, and explain how a different result could even conceivably apply in this action, is powerful evidence that removal of this action is nothing more than a delay tactic.

19

> The laws for which the Supreme Court found congressional intent for complete preemption, [the Labor Management Relations Act] and ERISA, give district courts original jurisdiction over cases involving private parties. FEHBA's grant of jurisdiction to the district courts, however, is limited to civil actions or claims brought against the United States. The Court, therefore, declines [defendant] Blue Cross' invitation to apply the complete preemption doctrine to FEHBA. [footnotes omitted]

832 F. Supp. at 341.[10]   See also Ramirez v. Humana, Inc., 119 F. Supp. 2d 1307, 1313 (M.D. Fla.

2000) (analyzing 1998 amendments to FEHBA and concluding that "Congress did not intend in the

FEHBA to completely preempt state law"). Therefore, FEHBA does not provide any basis for

defendant to argue that removal is appropriate with respect to federal employees.

Moreover, even assuming that FEHBA is a "complete preemption" statute with respect to

certain claims, plaintiffs' claims do not fall within any civil enforcement scheme of FEHBA.

Specifically, the regulations enacted by the Office of Personnel Management ("OPM") under

FEHBA provide that "[a] covered individual may seek judicial review of OPM's final action on the

denial of a health benefits claim." 5 CFR § 890.107(c). A "covered individual" is defined as "an

enrollee or a covered family member." 5 CFR § 890.101(a). Accordingly, because the physician

plaintiffs are not "covered individual[s]," they do not have standing to bring claims under FEHBA,

and removal under the statute was improper. Thus, notwithstanding defendants' argument that

plaintiffs' claims are preempted under FEHBA, they are not completely preempted and are not

---

[10]Significantly, this decision from the Southern District of Florida rejecting the very argument that Anthem makes for removal based on FEHBA is the same court handling the multi-district litigation to which Anthem would seek to have this action transferred. Consequently, just as with Anthem's argument for removal based on ERISA -- which argument has also already been rejected by the very court and in the very litigation to which Anthem would seek to transfer this action -- for Anthem to obtain transfer of this action to Florida based on wrongful removal under FEHBA would result in a profound waste of judicial resources, the resources of the parties, and time. Under the ruling of the Florida court regarding FEHBA in Baptist Hosp., the Florida court would just remand this action back to Connecticut Superior Court.

subject to removal. See, e.g., Franchise Tax Bd., 463 U.S. at 23-27 (discussing ERISA's analogous preemption provision, § 1144(a), and holding that preemption under that provision does not permit a defendant to remove a suit brought in state court when plaintiffs' state law claims do not fall within the civil remedy provisions of ERISA, §§ 1132(a)).

Finally, plaintiffs' claims are not preempted by 5 U.S.C. § 8902(m)(1). That section provides that "[t]he terms of any contract under this chapter which relate to the nature, provision or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law, or any regulation issued thereunder, which relates to health insurance or plans." Courts that have addressed the issue have held that FEHBA preemption is no broader than the preemptive scope of § 1144(a) of ERISA. See, e.g., Carter v. Blue Cross & Blue Shield of Fla., Inc., 61 F. Supp. 2d 1241 (N.D. Fla. 1999) (holding that, in determining the scope of FEHBA preemption under the new amendments, the standard to be applied is the same used to interpret the "relate to" standard under ERISA). Defendant fails to cite a single case indicating that claims brought by physician providers seeking reimbursement "relate to" a FEHBA plan and, therefore are preempted. The same authorities cited above, which hold that claims brought by providers for reimbursement do not relate to an ERISA plan establish that plaintiffs' claims do not relate to any FEHBA plans.

Applying the foregoing authorities, it is clear that plaintiffs' claims are not preempted under ERISA, do not seek benefits under FEHBA and, as such, are likewise not preempted under FEHBA. FEHBA therefore also fails as a basis for removal, just as ERISA fails. Consequently, the plaintiffs respectfully request that this action be remanded back to Connecticut Superior Court.

21

## III.   PLAINTIFFS ARE ENTITLED TO COSTS AND ATTORNEY'S FEES

After Anthem filed its Petition for Removal, plaintiffs notified counsel for defendant by letter dated March 22, 2001 advising them that the purported bases set forth in Anthem's Petition to establish federal question jurisdiction were insufficient on their face and contrary to controlling Second Circuit and other authority. In doing so, plaintiffs sought to avoid the expense necessary to remand this action by attempting to resolve this matter informally. Despite being directed to controlling authority that establishes that plaintiffs do not have standing to bring federal claims under ERISA or FEHBA, Anthem failed, however, to agree to remand this action. Because Anthem failed to remand the instant action under the clear authority supporting plaintiffs' position, plaintiffs have been required to expend time and costs to remand this action.

The remand statute, 28 U.S.C. § 1447(c), states that a court ordering a remand "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." Plaintiffs hereby request the imposition of costs and counsel fees in connection with this motion. Defendant has persisted in its frivolous efforts to remove the action, thereby causing plaintiffs to incur additional costs and counsel fees. Plaintiffs therefore respectfully request that the order of remand should include an order requiring Anthem to pay plaintiffs' costs and attorney's fees.

### CONCLUSION

For all of the foregoing reasons, plaintiffs respectfully request that the Court find that defendant's removal of this action was improper and grant plaintiffs' motion to remand this action to state court. Further, plaintiffs respectfully request that this Court order defendant to pay plaintiffs their costs and attorney's fees in bringing this motion, along with such other and further

22

relief as is just.

Dated: Waterbury, Connecticut
       March 28, 2001

Respectfully submitted,

The Plaintiffs

By:_____

James E. Hartley, Jr.(ct08275)
DRUBNER HARTLEY O'CONNOR
& MENGACCI, L.L.C.
500 Chase Parkway
Waterbury, CT 06708
Tel:    (203) 753-9291
Fax:    (203) 753-6373

Gregory J. Pepe, Esq.
NEUBERT, PEPE & MONTEITH, P.C.
195 Church Street, 13th Floor
New Haven, CT 06510-2026
Tel:    (203) 821-2000
Fax:    (203) 821-2009

Christopher A. Seeger
Stephen A. Weiss
SEEGER WEISS LLP
One William Street
New York, NY 10004
Tel: (203)584-0700
Fax: (203)584-0799

*Their Attorneys*

23

## CERTIFICATION

I hereby certify that a copy of the foregoing was mailed, postage prepaid, on this 28th day of March, 2001 to the following parties:

Patrick M. Noonan, Esq.
Delaney, Zemetis, Donahue, Durham &
Noonan, P.C.
Concept Park
741 Boston Post Road
Guilford, CT  06437

_____  (UE)
James E. Hartley, Jr.

Only the Westlaw citation is currently available.

United States District Court, S.D. New York.

AETNA U.S. HEALTHCARE INC., d/b/a/ Aetna
U.S. Healthcare, and Aetna, Inc.,
Petitioners,
v.

Irwin MALTZ, Individually and as natural parent
and general guardian of his
minor child, Ross Maltz, and Mara Maltz,
Individually and as natural parent and
general guardian of her minor child, Ross Maltz,
Respondents.

No. 98 CIV. 8829 WHP.

May 4, 1999.

Whitney North Seymour, Jr., Esq., New York.

Kenneth J. Kelly, Esq., Epstein Becker & Green,
P.C., New York.

## MEMORANDUM AND ORDER

PAULEY, District J.

*1 On November 16, 1998, Plaintiffs Irwin and
Mara Maltz ("The Maltzes") commenced this action
against Aetna U.S. Healthcare, Inc. and Aetna, Inc.
("Aetna") in New York State Supreme Court
alleging claims under New York General Business
Law Section 349. On December 14, 1998, Aetna
removed this action pursuant to 28 U.S.C. § 1441(a)
. On February 16, 1999, Plaintiffs moved to remand
this action to New York state court on grounds that
this Court lacked federal removal jurisdiction.
Defendants cross-moved to dismiss for failure to
state a claim pursuant to Rule 12(b)(6). Upon
consideration of the parties' submissions and oral
argument held on April 9, 1999, Plaintiffs' motion
to remand is granted.

### Background

Plaintiffs Irwin and Mara Maltz are members of a
health maintenance organization ("HMO") operated
by Defendant Aetna U.S. Healthcare, Inc., a
subsidiary of Defendant Aetna, Inc. Aetna U.S.
Healthcare, Inc. administers and underwrites

Plaintiffs' health benefit plan. Plaintiffs' son, Ross
Maltz, suffers from an acute case of Crohn's
disease. [FN1] Plaintiffs bring the present action on
behalf of their son under New York General
Business Law Section 349 which prohibits
"deceptive acts or practices in the conduct of any
business, trade or commerce or in the furnishing of
any service in this state." G.B.L. § 349. Plaintiffs
allege that Defendants have made false and
misleading statements regarding the quality of care
available to enrollees in its plan.

> FN1. Crohn's disease is an inflammatory bowel
> disease that causes inflammation in the small
> intestine. The inflammation may extend deep into
> the lining of the affected organ, causing abdominal
> pain and diarrhea. Rectal bleeding, weight loss, or
> fever may also occur.

Plaintiffs' first cause of action alleges that
Defendants, in television commercials and press
releases, misrepresented the care and treatment
available to New York State enrollees. In September
1998, Aetna launched an advertising campaign
which, through actual enrollee testimonials,
attempted to show how Aetna "provides access to
the highest quality of care." As part of this
advertising campaign, Aetna broadcasted two
television commercials on the National Broadcasting
Company's New York station on September 22,
1998. These commercials illustrated two specific
examples of the high quality care provided to actual
Aetna enrollees, one with a heart condition and one
with Crohn's disease. As for the enrollee with
Crohn's disease, Aetna claimed that it sent the
enrollee to the Cleveland Clinic because of its
"renowned expertise in treating" the disease. At
Aetna's press release issued at the announcement of
the new commercials, Dr. Arthur Leibowitz,
Aetna's Chief Medical Officer stated:
We wanted to set the record straight and show
what managed care can do. We're extremely
proud of our record of providing access to the
highest quality care, and we believe that our
members and consumers need to see how managed
care really works. These are not unusual
occurrences. They are everyday situations that
show why managed care is the best system out
there.

Plaintiffs allege that when they contacted Aetna
about the sending their son, Ross, to the Cleveland

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

Clinic for treatment, they were informed that enrollees in New York State were ineligible for treatment at the Cleveland facility.

*2 Plaintiffs' second cause of action pertains to alleged misrepresentations by Aetna regarding its prescription drug plan. Plaintiffs' second cause of action has been withdrawn as moot because Aetna has agreed to provide reimbursement for the medication.

Plaintiffs' third cause of action alleges that Defendants, in their promotional materials, misrepresented the impact of capitation [FN2] on the quality of patient care. Under New York's 1996 Managed Care Reform Act, HMOs are required to provide members with information about methods used to reimburse health care providers. N.Y. Pub. H.L. § 4408(a)(d). The New York State Department of Health's guidelines for implementing this statute provide that "...[t]he member must be informed in clear terms of the impact the payment arrangement to providers has on the provision of services." NYS DOH, Managed Care Guidelines, issued March 1997, at 14. Aetna's promotional booklet entitled, "HMO Plan Benefits," states that Aetna's "Quality Care Compensation System" "continually improve[s] medical care, enhance[s] patient satisfaction...and reduce[s] unnecessary utilization of specialist, hospital, and emergency room services." Plaintiffs allege that in reality, capitation reduces access to medical care and the quality of care received by its enrollees.

> FN2. Capitation is a compensation method under which a primary care physician is paid a fixed amount for each patient that selects him as his primary care provider regardless of whether that patient actually visits the physician, whether any services are rendered, or whether any costs are incurred.

### Discussion

Plaintiffs argue that because the causes of action outlined in the complaint are based in state law, removal was not proper, and the action should be remanded to state court. In response, Defendants argue that removal was proper because Plaintiffs' claims involve an employee benefit plan, and thus are preempted under ERISA. The defendant carries the burden of establishing removal jurisdiction. *See United Food & Commercial Workers Union, Local*

*919, v. Centermark Properties Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir.1994); *Mermelstein v. Maki*, 830 F.Supp. 180, 183 (S .D.N.Y.1993) (Sotomayor J.).

Under 28 U.S.C. § 1441(a), any civil action brought in state court may be removed by the defendant to federal district court if the district court has original jurisdiction. *See Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1 (1983); 28 U.S.C. § 1441(a). District courts have original jurisdiction over cases "arising under the Constitution, laws or treaties of the United States." 28 U.S.C. § 1331. Under the "well-pleaded complaint" rule, a cause of action "arises under" federal law only if a federal question is presented on the face of the plaintiff's complaint. *Metropolitan Life Ins. Co., v. Taylor*, 481 U.S. 58, 62 (1987); *Fleet Bank v. Burke*, 160 F.3d 883, 885 (2d Cir.1998). Moreover, the well-pleaded complaint rule prevents defendants from removing actions based on a federal defense to a state law cause of action, including the defense of preemption. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 391 (1987) (*citing Franchise Tax Bd.*, 463 U.S. at 12). Thus, the fact that a defendant might ultimately prove that plaintiff's claims are preempted under federal law does not establish that they are removable to federal court. *See Caterpillar*, 482 U.S. at 391.

*3 However, a narrow exception to the well-pleaded complaint rule exists where the "preemptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.' *Metropolitan Life*, 481 U.S. at 63-64; *Franchise Tax Bd.*, 463 U.S. at 23; *Marcus v. AT & T Corp.*, 138 F.3d 46, 52 (2d Cir.1998). In ERISA actions, the complete preemption doctrine applies to state law causes of action that fall within the scope of ERISA's civil enforcement provision, section 502(a)(1)(B). 29 U.S.C.A. § 1132(a)(1)(B). Section 502 completely preempts any state cause of action seeking the same relief, regardless of how artfully pleaded as a state action. *Giles v. NYLCARE Health Plans, Inc.*, No. 97-20840, 1999 WL 198885, at * 2 (5th Cir. Apr. 9, 1999)

Section 502(a)(1)(B) provides that "[a] civil action may be brought...by an participant or a

beneficiary...to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." *Id.* In order for a claim to fall within the scope of section 502, 1) the plaintiff must be eligible to bring a claim under that section; 2) the plaintiff's cause of action must fall within the scope of an ERISA provision that can be enforced through section 502; and 3) the plaintiff's state law claims must only be able to be resolved by interpreting the health benefits plan. *Jass v. Prudential Health Care Plan, Inc.,* 88 F.3d 1482, 1487 (7th Cir.1996).

First, as plan participants, the Maltzes are entitled to bring a suit under section 502. *See Jass,* 88 F.3d at 1489. Second, plaintiffs' claims under the General Business Law Section 349 do not fall within the scope of section 502. On its face, a suit under section 502 exclusively concerns whether or not the benefits due under the plan were actually provided. *Dukes,* 57 F.3d at 356. In the present action, the Maltzes are not seeking to recover benefits under the plan, to enforce rights under the plan, or to clarify rights under the plan because they are not seeking treatment at the Cleveland Clinic or the use of a compensation method other than capitation. *See Plumbing Indus. Bd. v. E.W. Howell Co., Inc.,* 126 F.3d 61, 69 (2d Cir.1997) (upholding removal jurisdiction when plaintiff was using state law to redress violations under section 502). In this action, plaintiffs are seeking to enforce General Business Law Section 349 through an injunction prohibiting Aetna from continuing the alleged deceptive practices and from refusing to comply with the disclosure requirements of the Managed Care Reform Act. *See Franklin H. Williams Ins. Trust, v. Travelers Ins. Co.,* 50 F.3d 144, 151 (2d Cir.1995) (remanding because section 502 does not preempt enforcement of New York Insurance Law). Thus, neither of the Maltzes' claims on their face, bear any significant resemblance to those described in section 502. *See Lupo v. Human Affairs Int'l, Inc.,* 28 F.3d 269 (2d Cir.1994).

*4 Third, the Maltzes' state law claims alleging violations of the New York General Business Law are not dependent on or derived from their rights under the plan. *See Transitional Hosp. Corp. v. Blue Cross and Blue Shield of Texas,* 164 F.3d 952, 954 (5th Cir.1999). In *Transitional,* plaintiff, a hospital which had provided services to a plan participant

sued administrators of a welfare benefit plan for breach of contract, common law misrepresentation, and statutory misrepresentation under the Texas Insurance Code. The court found that the hospital's claims of common law misrepresentation and statutory misrepresentation were not dependent on or derived from the plan participant's right to recover benefits under the plan. *Id.* Similarly, Aetna's alleged misrepresentations were made in independent promotional and advertising announcements, and can be resolved without interpreting the benefits plan. *See Rice v. Panchal,* 65 F.3d 637, 644 (2d Cir.1995) (plan participant's claims for medical malpractice under theory of respondeat superior did not involve interpretation of the ERISA plan).

Moreover, the parties agreed at oral argument, and the law is clear that while a claim for denial of benefits is preempted under section 502, *see Metropolitan Life,* 481 U.S. at 60 (finding complete preemption when plaintiff's tort and contract claims for reimplementation of benefits and insurance coverage fell within section 502), a claim regarding the quality of benefits is not. *See Dukes,* 57 F.3d at 355 (plaintiff's claims attacking the quality of benefits received fall outside scope of section 502, and must be remanded); *Moscovitch v. Danbury Hosp.,* 25 F.Supp.2d 74, 80 (D.Conn.1998) (remanding plaintiff's claims for medical malpractice because they concern the quality of benefits provided, and thusdo not fall under section 502). In this action, Aetna's alleged misrepresentations concern the quality of care provided to its enrollees. The first cause of action asserts that in its commercials, Aetna represented that enrollees with Crohn's disease would be sent to the highly regarded Cleveland facility. Similarly, the third cause of action asserts that Aetna represented that the capitation system results in improved quality of healthcare. Thus, as Plaintiffs' claims concern the quality of care, they do not fall under section 502.

Because complete preemption does not apply, this Court need not address whether Plaintiffs' claims are preempted under section 514(a). When the doctrine of complete preemption does not apply, the district court lacks removal jurisdiction. Thus, it cannot do anything but remand the action to state court where the preemption issue can be resolved. *Dukes,* 57 F.3d at 355 *(citing Franchise Tax Bd.,* 463 U.S. at 27-28).

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

Conclusion

For the reasons set forth above, Plaintiffs' motion to remand is granted.

SO ORDERED:

END OF DOCUMENT

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

1999 U.S. Dist. LEXIS 1397 printed in FULL format.

BURBANK PODIATRY ASSOCIATES GROUP, APC; LESLIE G. LEVY, D.P.M.; CALIFORNIA
PODIATRIC MEDICAL ASSOCIATION on behalf of themselves and all other similarly situated,
Plaintiffs, v. BLUE CROSS OF CALIFORNIA, Defendant. BLUE CROSS OF CALIFORNIA,
Petitioner, v. LESLIE G. LEVY, D.P.M., Respondent. BLUE CROSS OF CALIFORNIA, Petitioner, v.
BURBANK PODIATRY ASSOCIATES GROUP, APC, Respondents.
No. C 98-2326 SI, No. C 98-3446 SI, No. C 98-3447 SI
UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA
1999 U.S. Dist. LEXIS 1397

February 2, 1999, Decided
February 3, 1999, Filed; February 5, 1999, Entered in Civil Docket

DISPOSITION: *1 Plaintiffs' motion to remand C
98-2326 GRANTED and action REMANDED to San
Francisco Superior Court. Petitions to compel arbitra-
tion (C 98-3446 and C 98-3447 DISMISSED for want
of jurisdiction.
CASE SUMMARY

PROCEDURAL POSTURE: In plaintiff physicians'
action for breach of contract and breach of an implied
covenant of good faith and fair dealing, defendant in-
surer moved to compel arbitration. Plaintiff moved to
remand the case to the state court and filed a motion to
compel classwide arbitration. Both parties filed motions
to dismiss the competing motions to compel arbitration.

OVERVIEW: Plaintiff physicians sued defendant in-
surer for breach of contract and for breach of an implied
covenant of good faith and fair dealing. Defendant re-
moved the case to the district court. Plaintiffs moved to
remand the action to the state court. Defendant insurer
moved to compel arbitration. Plaintiffs filed a motion to
compel classwide arbitration. Plaintiffs and defendant
filed motions to dismiss the competing motions to com-
pel arbitration. The court held that because plaintiffs'
action was based on a state law breach of contract claim,
the case was not preempted by the Employee Retirement
Income Security Act of 1974 (ERISA), 29 U.S.C.S. §
1001 et seq. Plaintiffs' claim was not based on a re-
lationship covered under ERISA, § 1001 et seq., such
as a relationship between a plan and a plan participant.
Therefore, the action was remanded to the state court.
Because the motions to compel arbitration and to dis-
miss the petitions to compel arbitration were underlying
claims, the motions were dismissed as moot.

OUTCOME: The court remanded plaintiff physicians'
breach of contract and breach of an implied covenant of
good faith and fair dealing case to the state court be-
cause plaintiffs' claims were not preempted by federal

employee benefit law. Because the claims were not pre-
empted, the underlying claims were dismissed as moot.

CORE TERMS: preemption, preempted, beneficiary,
arbitration, compel arbitration, patients, federal juris-
diction, state law, contractual relationship, assignee,
provider, fee schedule, removal, employee benefit plan,
contract law, federal law, fiduciary, preempt, lack of ju-
risdiction, subject matter jurisdiction, reimbursement,
contractual, classwide, causes of action, federal ques-
tion, state claim, participating, unilaterally, motions to
dismiss, separate contract

CORE CONCEPTS -

Civil Procedure: Removal: Basis for Removal
Defendant has the burden of establishing that removal is
proper. The removal statute is strictly construed against
removal jurisdiction.

Labor & Employment Law: Collective Bargaining &
Labor Relations: Arbitration: Limits
The Federal Arbitration Act (FAA), 9 U.S.C.S. § 1 et
seq., governs agreements to arbitrate contained in writ-
ten contracts evidencing transactions involving interstate
commerce. 9 U.S.C.S. § 2. Section 4 of the FAA , 9
U.S.C.S. § 4, provides that a party may seek an order
compelling arbitration from any district court that would
have jurisdiction in a civil action of the subject matter of
a suit arising out of the controversy between the parties.
9 U.S.C.S. § 4. By its terms, the FAA, 9 U.S.C.S. § 1
et seq., leaves no place for the exercise of discretion by
a district court, but instead mandates district courts shall
direct the parties to proceed to arbitration on issues as
to which an arbitration agreement has been signed.

Civil Procedure:   Jurisdiction:   Subject Matter
Jurisdiction: Federal Question Jurisdiction
Federal courts have jurisdiction of all civil actions aris-
ing under the Constitution, laws, or treaties of the United

States. 28 U.S.C.S. § 1331. The presence of federal question jurisdiction is governed by the well pleaded complaint rule, which provides that a defendant may not remove a case to federal court unless plaintiff's complaint establishes that the case arises under federal law. Even where a complaint does not on its face indicate a case arises under federal law, however, jurisdiction may lie if Congress so completely preempts a particular area that any civil complaint raising this select group of claims is necessarily federal in character.

Civil Procedure:   Jurisdiction:   Subject Matter Jurisdiction: Federal Question Jurisdiction
Pensions & Benefits Law: Employee Retirement Income Security Act (ERISA): Civil Claims & Remedies
The Employee Retirement Income Security Act of 1974, 29 U.S.C.S. § 1001 et seq., is a statute through which Congress has so completely preempted certain areas that federal jurisdiction will lie.

Civil Procedure:   Jurisdiction:   Subject Matter Jurisdiction: Federal Question Jurisdiction
Pensions & Benefits Law: Employee Retirement Income Security Act (ERISA): Civil Claims & Remedies
The Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C.S. § 1001 et seq., preempts state law causes of action that relate to an employee benefit plan. 29 U.S.C.S. § 1144(a). However, ERISA preemption, without more, does not convert a state claim into an action arising under federal law. Complete preemption, and consequently federal question jurisdiction, requires that the state law cause of action that is preempted fall within the scope of the civil enforcement provision of ERISA, 29 U.S.C.S. § 1132(a). Claims falling outside the scope of § 1132(a), even if preempted by § 1144(a), do not provide a basis for federal jurisdiction.

Pensions & Benefits Law: Employee Retirement Income Security Act (ERISA): Civil Claims & Remedies
See 29 U.S.C.S. § 1132(a)(1)(B).

Pensions & Benefits Law: Employee Retirement Income Security Act (ERISA): Civil Claims & Remedies
See 29 U.S.C.S. § 1002.

Pensions & Benefits Law: Employee Retirement Income Security Act (ERISA): Federal Preemption
The Supreme Court limits the scope of the "related to" provision of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C.S. § 1001 et seq. To determine whether preemption applies, courts should look to the Congressional objectives of ERISA, § 1001 et seq., as a guide to the scope of the state law that Congress understood would be preempted.

Pensions & Benefits Law: Employee Retirement Income Security Act (ERISA): Federal Preemption
The key to distinguishing between what the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C.S. § 1001 et seq., preempts and what it does not lies in recognizing that ERISA, § 1001 et seq., comprehensively regulates certain relationships. For instance, the ERISA, § 1001 et seq., regulates the relationship between plan and plan member, between plan and employer, between employer and employee, and between plan and trustee. Complete preemption, and thus federal jurisdiction, requires that a plaintiff bringing the claim must participate in one of these relationships by being a plan participant, beneficiary, or fiduciary entitled to seek recovery under 29 U.S.C.S. § 1132(a). State contract law that reaches a relationship already regulated by ERISA, § 1001 et seq., may be preempted, while state contract law that addresses a relationship not regulated by ERISA, § 1001 et seq., is not.

Pensions & Benefits Law: Employee Retirement Income Security Act (ERISA): Federal Preemption
While preemption under 29 U.S.C.S. § 1144(a) may be sufficient to provide a defense to state law claims, preemption under the Employee Retirement Income Security Act of 1974, 29 U.S.C.S. § 1001 et seq., , without more, does not convert a state claim into an action arising under federal law.

Civil Procedure: Removal: Basis for Removal
The difference between preemption and complete preemption is important. When the doctrine of complete preemption does not apply, but a plaintiff's state claim is arguably preempted under, a district court, being without removal jurisdiction, cannot resolve the dispute regarding preemption. It lacks power to do anything other than remand to a state court where the preemption issue can be addressed and resolved.

Labor & Employment Law: Collective Bargaining & Labor Relations: Arbitration: Limits
Although § 4 of the Federal Arbitration Act (FAA), 9 U.S.C.S. § 4, provides that a party may seek an order from a district court compelling arbitration, the FAA, 9 U.S.C.S. § 1 et seq., does not provide an independent basis for jurisdiction. The Supreme Court holds that § 4 of the FAA, 9 U.S.C.S. § 4, provides for an order compelling arbitration only when a federal district court has jurisdiction over a suit on the underlying dispute. Hence, there must be diversity of citizenship or some other independent basis for federal jurisdiction before an order can issue.

COUNSEL: For BURBANK PODIATRY ASSOCIATES GROUP, APC, Plaintiff (98-CV-2326): William Bernstein, Michael W. Sobol, Jacqueline E. Mottek, Elizabeth J. Cabraser, Lieff Cabraser Heimann & Bernstein LLP, San Francisco, CA.

For BURBANK PODIATRY ASSOCIATES GROUP, APC, LESLIE G. LEVY, CALIFORNIA PODIATRIC MEDICAL ASSOCIATION, Plaintiffs (98-CV-2326): C. Keith Greer, Greer & Early, San Diego, CA.

For BLUE CROSS OF CA, defendant (98-CV-2326): Samuel J. Fleischmann, Vincent P. Finigan, Jr., Brobeck Phleger & Harrison LLP, San Francisco, CA.

For BLUE CROSS OF CA, defendant (98-CV-2326): Jody L. Spiegel, Brobeck Phleger & Harrison, Los Angeles, CA.

For BLUE CROSS OF CA, defendant (98-CV-2326): James H. Fleming, C. Mark Humbert, Fleming & Phillips, Walnut Creek, CA.

For BLUE CROSS OF CALIFORNIA, Plaintiff (98-CV-3446): Samuel J. Fleischmann, Vincent P. Finigan, Jr., Leslie C. McKnew, Brobeck Phleger & Harrison LLP, San Francisco, CA.

For LESLIE G. LEVY, D.PM, defendant (98-CV-3446): *2 William Bernstein, Michael W. Sobol, Jacqueline E. Mottek, Elizabeth J. Cabraser, Lieff Cabraser Heimann & Bernstein LLP, San Francisco, CA.

For LESLIE G. LEVY, D.PM, defendant (98-CV-3446): Michael McShane, Richard Alexander, Tyler A. Shaw, The Alexander Law Firm, San Jose, CA.

For LESLIE G. LEVY, D.PM, defendant (98-CV-3446): C. Keith Greer, Greer & Early, San Diego, CA.

For BLUE CROSS OF CA, Petitioner (98-CV-3447): Samuel J. Fleischmann, Vincent P. Finigan, Jr., Leslie C. McKnew, Brobeck Phleger & Harrison LLP, San Francisco, CA.

For BLUE CROSS OF CA, Petitioner (98-CV-3447): James H. Fleming, C. Mark Humbert, Fleming & Phillips, Walnut Creek, CA.

For BURBANK PODIATRY ASSOCIATES GROUP, APC, Respondent (98-CV-3447): William Bernstein, Michael W. Sobol, Jacqueline E. Mottek, Elizabeth J. Cabraser, Lieff Cabraser Heimann & Bernstein LLP, San Francisco, CA.

JUDGES: SUSAN ILLSTON, United States District Judge.

OPINIONBY: SUSAN ILLSTON

OPINION: ORDER OF REMAND

ORDER DISMISSING PETITIONS TO COMPEL ARBITRATION FOR LACK OF JURISDICTION

This Court has heard oral argument on several motions in these related cases: physician/plaintiffs' motion to remand in C 98-2326; *3 respondents' motions to dismiss the petitions to compel arbitration in Nos. C 98-3446 and C 98-3447; and competing motions to compel arbitration based on these petitions, petitioner Blue Cross's motion to compel individual arbitration and physician/respondents' cross-motion to compel classwide arbitration. Having considered the arguments of counsel and the papers submitted, and for the reasons set out below, the Court hereby GRANTS the motion to remand and DISMISSES the petitions to compel arbitration for lack of jurisdiction.

BACKGROUND

These related cases all involve actions by physicians, the physicians' participating medical groups, or the physicians' professional association against Blue Cross of California ("Blue Cross") alleging that Blue Cross unilaterally changed the terms of the Participating Physician Agreement ("Agreement") through which the physicians agreed to provide services to members of the Blue Cross Prudent Buyer Plan and agreed to charge Blue Cross for those services according to a set fee schedule. These cases are related to similar actions also before this Court, Mullens v. Blue Cross, 1999 U.S. Dist. LEXIS 1278, C 98-0078, and Blue Cross v. Mullens, 1999 U.S. Dist. LEXIS 1278, C 98-0710.

The plaintiffs *4 in Burbank Podiatry et al. v. Blue Cross, 1999 U.S. Dist. LEXIS 1397, C 98-2326, filed an action in San Francisco Superior Court alleging that Blue Cross unilaterally changed the terms of their Agreement by changing the unit values for various procedure codes and the conversion factors for various specialty services that were part of the fee schedule incorporated into the Agreement. In the state court action, Burbank Podiatry Associates Group ("BPAG"), Leslie Levy ("Levy"), and California Podiatric Medical Association ("CPMA"), collectively "the Burbank Podiatry plaintiffs," alleged causes of action for breach of contract and breach of the implied

covenant of good faith and fair dealing. The Burbank Podiatry plaintiffs also included class allegations on their own behalf "and as a class action on behalf of all California Medical Association members who received compensation for health services they provided in 1993 through 1996 under the Prudent Buyer Plan . . . ." Complaint P 26. The Burbank Podiatry plaintiffs' class action is pursuant to California Code of Civil Procedure § 382. Complaint P 27. Defendant Blue Cross removed this action to this Court, alleging complete preemption by ERISA of the Burbank*5 Podiatry plaintiffs' claims, and plaintiffs moved to remand this action.

Plaintiffs' Agreement contains several provisions relevant here. n1 First, the contract provides that Blue Cross and its participating physicians are independent entities. Loppnow Declaration in Support of Petition to Compel Individual Arbitration, C 98-3447, Exhibit C 3.1. Second, the contract encourages physicians to seek assignment for the payment of Medical Services from patients "to the extent possible." Id. P 4.3. Third, the contract requires the physicians to bill Blue Cross directly, provides that Blue Cross will pay the physicians directly for services rendered, and does not condition payment upon obtaining assignment from the physician's patients. Id. PP 6.1, 6.8, 6.9. Finally, the 1994 contract contains an arbitration clause which provides:

In the event that any problem or dispute concerning the terms of this Agreement, other than a Utilization Review decision as provided for in Article VII, is not satisfactorily resolved, BLUE CROSS and PHYSICIAN agree to arbitrate such problem or dispute. Such arbitration shall be initiated by either party making a written demand for arbitration on*6 the other party. The arbitration will be conducted under the Commercial Rules of the American Arbitration Association, unless otherwise mutually agreed in writing by BLUE CROSS and PHYSICIAN. PHYSICIAN and BLUE CROSS agree that the arbitration results shall be binding on both parties in any subsequent litigation or other dispute.

Id. P 11.2. The 1983 contract contains an arbitration clause which provides:

In the event that any problem or dispute concerning the terms of this Agreement, other than a Utilization Review decision as provided for in Article VII, is not satisfactorily resolved, BLUE CROSS and PHYSICIAN agree to arbitrate such problem or dispute. Such arbitration shall be initiated by either party making a written demand for arbitration on the other party. Within thirty (30) days of that demand, BLUE CROSS and PHYSICIAN

shall each designate an arbitrator and give written notice of such designation to the other. Within thirty (30) days after these notices have been given, the two arbitrators selected by this process shall select a third neutral arbitrator and give notice of the selection to BLUE CROSS and PHYSICIAN. The three arbitrators shall hold a hearing*7 and decide the matter within sixty (60) days thereafter.

The arbitration shall be conducted pursuant to the California Code of Civil Procedure, Title Nine, Section 1280 et seq., unless otherwise mutually agreed. PHYSICIAN and BLUE CROSS agree that the arbitration results shall be binding on both parties in any subsequent litigation or other dispute.

Id. PP 11.2, 11.3.

n1 References are to terms in the 1994 contract unless otherwise noted.

In response to plaintiffs' action, defendant Blue Cross filed two petitions to compel individual arbitration, one against Levy, C 98-3446, and one against BPAG, C 98-3447. Levy and BPAG in turn moved to compel classwide arbitration, and also moved to dismiss for lack of subject matter jurisdiction. Defendant apparently did not move to compel arbitration against CPMA because CPMA does not have a contractual relationship with defendant pursuant to the Agreement. See Opposition to Plaintiffs' Motion to Remand, p.3 n.6.

The multiple motions in these related*8 actions thus reduce to two issues. First, does this Court have subject matter jurisdiction over plaintiffs' claims, including both the underlying claims and the petitions to compel arbitration? Second, may this Court order classwide arbitration of plaintiffs' claims?

## LEGAL STANDARD

### 1. Motion to Remand

Defendant has the burden of establishing that removal was proper. Gaus v. Miles, Inc., 980 F.2d 564, 566-67 (9th Cir. 1992); Westinghouse Elec. Corp. v. Newman & Holtzinger, P.C., 992 F.2d 932, 934 (9th Cir. 1993). The removal statute is strictly construed against removal jurisdiction. Gaus, 980 F.2d at 566; Libhart v. Santa Monica Dairy Co., 592 F.2d 1062, 1064 (9th Cir. 1979); Boggs v. Lewis, 863 F.2d 662, 663 (9th Cir. 1988).

## 2. Motion to Compel Arbitration

The Federal Arbitration Act ("FAA") governs agreements to arbitrate contained in written contracts evidencing transactions involving interstate commerce. 9 U.S.C. § 2. Section 4 of the FAA provides that a party may seek an order compelling arbitration from any district court that would have jurisdiction "in a civil action . . . of the subject matter of a suit arising out of the*9 controversy between the parties . . . ." 9 U.S.C. § 4. "By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." See Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218, 105 S. Ct. 1238, 1241, 84 L. Ed. 2d 158 (1985).

## DISCUSSION

First, the Court must address the question of jurisdiction over the Burbank Podiatry plaintiffs' claims against Blue Cross, and over the various parties' motions to compel arbitration. The plaintiffs asserted solely state law claims against Blue Cross in their action in San Francisco Superior Court. Defendant Blue Cross removed that action to this Court based on ERISA preemption of those claims.

In Mullens v. Blue Cross, this Court held that the plaintiff's claims were preempted by ERISA, finding that because Mullens accepted assignment of his patients' claims, his claim was based on his patients' claims, related to an ERISA plan, and thus preempted. Order Denying Plaintiff's Motion to Remand, C 97-1198, July 3, 1997. This Court relied on Misic *10 v. Building Service Employees Health & Welfare Trust, 789 F.2d 1374 (9th Cir. 1986), for that holding, and found jurisdiction based on ERISA preemption. Recent Ninth Circuit decisions regarding ERISA preemption, however, suggest that this Court should reconsider its approach in Mullens. See Geweke Ford v. St. Joseph's Omni Pref. Care Inc., 130 F.3d 1355 (9th Cir. 1997); Bast v. Prudential Ins. Co., 150 F.3d 1003 (9th Cir. 1998); Emard v. Hughes Aircraft Co., 153 F.3d 949 (9th Cir. 1998); Oper. Eng. Health & Welfare v. JWJ Contracting Co., 135 F.3d 671 (9th Cir. 1998).

In its various briefs, Blue Cross argues that this Court's ruling in Mullens v. Blue Cross was correct and is controlling, and that this Court should find jurisdiction based on ERISA preemption for the Burbank Podiatry plaintiffs' action as well. Both parties agree

that if this Court has jurisdiction over the underlying claims pursuant to ERISA preemption, this Court has jurisdiction to decide the question of class arbitrability. In light of legal developments since this Court's order in Mullens v. Blue Cross, it is appropriate here to examine carefully the question of jurisdiction over the*11 plaintiffs' claims pursuant to ERISA preemption.

## 1. ERISA Preemption.

Blue Cross bases its claim to jurisdiction on federal question jurisdiction, as federal courts "have jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The presence of federal question jurisdiction is governed by the "well-pleaded complaint" rule, which provides that "a defendant may not remove a case to federal court unless the plaintiff's complaint establishes that the case 'arises under' federal law." Franchise Tax Board v. Construction Laborers Vacation Trust , 463 U.S. 1, 10, 103 S. Ct. 2841, 2847, 77 L. Ed. 2d 420 (1983). Even where the complaint does not on its face indicate a case "arises under" federal law, however, jurisdiction may lie if "Congress . . . so completely preempts a particular area that any civil complaint raising this select group of claims is necessarily federal in character." Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 63-64, 107 S. Ct. 1542, 1546, 95 L. Ed. 2d 55 (1987). ERISA is a statute through which Congress has so completely preempted certain areas that federal jurisdiction will*12 lie. Id., 481 U.S. at 65-66, 107 S. Ct. at 1547. Thus, the question is whether plaintiffs' claims fall within the areas that are completely preempted by ERISA.

The Burbank Podiatry plaintiffs have moved to remand their action to San Francisco Superior Court, arguing that there is no federal jurisdiction here because they do not bring their claims as assignees of ERISA plan participants or beneficiaries. Blue Cross responds that this Court's prior ruling in Mullens v. Blue Cross controls, that plaintiffs' authorities do not control, that plaintiffs do bring their claims as assignees of ERISA plan participants or beneficiaries, and therefore plaintiffs' claims are preempted by ERISA.

ERISA preempts state law causes of action that "relate to" an employee benefit plan. 29 U.S.C. § 1144(a). However, "ERISA preemption, without more, does not convert a state claim into an action arising under federal law." Metropolitan Life, 481 U.S. at 64, 107 S. Ct. at 1547. Complete preemption, and consequently federal question jurisdiction, requires that the state law cause of action that is preempted fall within the scope of ERISA's

civil enforcement provision, 29 U.S.C. § 1132(a). *13 Geweke Ford v. St. Joseph's Omni Pref. Care Inc., 130 F.3d 1355, 1358 (9th Cir. 1997). Claims falling outside the scope of § 1132(a), even if preempted by § 1144(a), do not provide a basis for federal jurisdiction. Dukes v. U.S. Healthcare, Inc., 57 F.3d 350, 355 (3rd Cir. 1995), cert. denied, 516 U.S. 1009, 116 S. Ct. 564, 133 L. Ed. 2d 489 (1995).

In Metropolitan Life, the Supreme Court held that "Congress has clearly manifested an intent to make causes of action within the scope of the civil enforcement provisions of 29 U.S.C. § 1132(a)(1)(B) removable to federal court." 481 U.S. at 66, 107 S. Ct. at 1548. Section 1132(a)(1)(B) of ERISA provides:

A civil action may be brought --

(1) by a participant or beneficiary

. . .

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his right to future benefits under the terms of the plan.

ERISA defines "beneficiary" to mean "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002. ERISA defines "plan," as*14 used in § 1132(a)(1)(B), to mean

any plan, fund, or program . . . established or maintained by an employer . . . for the purpose of providing for its participants or their beneficiaries , . . medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services . . . .

Thus Congress intended to confer jurisdiction on claims of plan participants and beneficiaries arising out of the terms of the plan. See Metropolitan Life, 481 U.S. at 66, 107 S. Ct. at 1547.

The Burbank Podiatry plaintiffs, as physicians, however, sue under their separate contract with defendant Blue Cross, and not as plan participants. See Loppnow Declaration in Support of Petition to Compel Individual Arbitration, C 98-3447, Exhibits A & C - "Participating Physician Agreement." Specifically, plaintiffs allege that Blue Cross unilaterally changed the fee schedule incorporated into the Agreement that determined the level

of reimbursement plaintiffs received for care provided to Blue Cross patients, and*15 that Blue Cross made these changes without adhering to the notice requirements within the Agreement. See Complaint, PP 9, 15, 15-24, attached as Exhibit A to Defendant's Notice of Removal, C 98-2326. Plaintiffs' action arises out of the terms of their separate contract with Blue Cross, not out of the terms of their patients' employee welfare benefit plans.

Defendant argues, however, that plaintiffs are plan beneficiaries because plaintiffs are the assignees of their patients' claims. Defendant points to sections of the Participating Physician Agreement that encourage physicians to seek assignment for the payment of Medical Services from their patients. See, e.g., Loppnow Decl. in Support of Petition to Compel Individual Arbitration, C 98-3347, Exhibit C P 4.3. In addition, defendant cites Misic for the proposition that because plaintiffs accept assignment of their patients' claims for reimbursement, plaintiffs stand in the shoes of the plan participants or beneficiaries, and plaintiffs' claims are therefore preempted by ERISA. See Misic, 789 F.2d at 1379.

In Misic, the Ninth Circuit held that a physician who sued derivatively, as assignee of beneficiaries under*16 an ERISA plan, had standing to assert the claims of his assignors brought under 29 U.S.C. § 1132(a). Id. at 1378-79. There, however, the plaintiff physician had no independent contractual relationship with the defendant. Id. at 1378. That is not the situation here, where the Burbank Podiatry plaintiffs have a contractual relationship with Blue Cross through the Participating Physician Agreement. Although the Agreement encourages physicians to seek assignment from patients where possible, it explicitly provides that Blue Cross will pay the physicians directly, and does not make those payments contingent upon obtaining assignment Loppnow Declaration in Support of Petition to Compel Individual Arbitration, C 98-3447, Exhibit A PP 4.2, 5.1, 6.1, 6.8, 6.9. Here, plaintiffs do not claim to proceed as assignees of ERISA plan participants or beneficiaries under the terms of the ERISA plan. Instead, they seek to enforce the terms of their separate contract with Blue Cross regarding the fee schedule for services rendered. Unlike the plaintiffs here, the plaintiff in Misic conceded that his state law claims were preempted by ERISA under then-current Ninth Circuit law, and the*17 court did not engage in a lengthy analysis of the preemption question. See id. at 1379. Accordingly, Misic is distinguishable, and this Court does not find Misic controlling here.

Several other district courts in California have reached

-cv-04015-FAM Document 2 Entered on FLSD Docket 09/28/2001 Page

1999 U.S. Dist. LEXIS 1397, *17 LEXSEE

similar conclusions in actions involving Blue Cross and Participating Physicians Agreements decided since this Court addressed this issue in Mullens. In Blue Cross v. Anesthesia Consultants, C 97-1655 (Northern District of California), Judge Chesney found no ERISA preemption where the plaintiff physicians alleged improper modification of the provider agreement fee schedules in agreements similar to the one at issue here. Judge Chesney noted that the plaintiffs did not claim to proceed as assignees of ERISA plan participants or beneficiaries, but instead brought the action under their independent contractual relationship with Blue Cross. Judge Chesney distinguished Misic, noting that the Misic plaintiff had no independent contractual relationship with the defendant, and could only proceed as the assignee of his patients. Judge Chesney relied on two other district court cases, Pritt v. Blue Cross, 699 F. Supp. 81 (S.D. *18 W. Vir. 1988), and Memorial Hosp. v. Empire Blue Cross and Blue Shield, 1994 WL 132151 (S.D.N.Y. 1994), which reached similar conclusions regarding provider agreements and declined to find jurisdiction based on ERISA preemption. n2

n2 In Pritt, the court noted that the plaintiff alleged that Blue Cross breached the provider contract, and that provider contracts were direct purchases of services not governed by ERISA. Pritt, 699 F. Supp. at 84. In Memorial Hospital, the court declined to find that the plaintiff physicians were assignees of their patients' claims, noting that provider agreements were separate contractual arrangements for goods and services, and could not be identified with the contract between the insurer and its policyholders to accomplish ERISA preemption. See Memorial Hosp., 1994 WL 132151 *3 (S.D. N.Y. 1994) (citing Group Life & Health Ins. Co. v. Royal Drug Co., 440 U.S. 205, 213-16, 99 S. Ct. 1067, 1074-75, 59 L. Ed. 2d 261 (1979)).

In Blue Cross v. Beaver Medical *19 Clinic, Inc., C 97-3425 (Central District of California), Judge Marshall concluded that the plaintiffs' Provider Agreements with Blue Cross were entirely separate from the terms, conditions and/or administration of the ERISA-governed plan. Judge Marshall also distinguished Misic, found no complete preemption under ERISA, and dismissed the action.

Finally, in Blue Cross v. Kern Bone and Joint Specialists, C 97-0841 (Eastern District of California), Judge Burrell concluded that the plaintiff's dispute with Blue Cross centered around the plaintiff's independent,

contractual relationship with Blue Cross in which the plaintiff's rights were not dependent upon the rights of ERISA beneficiaries. Judge Burrell noted that this was simply a contractual dispute over which the court did not have jurisdiction, citing the Ninth Circuit decision in Geweke Ford v. St. Joseph's Omni Preferred Care, 130 F.3d 1355, 1359 (9th Cir. 1993).

Defendant argues that these decisions are not controlling, and that this Court should follow this Court's decision in the Mullens v. Blue Cross, in which this Court relied on Misic to find ERISA preemption and therefore subject matter jurisdiction. *20 The facts of Mullens were slightly different, however, than those presented here. In Mullens, the plaintiff objected to Blue Cross' unilateral refusal to pay for surgical trays that had previously been reimbursable expenses under the plaintiff's contract with Blue Cross. Blue Cross introduced evidence that the surgical trays used by plaintiff for which he sought reimbursement were for specific patients from which plaintiff had obtained assignment for the payment of medical services. Here, however, plaintiffs object to changes in the fee schedule that is incorporated as part of their separate agreement with Blue Cross. The dispute here is over the terms of the agreement itself.

In addition, since this Court's order in Mullens v. Blue Cross, the Ninth Circuit authority regarding ERISA preemption has evolved, and suggests that the analysis in that order may no longer be accurate. See Geweke Ford v. St. Joseph's Omni Pref. Care Inc., 130 F.3d 1355 (9th Cir. 1997); Bast v. Prudential Ins. Co., 150 F.3d 1003 (9th Cir. 1998). Both Bast and Geweke suggest that the reach of ERISA preemption is not as broad as the Court's order in Mullens v. Blue Cross might*21 suggest, and that the appropriate focus is the intent of Congress to regulate ERISA-protected relationships.

In Bast, the Ninth Circuit noted that in recent decisions, "the Supreme Court has limited the scope of the 'related to' provision of ERISA." Bast, 150 F.3d at 1007. To determine whether preemption applies, "courts should look to the Congressional objectives of ERISA as a guide to the scope of the state law that Congress understood would be preempted." Geweke Ford v. St. Joseph's Omni Pref. Care Inc., 130 F.3d 1355, 1358 (9th Cir. 1997); Bast, 150 F.3d at 1007. In Geweke, the Ninth Circuit noted "we start with the presumption that Congress did not intend to supplant state law in fields of traditional state regulation" such as contract law. Geweke, 130 F.3d at 1358-59.

"The key to distinguishing between what ERISA preempts and what it does not lies . . . in recogniz-

ing that the statute comprehensively regulates certain relationships: for instance, the relationship between plan and plan member, between plan and employer, between employer and employee . . ., and between plan and trustee." General American Life Ins. Co. v. Castonguay, 984 F.2d 1518, *221521 (9th Cir. 1993); see also Geweke, 130 F.3d at 1358. Complete preemption, and thus federal jurisdiction, requires that the plaintiff bringing the claim must participate in one of these relationships by being a plan participant, beneficiary, or fiduciary entitled to seek recovery under 29 U.S.C. § 1132(a). See Geweke Ford v. St. Joseph's Omni Pref. Care Inc., 130 F.3d 1355, 1358 (9th Cir. 1997); Harris v. Provident Life and Accident Ins. Co., 26 F.3d 930, 934 (1994) (Because plaintiffs are not plan participants, beneficiaries, or fiduciaries, their remaining state claims are not within the scope of § 1132(a) and therefore not completely preempted."). State contract law that reaches a relationship already regulated by ERISA may be preempted, while state contract law that addresses a relationship not regulated by ERISA is not. See Castonguay, 984 F.2d at 1521-22; Geweke, 130 F.3d at 1359.

In Geweke, the plaintiff, an employer with a self-funded employee benefit plan, sued the plan administrator and excess loss insurer for reimbursement for payments the employer made to employees under the plan. There, the Ninth Circuit looked to the relationship*23 among the parties to determine whether those relationships were governed by ERISA. The court noted that the plaintiff's claims arose from state laws of general application, did not depend upon ERISA, and did not affect the relationships between principal ERISA participants. Id. at 1360. Relying on other courts which had declined to find preemption of traditional state law claims that were incidentally related to an ERISA plan, the Ninth Circuit concluded that "the contractual relationships of the parties were not connected to ERISA's regulatory scheme, and thus, ERISA did not completely preempt the state law claims." Geweke, 130 F.3d at 1358. Without complete preemption, federal subject-matter jurisdiction was lacking, and therefore removal was improper. Id.

Here, plaintiffs seek to recover under state contract law for a breach in the contractual relationship between Blue Cross and its participating physicians. This is not the relationship between plan and plan member, plan and employer, employer and employee, or plan and trustee. See Castonguay, 984 F.2d at 1521. Plaintiffs are not plan participants, beneficiaries, or fiduciaries within the scope of 29 U.S.C. *24 § 1132(a). See Harris, 26 F.3d at 934. The Burbank Podiatry plaintiffs raise a

traditional state law claim that does not implicate the enforcement provisions of § 1132(a), so there is no complete preemption here.

Defendant argues that even under the test articulated in Bast, the contractual relationship between Blue Cross and its health care providers at issue here "relates to" an employee welfare benefit plan, and is thus preempted by ERISA. Opposition to Plaintiffs' Motion to Dismiss for Lack of Subject Matter Jurisdiction, p. 14-15. It is important to note, however, that in Bast, the Ninth Circuit did not address the question of complete preemption under 29 U.S.C. § 1132(a). In Bast, the survivor of a plan participant sued the plan administrator for refusing to authorize a bone marrow transplant. There, the Ninth Circuit found that the plaintiffs' contract claims were preempted under 29 U.S.C. § 1144(a), not under 29 U.S.C. § 1132(a), because they addressed a claim brought by a plan beneficiary's estate regarding the improper processing of a claim for benefits under an employee benefit plan. Bast, 150 F.3d at 107-08. Preemption was not the basis for*25 federal jurisdiction in Bast, and therefore the court did not address whether there was the complete preemption under 29 U.S.C. § 1132(a) necessary to support federal jurisdiction.

While preemption under 29 U.S.C. § 1144(a) may be sufficient to provide a defense to state law claims, "ERISA preemption, without more, does not convert a state claim into an action arising under federal law." Metropolitan Life, 481 U.S. at 64, 107 S. Ct. at 1547; see also Dukes v. U.S. Healthcare, Inc., 57 F.3d 350, 355 (3rd Cir. 1995). As the Third Circuit noted in Dukes:

The difference between preemption and complete preemption is important. When the doctrine of complete preemption does not apply, but the plaintiff's state claim is arguably preempted under § 1144(a), the district court, being without removal jurisdiction, cannot resolve the dispute regarding preemption. It lacks power to do anything other than remand to the state court where the preemption issue can be addressed and resolved.

Dukes, 57 F.3d at 355.

Here, to support federal jurisdiction, the plaintiff's claims must be completely preempted pursuant to 29 U.S.C. § 1132(a). "Because plaintiffs *26are not plan participants, beneficiaries, or fiduciaries, their . . . state claims are not within the scope of § 1132(a) and therefore not completely preempted." Harris, 26 F.3d at 934. In light of the Ninth Circuit's recent rulings in

Bast and Geweke, which focused on Congress' intent to protect only certain ERISA relationships, this Court concludes that the physicians' contractual agreements with Blue Cross do not warrant complete preemption under ERISA sufficient to support federal jurisdiction here. To the extent this decision is inconsistent with this Court's ruling in Mullens v. Blue Cross, the Court is convinced, based on Bast and Geweke, that this is the better reasoned approach. Accordingly, plaintiffs' action must be remanded to state court. n3

    n3 This Court does not, and indeed may not, resolve the question of whether defendant may raise preemption under 29 U.S.C. § 1144(a) as a defense in the state court action. Once this Court determines that it does not have subject matter jurisdiction pursuant to complete preemption under ERISA, "it lacks power to do anything other than remand to the state court where the preemption issue can be addressed and resolved." Duke, 57 F.3d at 355.

*27

2. Motions to Compel Arbitration.

Blue Cross filed two petitions to compel arbitration of this dispute under the Federal Arbitration Act (FAA), Nos. C 98-3446 (Levy) and C 98-3447 (Burbank Podiatry Associates Group). Respondents filed motions to dismiss these petitions for lack of jurisdiction. In addition, Blue Cross has moved to compel individual arbitration, and respondent/physicians Levy and Burbank have moved to compel classwide arbitration.

Although Section 4 of the FAA provides that a party may seek an order from a district court compelling arbitration, the FAA does not provide an independent basis for jurisdiction. n4 The Supreme Court has held that "Section 4 provides for an order compelling arbitration only when the federal district court would have jurisdiction over a suit on the underlying dispute; hence, there must be diversity of citizenship or some other independent basis for federal jurisdiction before the order can issue." Moses H. Cone Memorial Hosp. v. Mercury

Const., 460 U.S. 1, 25 n.32, 103 S. Ct. 927, 942 n.32, 74 L. Ed. 2d 765 (1983). As this Court has found that the Burbank Podiatry plaintiffs' action must be remanded for lack of jurisdiction, *28 this Court does not have jurisdiction over the underlying controversy between the parties; therefore, the motions to dismiss the petitions to compel arbitration for lack of jurisdiction are GRANTED. The competing motions to compel arbitration are dismissed as moot.

    n4 The Court assumes, without deciding, that the FAA applies, as it appears to be the only basis available here by which this Court might have jurisdiction to compel arbitration.

CONCLUSION

For the reasons stated above, plaintiffs' motion to remand C 98-2326 is GRANTED, and that action is hereby REMANDED to the San Francisco Superior Court. The petitions to compel arbitration (C 98-3446 and C 98-3447) are DISMISSED for want of jurisdiction.

IT IS SO ORDERED.

Dated: February 2, 1999

SUSAN ILLSTON

United States District Judge

JUDGMENT

In accordance with the Court's Order of February 2, 1999, judgment is hereby entered.

IT IS SO ADJUDGED.

Dated: February 2, 1999

SUSAN ILLSTON

United States District Judge

Only the Westlaw citation is currently available.

United States District Court, E.D. Louisiana.

**LAKELAND ANESTHESIA,** INC.
v.
**AETNA** U.S. HEALTHCARE, INC.

No. Civ.A. 00-1061.

June 15, 2000.

### MEMORANDUM AND ORDER

SEAR, J.

*1 This matter comes before the Court on Plaintiff's motion to remand for lack of subject matter jurisdiction, pursuant to 28 U.S.C. § 1447(c) . Considering the parties' arguments presented during a hearing, held June 7, 2000, the parties' voluminous pre- and post-hearing submissions, and the applicable case law, I find that Defendant has failed to carry its burden of establishing the existence of federal subject matter jurisdiction and, therefore, grant Plaintiff's motion. I remand this case to the Civil District Court for the Parish of Orleans.

### BACKGROUND

Plaintiff, **Lakeland Anesthesia,** Inc. ("**Lakeland**"), commenced this proposed class action against Defendant, **Aetna** U.S. Healthcare, Inc. ("**Aetna**"), in the Civil District Court for the Parish of Orleans, seeking, on behalf of itself and all Louisiana physicians, hospitals, clinics and other medical providers similarly situated, damages costs, penalties and attorney's fees for **Aetna's** alleged willful and/or negligent breach of contract in failing to make payment for services rendered pursuant to the terms of physician group agreements, participating group service provider agreements and other similar contracts in a timely and reasonable manner.

Specifically, Lakeland alleges that **Aetna** adopted a routine practice of intentionally and/or negligently delaying payment of "complete," "clean," or otherwise valid claims beyond 30, 45 and even 90 days. Lakeland also claims that **Aetna** routinely

classified complete and clean claims as "incomplete"; delayed requests for information for the evaluation, assessment or resolution of claims and/or requested information already in **Aetna's** possession; "lost" claims; bundled claims, failed to recognize modifiers on claims; denied claims that had been received; understaffed intake personnel; made arbitrary and immaterial changes to the alleged information required to process claims; frequently changed its mailing address; and otherwise delayed resolving claims.

As a result of these alleged activities, Lakeland asserts claims against **Aetna** for (1) breach of contract; (2) abuse of right under the Louisiana Insurance Code, La. R.S. 22:250.32, 22:250.33, 22:657, and 22:1220 and La. C.C. art.2055, 2298, 1759, 1770, and 1983; (3) violating several provisions of state tort law, La. C.C. art. 2315-2316 ; and (4) breaching a duty of good faith under the Louisiana Insurance Code La. R.S. 22:250.32, 22:250.33, 22:657 and 22:1220. In addition, Lakeland asserts additional claims for unjust enrichment pursuant to La. C.C. art. 1757, 2298 and 2303.

On April 7, 2000, **Aetna** timely filed a notice of removal, alleging federal question jurisdiction pursuant to 28 U.S.C. § 1331. In its notice of removal, **Aetna** claims that Lakeland's claims relate to benefits due under employee benefit plans offered by **Aetna** to employers within the meaning of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002. Accordingly, **Aetna** argues that removal of this case is proper because ERISA preempts Lakeland's state law claims and provides the basis for federal question jurisdiction. **Aetna** provides the Court with no copy of any employee welfare benefit plan upon which Lakeland allegedly relies nor any alleged assignment by a plan participant or beneficiary to Lakeland of any rights arising under the terms of an employee welfare benefit plan.

*2 On April 20, 2000, Lakeland filed a motion to remand the case to state court pursuant to 28 U.S.C. § 1447(c), arguing that this Court lacks jurisdiction over the case because, contrary to **Aetna's** assertions, no federal question exists. Lakeland claims that because "an independent claim by a third- party medical provider does not 'arise under'

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

"ERISA" and its claims are not derivative claims for employee welfare benefits within the meaning of 29 U.S.C. § 1132(a)(1), no federal question subject matter jurisdiction exists. Aetna opposes Lakeland's motion to remand.

## DISCUSSION

### A. Well-Pleaded Complaint Doctrine

Title 28, United States Code, Section 1441(a) provides that a defendant may remove to a federal district court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction" unless certain exceptions apply. Pursuant to 28 U.S.C. § 1441(b), "any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable." Because "the effect of removal is to deprive the state court of an action properly before it, removal raises significant federalism concerns, which mandate strict construction of the removal statute." [FN1]

> FN1. *Carpenter v. Wichita Falls Independent Schools District,* 44 F.3d 362, 365-66 (5th Cir.1995) (citing *Merrell Dow Pharmaceuticals, Inc. v. Thompson,* 478 U.S. 804, 809 (1986) and *Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 107 (1941)).

To support removal of a state court action pursuant to § 1441(b), the defendant bears the burden of establishing that a federal question exists. [FN2] District courts, in determining whether an action presents a federal question, look to the allegations in the plaintiff's well-pleaded complaint. [FN3] Generally, an action presents a federal question "if there appears on the face of the complaint some substantial, disputed question of federal law." [FN4] Therefore, to support removal,

> FN2. *See Carpenter,* 44 F.3d at 365 (citing *Wilson v. Republic Iron & Steel Co.,* 257 U.S. 92 (1921)).
>
> FN3. *See Carpenter,* 44 F.3d at 366 (citing *Louisville & Nashville R. Co. v. Mottley,* 211 U.S. 149 (1908).
>
> FN4. *Carpenter,* 44 F.3d at 366 (citing *Federal Tax Board v. Construction Laborers Vacation

*Trust,* 46 U.S. 1, 12 (1983)).

[T]he defendant must, locate the basis of federal jurisdiction in these allegations necessary to support the plaintiff's claim ignoring his own pleadings and petition for removal. A defendant may not remove on the basis of an anticipated or even inevitable federal defense, but instead must show that a federal right is "an element, and an essential one, of the plaintiff's cause of action." [FN5]

> FN5. *Carpenter,* 44 F.3d at 366 (quoting *Gully v. First Nat'l Bank,* 299 U.S. 109, 111 (1936)).

Here, it is clear that the allegations of Lakeland's well-pleaded complaint and its amended complaint present no apparent federal question upon which Aetna may rely to support its petition for removal. Lakeland alleges only state law claims arising out of Aetna's alleged failure to may timely Lakeland and others similarly situated pursuant to the terms of service provider contracts between Aetna and the proposed class of plaintiffs, provisions of the Louisiana Insurance Code and state contract law.

### B. Artfully-Pleaded Complaint Doctrine

Nevertheless, as Aetna correctly asserts, a narrow exception to the well- pleaded complaint rule exists. "[W]here the plaintiff necessarily has available no legitimate or viable state cause of action, but only a federal claim, the plaintiff may not avoid removal by artfully casting his federal suit as one arising exclusively under state law." [FN6] This exception to the well- pleaded complaint rule provides that where a defendant carries its burden of showing that complete preemption of the plaintiff's state law claims exists, removal is proper. Thus, the artful pleading doctrine "does not convert legitimate state claim into federal ones, but rather reveals the suit's necessary federal character." [FN7]

> FN6. *Carpenter,* 44 F.3d at 366.
>
> FN7. *Carpenter,* 44 F.3d at 367 (citing *Franchise Tax Board,* 463 U.S. at 23)).

*3 Here, Aetna invoke the artfully plead complaint doctrine and argues that ERISA preempt Lakeland's state law claims. Aetna attempts to establish that Lakeland's claims are preempted by ERISA either

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

as derivative claims for benefits due under alleged employee benefit plans as assigned by plan participants or beneficiaries, pursuant to 29 U.S.C. § 1132(a), or as claims based on state laws that "relate to" an employee benefit plan and do not "regulate insurance," pursuant 29 U.S.C. § 1144.

## C. ERISA Preemption

ERISA contemplates two types of preemption: [FN8] complete preemption under 29 U.S.C. § 1132 and conflict preemption under 29 U .S.C. § 1144. In complete preemption under § 1132, ERISA occupies a particular field. [FN9] "This functions as an exception to the well-pleaded complaint rule: 'Congress may so completely preempt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." ' [FN10] Section 1132, by providing the civil enfortement ERISA action, "completely preempts any state cause of action seeking the same relief, regardless of how artfully pled as a state action." [FN11] Thus, § 1132 provides a basis for federal subject matter jurisdiction.

> FN8. See Copling v. The Container Store, 174 F.3d 590, 594 (5th Cir.1999) (citing McClelland v. Gronwaldt, 155 F.3d 507 (5th Cir.1998)).

> FN9. See Copling, 174 F.3d at 594 (citing Metropolitan Life, 481 U.S. at 66).

> FN10. Copling, 174 F.3d at 594 (quoting Metropolitan Life, 481 U.S. at 64-65).

> FN11. Id.

Where issues of ERISA preemption of state law claims, however, arise under ERISA's conflict preemption provision, 29 U.S.C. § 1144, no basis for removal exists. " 'State law claims which fall outside the scope of ERISA's civil enforcement provision, [§ 1132], even if preempted by [§ 1144], are still governed by the well-pleaded complaint rule, and, therefore, are not removable under the complete-preemption principles." [FN12] As the Fifth Circuit recently explained,

> FN12. Copling, 174 F.3d at 595 (citing Franchise Tax Board, 463 U.S. at 23-27 (holding that preemption under § 1144 does not permit a defendant to remove where plaintiff's state law

claim falls outside the scope of ERISA's civil enforcement provision)).

Conflict preemption simply fails to establish federal question jurisdiction. Rather than transmogrifying a state cause of action into a federal one, as occurs with complete preemption, conflict preemption serves as a defense to a state action. 'When the doctrine of complete preemption does not apply, but the plaintiff's state claim is arguably preempted under [29 U.S.C. § 1144], the district court, being without removal jurisdiction cannot resolve the dispute regarding preemption. It lacks the power to do anything other than remand to the state court where the preemption issue can be addressed and resolved.' [FN13]

> FN13. Copling, 174 F.3d at 595 (quoting Dukes v. U.S. Healthcare, Inc., 57 F.3d 350, 255 (3rd Cir.199) (further citation omitted).

Therefore, to the extent that Aetna relies on § 1144 as its basis for removal, removal is clearly improper. That provision, while providing Aetna with a potential defense to Lakeland's state law claims, does not confer upon this Court any federal subject matter jurisdiction.

## D. Complete Preemption Under § 1132

Turning now to ERISA's complete preemption provision, Title 29, United States Code, Section 1132(a) provides that a participant or beneficiary of an employee welfare benefit plan may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." [FN14] Although the statute clearly provides only that a participant or beneficiary [FN15] may bring such civil actions, numerous courts have determined that where a participant or beneficiary assigns to a third party service provider his or her rights to health care benefits [FN16] and that assignment is valid, the third-party service provider may bring a derivative action for health care benefits due to the participant or beneficiary under the terms of the plan. [FN17]

> FN14. 29 U.S.C. § 1132(a)(1)(B).

> FN15. Title 29, United States Code, Section 1002(2)(B)(8) defines "beneficiary" as "a person

designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder. A "participant" is "any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, whose beneficiaries may be eligible to receive any such benefit."

FN16. As the Fifth Circuit explained in *Herman Hospital v. MEBA Medical & Benefits Plan,* 845 F.2d 1286, 1289 (5th Cir.1988), derivative actions under § 1132 are allowable only for health care benefits. Unlike the "elaborate and complex statutory anti-assignment clause for ERISA pension benefits," ERISA "contains no anti-assignment provisions with regard to health care benefits of ERISA-governed medical plans .... [because such an assignment] facilitates rather than hampers the employee's receipt of health benefits."

FN17. *See Herman Hospital,* 845 F.2d at 1289.

**\*4** Without such an assignment, a third-party service provider "has no standing as a 'non-enumerated party' to pursue an action described in § 1132(a)." [FN18] "Health care providers [do not] have independent standing to seek redress under ERISA." [FN19]

FN18. *Id.*

FN19. *Memorial Hospital System v. Northbrook Life Ins. Co.,* 904 F.2d 236, 249 (5th Cir.1990).

Here, aside from **Aetna's** unsupported and conclusory statements, there is nothing before this Court that suggests that federal subject matter jurisdiction exists based on ERISA's complete preemption provision. In its post-argument brief, **Aetna** provides the Court with a sample of one its blank group insurance agreement contracts and copies of two "Health Insurance Claim Forms" in which patients assign to Lakeland rights to payment under **Aetna** insurance policies, BKGFG020 and QDZXX010. The documents provided by **Aetna** do nothing more than establish that **Aetna** offers or has offered group insurance policies and sometimes,

patients who receive health care benefits under **Aetna** plans, whether such plans qualify as ERISA plans or not, assign rights to service providers. **Aetna** fails to provide any evidence that the copies of the claims forms pertain to coverage under an ERISA plan and fail to establish that any of Lakeland's claims are derived from claims for benefits under an actual, existing employee benefit plan. The Court has nothing before it that relates an assignment of health care benefits due under a qualified ERISA plan with Lakeland's claims.

Specifically, **Aetna** fails to provide the Court with a single employee benefit plan under which Lakeland allegedly seeks to recover assigned benefits of a plan participant or beneficiary. In addition, even if **Aetna** had shown that a qualified employee benefit plan exists in this case. **Aetna** fails to present any of the additional prerequisites to support a finding that Lakeland has artfully pled a derivative action for benefits under an ERISA-governed health care plan. **Aetna** has not identified a single participant or beneficiary of an employee welfare benefit plan and provides no assignment of rights to Lakeland from a qualified ERISA participant or beneficiary. Furthermore, there is nothing to suggest that any assignment would be valid. Absent such evidence, there is no basis for a finding that Lakeland's claims are completely preempted here.

**Aetna** speculates that, because it "offers employee benefit plans to employers in Louisiana and other states," Lakeland's claims must therefore be artfully pled derivative actions under ERISA's civil enforcement provision. Such speculation is clearly insufficient support for federal subject matter jurisdiction. **Aetna** fails to carry its burden to establish that a federal question exists. Accordingly, this action is remanded to the Civil District Court for the Parish of Orleans.

Accordingly,

IT IS ORDERED that Lakeland's motion to remand is GRANTED.

IT IS FURTHER ORDERED that this case be REMANDED to the Civil District Court for the Parish of Orleans.

END OF DOCUMENT

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

2000 WL 1727553
(Cite as: 2000 WL 1727553 (E.D.La.))
C

Only the Westlaw citation is currently available.

United States District Court, E.D. Louisiana.

LAKEVIEW MEDICAL CENTER LLC d/b/a
LAKEVIEW REGIONAL MEDICAL CENTER
v.
AETNA HEALTH MANAGEMENT, INC., et al.

No. CIV. A. 00-CV-1761.

Nov. 20, 2000.

ORDER AND REASONS

DUVAL, District Court J.

*1 Before the Court are a Motion to Remand filed
by Lakeview Medical Center LLC d/b/a Lakeview
Regional Medical Center ("Lakeview") and a
Motion to Dismiss filed by Aetna Health
Management, Inc., Aetna Health Plans of
Louisiana, Inc. and Aetna U.S. Healthcare, Inc.
(referred to collectively as "Aetna" or "the Aetna
defendants." The Court entertained oral argument on
August 30, 2000 on these motions.

This case is brought by Lakeview as one for breach
of contract that establishes a reimbursement
schedule for services already provided by Lakeview
Hospital. Aetna removed this matter from Civil
District Court for the Parish of Orleans on June 15,
2000 based on Aetna's contention that the claims
arise under the Employee Retirement Income
Security Act of 1974 ("ERISA"), 29 U.S.C. §
1002(1), because "Lakeview's claims for failure to
pay for 'covered services' allegedly rendered to its
patients relate to an ERISA plan ." (Notice of
Removal, ¶ 9). Thus, Aetna contends that the Court
has original federal question jurisdiction over this
action pursuant to 28 U.S.C. § 1331 and Section 502
of ERISA, 29 U.S.C. § 1132(a) and (e)(1) As such,
defendants argue that its complete preemption
defense requires the Court to exercise jurisdiction
over this matter.. (Notice of Removal ¶ 12). The
Court is not persuaded by Aetna's arguments and
finds that the Motion to Remand must be granted for
the reasons that follow. [FN1]

> FN1. It is within the court's discretion to
> determine whether it will consider a motion to

remand prior to a motion to dismiss. *Walker v.
Savell*, 335 F.2d 536 (5th Cir.1964). Here, the
motion to dismiss reaches the merits of the case,
not personal jurisdiction. Thus, judicial economy
would not be served to decide the motion to
dismiss prior to the motion to remand as it would
where personal jurisdiction is at issue.

PROCEDURAL BACKGROUND AND LEGAL
CONTENTIONS

Lakeview has brought what it contends are state law
claims based on a breach of contract by the Aetna
defendants. Plaintiff's predecessor, Notami of
Louisiana, d/b/a Highland Park Hospital
("Highland"), entered into a Facility Participation
Agreement ("FPA") with Aetna Health
Management ("AHM") on May 24, 1993. A
contract amendment was executed on May 27, 1996
which provided for new rates of compensation
(referred to collectively as "the Agreement").
Lakeview contends that the purpose of these
contracts were for Lakeview to provide certain
hospital services for which it would be reimbursed
in accordance with a compensation schedule set
forth in the Agreement.

Lakeview urged the following causes of action:
1. failure to Pay the PCU Rate
2. failure to Pay Ambulatory Hospital
3. Failure to Pay ER Rate
4. Failure to Pay Stop Loss
5. Unjustified Denials
6. Observation Services
7. General and Incidental Damages and Loss of
Use of Money.

Lakeview argues that the first six causes of action
specifically are premised on the express language in
the Compensation schedule of the Agreement. [FN2]
Thus, plaintiff contends that these issues do not
relate to an ERISA plan but purely to the contract
between them. Thus, Lakeview maintains that there
is no federal question presented that supports the
removal of this matter as Lakeview's state law
claims are not preempted by ERISA.

> FN2. The first cause of action ("COA") is
> allegedly based upon Section I.A. or alternatively
> I.B. of the Compensation Schedule. COA 2,
> COA3, COA5 are allegedly based upon Section
> I.B., Compensation Schedule. COA4 is based upon
> Section I.C. Compensation Schedule. COA 6 is
> based upon Section 1, Reimbursement Rate,

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

Compensation Schedule. (Memorandum in Support
of Motion to Remand at 3)

Aetna responds maintaining that removal is proper
because the FPA incorporates terms from ERISA
plans and cannot be understood or enforced without
interpretation of those terms. Furthermore, Aetna
argues that because Lakeview's right to
reimbursement includes rights derived from
assignments of members' rights to benefits under
ERISA plans, the matter was properly removed as it
is actually seeking to enforce ERISA claims as
contemplated under 29 U.S.C. § 1132..

## ANALYSIS

Standard to Determine Removal Jurisdiction with
respect to ERISA Claim

\*2 As this Court has previously noted, a
determination as to whether a cause of action
presents a federal question, and therefore subject to
removal in this context, depends upon the allegations
made on the face of the plaintiff's well-pleaded
complaint. *Carpenter v. Wichita Falls Indep. School
Dist.*, 44 F.3d 362, 366 (5th Cir.1995). A federal
defense to a state law claim does not create removal
jurisdiction. *Aaron v. National Union Fire Ins. Co.*,
876 F.2d 1157, 1161 (5th Cir.1989), *cert. denied*,
493 U.S. 1074 (1990). A defendant may not remove
a case on the basis of an anticipated or even
inevitable federal defense, but instead must show
that a federal right is an essential element of the
plaintiff's cause of action. *Gully v. First Nat'l Bank*,
299 U.S. 109, 111, 57 S.Ct. 96, 97, 81 L.Ed. 70
(1936); *Carpenter*, 44 F.3d at 366; *see Sears v.
Chrysler Corp.*, 884 F.Supp. 1125 (E.D.Mich.1995)

There is an exception to the well-pleaded complaint
rule--where federal law so completely preempts a
field of state law, a plaintiff's complaint must be
recharacterized as stating a federal cause of action.
*Aaron*, 876 F.2d at 1161, citing *Avco Corp. v. Aero
Lodge No. 735*, 390 U.S. 557, 88 S.Ct. 1235 (1968)
. The doctrine does not convert legitimate state
claims into federal ones, but rather reveals the suit's
necessary federal character. *Carpenter*, 44 F.3d at
367 (5th Cir.1995).

In the context of ERISA, there are two types of
preemption--complete preemption under § 502(a), 29
U.S.C. § 1132(a) and conflict preemption or

ordinary preemption under § 514, 29 U.S.C. § 1144
. *Copling v. Container Store, Inc.*, 174 F.3d 590,
594-95 (5th Cir.1999). The first--complete
preemption--provides removal jurisdiction; the
second--conflict preemption-- does not. *Id.* For there
to be complete preemption, which as noted acts as
an exception to the well-pleaded complaint rule, the
Court must find that Congress has "so completely
pre-empted a particular area that any civil complaint
raising this select group of claims is necessarily
federal in character." *Metropolitan Life Ins. Co. v.
Taylor*, 107 S.Ct. 1542 (1987). Section 502 of
ERISA which provides a civil enforcement cause of
action completely preempts any state cause of action
seeking the same relief regardless of how artfully
pled as a state cause of action. *Copling*, 174 F.3d at
594. Thus, if plaintiff's claims arise under the civil
enforcement provision so contemplated, this Court
would be required to exercise its removal
jurisdiction.

On the other hand, if Aetna's *defense* arises under
federal law and not under the civil enforcement
provision, such "conflict preemption" will not
"[transmogrify[ ] a state cause of action into a federal
one." As stated in *Copling:*

"When the doctrine of complete preemption does
not apply, but the plaintiff's state claim is arguably
preempted under § 514(a), the district court, being
without removal jurisdiction, cannot resolve the
dispute regarding preemption. It lacks power to do
anything other than remand to the state court
where the preemption issue can be addressed and
resolved." *Dukes [v. U.S. Healthcare, Inc.*, 57
F.3d 350, 355 (3d Cir.1995) ] (citing *Franchise
Tax Bd. v. Contr. Laborers Vacation Trust*, 103
S.Ct. 2841).

\*3 *Copling*, 174 F.3d at 595. Thus, to the extent
Aetna has relied on § 1144 for removal, such
reliance is misplaced and inadequate. Such potential
defenses to Lakeland's state law claims are
insufficient to provide subject matter jurisdiction for
this Court. Thus, the inquiry becomes whether the
claims raised by Lakeview's petition really
constitute a claim under § 1132 of ERISA and thus
removable. [FN3]

FN3. This removal is not Aetna's first attempt to
bootstrap its way into federal court. Substantially
similar suits have been removed and remanded by
our sister and brother courts in the Eastern District
of Louisiana. A listing there of includes *Lakeland
Anesthesia v. Aetna U.S. Healthcare, Inc.*, as

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

cited herein, *Lakeland Anesthesai, Inc. v. SMA Health Plan, Inc. et al.*, C.A. No. 00-1219 "J"; *Lakeland Anesthesia, Inc. v. CIGNA health Care of Louisiana, Inc.*, C.A. No. 00-1208 "B"(1); and *Lakeland Anesthesia, Inc. v. United Health Care of Louisiana, Inc.*, C.A. 00-1149 "C".

### Section 1132 of ERISA

This section of ERISA "provides that a participant or beneficiary of an employee welfare benefit plan may bring a civil action 'to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.' ' *Lakeland Anesthesia, Inc. v. Aetna U.S. Healthcare, Inc.*, 2000 WL 777911, *3 (E.D.La. June 15, 2000) (Sear, J). The term "beneficiary" is defined under the statute as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(2)(B)(8). A "participant" is defined as "any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, whose beneficiaries may be eligible to receive any such benefit." 29 U.S.C. § 1002(2)(B)(7).

In addition to these two potential claimants, the courts have recognized that a "where a participant or beneficiary assigns to a third party service provider his or her rights to health care benefits and that assignment is valid, the third-party service provider may bring a derivative action for health care benefits due to the participant or beneficiary under the terms of the plan." *Lakeland v. Aetna* at *3 citing *Herman Hospital v. MEBA Medical & Benefits Plan*, 845 F.2d 1286, 1289 (5th Cir.1988). As the Court in *Lakeland v. Aetna:*

Without such an assignment, a third-party service provider "has no standing as a 'non-enumerated party' to pursue an action described in § 1132(a)." *[Herman ]* "Health care providers [do not] have independent standing to seek redress under ERISA. *[Memorial Hospital System v. Northbrook Life Ins. Co.*, 904 F.2d 236 249 (5th Cir.1990).]

*Lakeside v. Aetna*, 2000 WL 777911, at *3-*4; *Lakeland Anesthesia, Inc. v. United Healthcare of Louisiana, Inc.*, C.A. No. 00-1149 (June 30, 20000)

(Berrigan, J.).

It is beyond cavil that Lakeview is not a beneficiary, participant or a fiduciary. [FN4] As such, proof of an assignment of ERISA claims to Lakeview would be necessary to create standing under § 502, and for this Court to find that the case was properly removed based on its claims would being "completely preempted" thereunder. To begin, this case does not arise in the more traditional context of a provider seeking reimbursement under the provisions of a Plan which has failed to pay for services rendered based on coverage as seen for example in *Herman.* Here, the claims were brought in state court for breach of contract claims that arise under state law for Aetna's failure to pay pursuant to the Agreement between it and Lakeview, which terms state that "[t]his Agreement, including its amendments, constitutes the entire agreement between the parties with respect to the matters addressed herein and supersedes all prior oral and written understandings between the parties." (the Agreement, ¶ 5.8). While the contractual claims may be dependent on some part of an ERISA plan, they are not derivative of that Plan.

> FN4. "Fiduciary within the meaning of ERISA must be someone acting in the capacity of manager, administrator, or financial advisor to a plan." *See* 29 U.S.C. §§ 1002(21)(A)(i)-(iii). Obviously, a fiduciary would be the party sued to obtain benefits or other relief.

**4 Defendant contends that because a decision with respect to the contractual claims so relates to ERISA plans, plaintiff's claims are totally preempted. Such analysis fails to recognize the refining of the meaning of that term as recognized by the Fifth Circuit in *Corporate Health Ins. Inc. v. Texas Dept. of Ins.*, 215 F.3d 526 (5th Cir.2000). The appellate court stated:

We have repeatedly struggled with the open-ended character of the preemption provisions of ERISA and FEHBA. We faithfully followed the Supreme Court's broad reading of "relate to" preemption under § 502(a) in its opinions decided during the first twenty years after ERISA's enactment. Since then, in a trilogy of cases, the Court has confronted the reality that if "relate to" is taken to the furthest stretch of its indeterminacy, preemption will never run its course, for "really, universally, relations stop nowhere." Justice

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

Souter, speaking for a unanimous court in Travelers, acknowledged that "our prior attempt to construe the phrase 'relate to' does not give us much help drawing the line here." Rather the Court determined that it "must go beyond the unhelpful text ... and look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive.
*Id.* at 532-33 (footnotes omitted). As such, the Court finds that this contractual claim is not so "related to" ERISA plans such that a court's decision with respect to these breach of contract claims would undermine or affect the objectives of the ERISA statute. Simply put, this controversy does not implicate "a significant conflict with an identifiable federal policy or interest" which the Supreme Court has required for a field to be preempted. *Id.* at 533 citing *Boyle v. United Tech Corp.,* 108 S.Ct. 2510 (1988).

This Court's analysis is likewise analogous to the holding *Pegram v. Herdrich,* 120 S.Ct. 2143 (2000) which held that mixed eligibility decisions by HMO physicians are not fiduciary decisions under ERISA. The claim here is equally attenuated and only

indirectly implicates an ERISA plan.

Furthermore, the primary proof adduced of the putative "assignments" consists of UB-92 forms wherein a box is checked noting an "assignment" of benefits. There are no documents presented that provide adequate legal proof of an actual assignment. Practically identical documents and affidavits were presented to Judge Sear in *Lakeland Anesthesia, Inc. v. Aetna U.S. Healthcare, Inc.,* 2000 WL 777911, *3 (E.D.La. June 15, 2000) and the Court concurs in his analysis. The affidavit of James P. Wolf presented here is substantially similar to the one presented to Judge Sear, and the Court finds that the differences do not persuade it that the rights asserted by plaintiff are in essence derivative. The Court has no subject matter jurisdiction. Accordingly,

IT IS ORDERED that this motion to remand is GRANTED, and pursuant to 28 U.S.C. § 1447, this matter is REMANDED to Civil District Court for the Parish of Orleans.

END OF DOCUMENT

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

MDL No. 1334
Master File No. 00-1334-MD-MORENO

COPY

MAR 1 2 2001

FILED BY _____ D.C.

MAR - 2 2001

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S. D. OF FLA.

IN RE: MANAGED CARE LITIGATION

THIS DOCUMENT RELATES TO
PROVIDER TRACK CASES

/

## ORDER GRANTING IN PART WITHOUT PREJUDICE
## MOTIONS TO DISMISS PROVIDER TRACK COMPLAINT

Plaintiffs are doctors suing managed care insurance companies ("HMOs") for alleged

violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), the Employee

Retirement Income Security Act ("ERISA"), plus federal and state prompt pay statutes. The

Plaintiffs also have filed breach of contract, unjust enrichment and quantum meruit claims. The

Court dismisses, without prejudice, the RICO claims because the Plaintiffs have not properly

pled the "enterprise" element. The Court also dismisses, without prejudice, the state prompt-

payment statutory claims as insufficiently pled. In addition, the Court dismisses, with prejudice,

the Plaintiffs' federal claim for prompt payment for services rendered because there is no such

implied cause of action arising under the Medicare Act or its regulations. However, the Court

finds that ERISA does not preempt the Plaintiffs' claims for breach of contract, quantum meruit

and unjust enrichment, and therefore denies the Defendants' motions to dismiss these claims.

### BACKGROUND

The Plaintiffs are seven health care providers from various states who have business

relationships with the eight managed care insurance company Defendants. The original

Complaint was filed in the Western District of Kentucky as <u>Charles B. Shane, M.D., et. al. v.</u> <u>Humana, Inc., et. al.</u>, W.D. Ky, C.A. No. 3:00-53, and listed only Humana and its subsidiaries as Defendants. The case was transferred to this Court by the Judicial Panel on Multidistrict Litigation on July 21, 2000. <u>See</u> 28 U.S.C. § 1407 (permitting the transfer of federal district court civil actions involving common questions of fact to a single district court for consolidated pretrial proceedings). The Amended Complaint thereafter added the other Defendants.

The following facts, although contested in part by the Defendants, are assumed to be true for the purpose of a Federal Rules of Civil Procedure 12(b)(6) motion to dismiss. The Plaintiffs allege that the Defendants have undertaken a common course of conduct designed to further a scheme of fraud and extortion to the detriment of the Plaintiffs. This scheme begins with the Defendants' "internal policies and procedures specifically designed to systematically obstruct, reduce, delay and deny payment and reimbursements to health care providers" in contravention of contractual agreements. Amended Complaint, ¶ 153. These policies are implemented by third party claim reviewers who receive monetary incentives to deny claims often arbitrarily and without regard to "medical necessity" as defined in provider contracts. <u>Id.</u> at ¶¶ 154, 158.

The Plaintiffs charge that the Defendants and their agents engage in "undisclosed automatic 'downcoding' of claims submitted by physicians." <u>Id.</u> at ¶ 164. "Downcoding" is an operation whereby "CPT codes" (a benefit code entered on a reimbursement form by the provider which refers to a particular service) are arbitrarily and without notice changed in a manner designed to reduce payments due to the physicians. <u>Id.</u> at ¶ 164. "Bundling" is another process in which the Defendants arbitrarily reduce payments by combining two or more procedures. <u>Id.</u> at ¶ 165.

2

The Plaintiffs furthermore submit that the Defendants improperly conceal their manipulation of these procedures and fraudulently misrepresent the criteria for coverage determination, treatment decisions, payments and reimbursements. Id. at ¶ 159. The insurance companies' rate-setting methodology lacks an actuarial basis, and the Defendants refuse to provide data pertaining to this methodology. Id. at ¶ 181. The Defendants also systematically "target, coerce, threaten and intimidate providers who objected to Defendants['] wrongful practices." Id. at ¶¶ 155-56. The Plaintiffs allege that the managed care Defendants monopolize the patient referral market. Id. at ¶¶ 174-176, 178, 180. Through this monopolistic power, the Defendants use economic pressure to continue the fraudulent scheme and extort concessions and property rights from the Plaintiffs.

Counts I, II and III of the Plaintiffs' Amended Complaint seek relief for violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1962(a) and (c) and conspiracy to violate these two subsections. The Plaintiffs allege that the Defendants violated federal criminal statutes prohibiting fraud, extortion and bribery as part of a pattern of racketeering activity. Count IV alleges that the Defendants aided and abetted violations of subsections (a) and (c). Count V is a claim for benefits under the federal Employee Retirement Income Security Act. In the alternative, the Plaintiffs conceive of counts VI, VII, and IX, which are pendant state law claims for breach of contract, quantum meruit and unjust enrichment. Finally, counts VIII and X ask for relief pursuant to thirteen state statutes and a federal regulatory provision which require that health insurance companies pay certain claims for reimbursement within a specified time period.

3

## STANDARD OF REVIEW

A court will not grant a motion to dismiss unless the plaintiff fails to allege any facts that would entitle the plaintiff to relief. Conley v. Gibson, 355 U.S. 41 (1957). When ruling on a motion to dismiss, a court must view the complaint in the light most favorable to the plaintiff and accept the plaintiff's well-pleaded facts as true. Scheuer v. Rhodes, 416 U.S. 232 (1974); St. Joseph's Hospital, Inc. v. Hospital Corp. of America, 795 F.2d 948 (11th Cir. 1986).

## DISCUSSION

At the outset the Defendants contend that, in light of the Supreme Court decision Pegram v. Herdrich, 530 U.S. 211, 120 S.Ct. 2143 (2000), the Plaintiffs' claims should not proceed because they amount to a "wholesale attack[] on existing HMOs," in contravention of "the congressional policy of allowing HMO organizations." Id. at 2157. In Pegram, a plaintiff patient brought medical malpractice, state-law fraud and ERISA claims against her doctor and the health maintenance organization, on the theory that the HMO breached its fiduciary duty to the patient by providing incentives for its physicians to limit medical care and procedures. Id. at 2147-48. After parsing congressional intent and policy arguments, the Court held that "mixed eligibility decisions by HMO physicians are not fiduciary decisions under ERISA," id. at 2158, and therefore the plaintiff failed to state a claim for breach of fiduciary duty under ERISA.

Defendants read Pegram as if it were a talisman before which all of Plaintiffs' claims should fail. Yet the Court in Pegram did not fashion an all-encompassing cloak of immunity for the health care industry. Instead, partly out of a concern that granting the remedy sought by the Plaintiff in Pegram would result in "nothing less than elimination of the for-profit HMO," id. at 2156, the Court reached its narrow holding. The viability of HMO-type structures will not be

4

imperiled if such entities are held accountable for concrete harm flowing from acts of fraud, extortion and breach of contract, as alleged by the Plaintiffs. Cf. id. at 2157 ("[T]he Federal Judiciary would be acting contrary to the congressional policy of allowing HMO organizations if it were to entertain an ERISA fiduciary claim portending wholesale attacks on existing HMOs solely because of their structure, untethered to claims of concrete harm.").

Furthermore, Pegram concerned an ERISA claim brought by a patient with a significantly different factual situation. The Plaintiffs here seek relief under a number of state and federal statutes in compliance with the Pegram Court's observation that remedies to be applied against HMOs should be constructed by the legislature rather than the judiciary. Consequently, Pegram does not act as a bar to these claims.[1]

## RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT

RICO, 18 U.S.C. § 1962, proscribes in relevant part: (1) investing income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in any enterprise which affects interstate commerce (subsection a), (2) conducting or participating in the affairs of any enterprise which affects interstate commerce through a pattern of racketeering activity or collection of unlawful debt (subsection c), and (3) conspiring to violate any of the provisions of subsections (a), (b), or (c) (subsection d).

---

[1] Plaintiff Breen did not specify in the Amended Complaint the source of Defendant Foundation Health System Inc.'s contractual obligations, causing Defendant Foundation to argue additionally that Plaintiff Breen could not assert standing through contracts between Foundation subsidiaries and physician groups. Foundation subsequently located contractual agreements directly linking the Defendant to Plaintiff Breen. See Defendant Foundation Health Systems, Inc.'s Notice of Correction of its Motion to Dismiss at 2. In view of this Court's Order of December 11, 2000 stating that Plaintiff Breen's claims be arbitrated pursuant to these contracts, all of the Defendant's standing arguments are denied as moot.

5

As defined by RICO, "racketeering activity" includes a lengthy list of enumerated federal and state crimes, including those crimes alleged in this case, namely extortion (as set forth in the Hobbs Act), mail fraud, wire fraud and bribery/gratuity. A "'pattern of racketeering activity' requires at least two acts of racketeering activity, one of which occurred after the effective date of [RICO] and the last of which occurred within ten years (excluding any term of imprisonment) after the commission of a prior act of racketeering activity." 18 U.S.C. §,1961(5). RICO establishes both criminal penalties, see 18 U.S.C. § 1963, and civil remedies, see 18 U.S.C. § 1964, for violations of Section 1962. Section 1964 provides a private cause of action in federal district court for "any person injured in his business or property by reason of a violation of section 1962." § 1964(c). The injured party may recover treble damages, as well as costs. Id.

## STANDING

The Defendants first submit that the Plaintiffs lack the requisite standing to bring RICO claims. A "plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation" of RICO. Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985). The Defendants rely primarily on Maio v. Aetna, Inc., 221 F.3d 472 (3d Cir. 2000). The plaintiffs in Maio were subscribers (patients) who predicated their theory of injury upon the proposition that "the policies and practices described in the complaint . . . make it a near certainty that they will receive diminished or compromised [contractual benefits] eventually." 221 F.3d at 494.

Even if this Court were to adopt the Third Circuit's reasoning, the Defendants' argument would fail as to these plaintiff providers (doctors). The Plaintiffs in this case are providers who aver that they are the victims of past, present and continuing fraud, extortion and conspiracy

6

perpetrated by the Defendants. In addition to the assertions in their Amended Complaint, the Plaintiffs provide an extensive, specific list of fraudulent reimbursement denials or reductions, improper requests for refunds, administrative costs associated with handling these continual payment disputes and monetary losses flowing from extortionate acts. See Supplement to Civil Rico Case Statement, ¶¶ 1 (reimbursement denial), 28 (administrative costs associated with appealing payment delayed six months), 35 (Defendant paid only six percent of a $16,495 claim following an appeal process), 125 (Defendants through extortionate means wrongfully retained money owed to providers). The Court is satisfied that the Plaintiffs meet the standing requirement of 18 U.S.C.A. § 1964(c), which accords relief to "[a]ny person injured in his business or property by reason of a violation of section 1962."

## THE MCCARRAN-FERGUSON ACT

Defendants Aetna, Foundation, Prudential and Wellpoint contend that the McCarran-Ferguson Act, 15 U.S.C. §1012(b), bars the Plaintiffs' RICO claims. The Act states that "[n]o Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance . . . unless such Act specifically relates to the business of insurance." 15 U.S.C. §1012(b).

The Defendants point to statutes from California, Florida and Texas which specifically authorize cost-containment processes by insurance companies, regulate these practices and provide grievance procedures for claims review. See, e.g., Fla. Stat. § 627.4234 (Health care plans "must contain one or more . . . procedure or provisions to contain health insurance costs or cost increases"); Fla. Stat. § 641.3156 (prohibiting arbitrary denial of claims), Tex. Ins. Code Ann. art. 21.58A(4) (forbidding "unnecessary or unreasonable repetitive" review of claims).

7

According to the Defendants, the Plaintiffs' RICO claims would frustrate state law policy which celebrates cost-containment processes. Furthermore, the Defendants fear that this federal civil action would interfere with carefully crafted regulations implemented by the states in violation of the McCarran-Ferguson Act and the interpretation of that statute by the Supreme Court in Humana, Inc. v. Forsyth, 525 U.S. 299 (1999).

The Supreme Court in Humana held that the McCarran-Ferguson Act does not bar private civil RICO suits. 525 U.S. at 314. The Court observed that RICO and the state insurance laws could be applied in harmony, and that RICO did not frustrate any state policy regarding the insurance laws. To the contrary, the Court said permitting private civil RICO suits would aid and enhance the state regulation of the insurance industry. Id. The Defendants have not convincingly shown that application of the federal RICO statute will significantly impair rather than advance the interests of state insurance laws or that this action will disrupt a state administrative system. If the Plaintiffs prevail on the merits of their claims, the Court will revisit this issue in the context of assessing appropriate relief.

## ABSTENTION

Defendant Wellpoint argues that this Court should abstain under the Burford doctrine. See Burford v. Sun Oil Co., 319 U.S. 315 (1943). That doctrine allows a federal court to abstain as a matter of comity if federal adjudication would be disruptive of state efforts to establish a coherent policy with respect to the matter at issue. The purpose of Burford abstention is to "protect[] complex state administrative processes from undue federal interference." New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans, 491 U.S. 350, 362 (1989). The primary justifications for the rule are "the expertise of the agency deferred to and the need for a

8

uniform interpretation of a statute or regulation." Boyes v. Shell Oil Products Co., 199 F.3d
1260, 1265 (11th Cir. 2000), quoting County of Suffolk v. Long Island Lighting Co., 907 F.2d
1295, 1310 (2d Cir. 1990).

The Defendant argues that this RICO action's potential effect on California's
"indisputably complex and delicately balanced Knox-Keene regulations" counsels in favor of
abstention. See Wellpoint's Motion to Dismiss the Provider Track Amended Complaint at 9.
But Burford abstention, also known as the "primary jurisdiction doctrine," is of dubious
applicability where the claim is brought under federal law and the remedy would be left to a state
agency. Boyes, 199 F.3d at 1265 n. 11, citing County of Suffolk, 907 F.2d at 1310. Burford
allows a federal court to abstain only under extraordinary circumstances in which the state's
interests are clearly paramount.

While the Court must balance the interests of federalism and comity, this "balance only
rarely favors abstention." Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 728 (1996). Mere
claims that significant issues of state policy are at stake does not justify abstention. In addition,
the Defendant has not shown that this RICO action will adversely impact California's managed
care regulations. Consequently, Burford abstention is not appropriate in this case.

## STATUTE OF LIMITATIONS

Next, Defendant United argues that the Plaintiffs' ten-year class period runs afoul of the
statute of limitations. The Plaintiffs seek to certify a class dating back to January 1990.
Amended Complaint, ¶ 189. Civil RICO actions must be filed within four years. Agency
Holding Corp. v. Malley-Duff & Assocs., Inc., 483 U.S. 143, 156 (1987).

The Plaintiffs claim that the ten-year class is appropriate because, under the "injury

9

discovery accrual rule," the statute of limitations for RICO actions does not begin to accrue until the Plaintiff knew or reasonably should have known of the injury. Rotella v. Wood, 528 U.S.549 (2000). Furthermore, the Plaintiffs claim that there was fraudulent concealment which would toll the statute of limitations period. When the Plaintiffs should have reasonably known about the allegations in the Complaint is a factual question that cannot be addressed at this stage in the proceedings.

## ENTERPRISE

The Plaintiffs charge that the Defendants have violated 18 U.S.C. § 1962(c), which makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." The Defendants' actions are alleged to be indictable under the following provisions of Title 18 of the United States Code: § 1341 (mail fraud), § 1343 (wire fraud), § 1346 (scheme or artifice to defraud), § 1951 (Hobbs Act), § 1952 (Travel Act) and § 1954 (offer, acceptance, or solicitation to influence operations of employee benefit plan).

The Defendants argue that the Plaintiffs' Amended Complaint does not sufficiently demonstrate the existence of an enterprise. The term "'enterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." § 1861(4). This group of persons must be associated together for a "common purpose of engaging in a course of conduct." United States v. Turkette, 452 U.S. 576, 583 (1981). This "association of individual entities, however loose or informal, . . . furnishes a vehicle for the commission of two or more predicate crimes" which

10

comprise the racketeering activity. United States v. Goldin, 219 F.3d 1271, 1275 (11th Cir. 2000). The existence of an enterprise may be proven "by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." Turkette, 452 U.S. at 583. Although RICO liability is not limited to those with primary responsibility for the enterprise's affairs, the Supreme Court has held that the "operation or management test" requires that "one must have some part in directing those affairs." Reves v. Ernst & Young, 507 U.S. 170, 179 (1993).

The Plaintiffs allege three alternative theories of an enterprise. The first theory is that the "health care delivery system in the United States" is an enterprise. Amended Complaint, ¶ 204. According to this Health Care Delivery System Enterprise theory, "health care providers must be associated and must function as at least an informal organization to provide health care services to residents of the United States." Id. The next theory is simply that the "health care systems within each geographic region constitute enterprises." Id. at ¶ 205.

The third enterprise theory is referred to by Plaintiffs as the "Managed Care Enterprise." This enterprise is made up of "the third-party entities which promulgate health care reimbursement guidelines and/or which are subcontracted by the Defendants for the purpose of reviewing claims made of the Defendants by Plaintiffs." Id. at ¶ 206 The Plaintiffs do not specifically identify any of these third-party entities in this section of their Complaint.

The Plaintiffs' first two theories are the most troubling. The Plaintiffs did not suggest that any court has ever held that an entire nationwide or regional industry or profession may constitute an enterprise. These two enterprises lack a distinct structure; one cannot easily identify who comes within the ambit of these enterprises, or where they begin and end.

11

Plaintiffs' Health Care Delivery System Enterprise and Regional Health Care Delivery System Enterprise theories are located on the periphery of an already extremely broad definition of enterprise.

The Managed Care Enterprise more closely resembles a RICO enterprise. However, as currently pled, the Court reads this theory to be that a group of commercial third-party entities apparently unrelated to each other who contract on a regular basis with some or all of the Defendants are the enterprise. The Plaintiffs have not pled a sufficient association between these third-party entities for the purposes of a RICO enterprise. In addition, even though the Plaintiffs are apparently in possession of information which would permit them to specifically identify some of these third-party entities, the Plaintiffs did not identify these entities when pleading their enterprise. See id. at ¶ 122 (alleging that Humana contracted with Value Health Sciences for "medical review systems" which review requests for authorizations). Finally, although Plaintiffs' Memorandum of Law in Opposition to the Humana Defendants' Motion to Dismiss states that the Defendants are part of the Managed Care Enterprise, this submission is contradicted by the Plaintiffs' pleadings. See, e.g., Civil RICO Case Statement Pursuant to Local Rule 12.1, answers 6(f) and (g) (Defendants are separate from and not members of any of these three enterprises); Amended Complaint, ¶ 206.

The Court finds that at this time the Plaintiffs have not sufficiently pled the existence of an enterprise. Therefore the § 1962(c) claim is dismissed without prejudice with leave to file an amended complaint curing these deficiencies no later than March 26, 2001.

12

## PREDICATE ACTS

### A. Mail and Wire Fraud

Mail or wire fraud occurs when a person (1) intentionally participates in a scheme to defraud another of money or property and (2) uses the mails or wires in furtherance of that scheme. United States v. Downs, 870 F.2d 613, 615 (11th Cir. 1989). A "scheme to defraud" entails the making of misrepresentations intended and reasonably calculated to deceive persons of ordinary prudence and comprehension. Pelletier v. Zweifel, 921 F.2d 1465, 1498-99 (11th Cir. 1991). Rule 9(b) of the Federal Rules of Civil Procedure requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." That is, the Plaintiffs must allege "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud." Brooks v. Blue Cross and Blue Shield of Florida, Inc., 116 F.3d 1364, 1380-81 (11th Cir. 1997).

The Plaintiffs state that "contrary to their agreements and representations to class members, the Defendants have each adopted internal policies and procedures specifically designed to systematically obstruct, reduce, delay and deny payments and reimbursements to health care providers." Amended Complaint, ¶ 153. The Defendants are alleged to engage in a systematic, fraudulent scheme of automatic downcoding, CPT code manipulation, improper bundling and use of inappropriate criteria to deny or reduce claims for reimbursement without a reasonable appeal mechanism. Id. at ¶¶ 156-168. Plaintiffs' Supplement to Civil RICO Statement expounds upon the underlying allegations of fraud in a manner sufficiently particular,

13

as it supplies details including specific dates, persons, methods and the resulting harm.    The Plaintiffs did omit Defendant Pacificare from the section of their RICO statement detailing the mail fraud violations and did not state with particularity the wire fraud allegations against Aetna, Prudential, United and Wellpoint. However, the elements of mail and wire fraud are essentially the same. Carpenter v. United States, 484 U.S. 19, 25 n. 6 (1987). Therefore, a factual account of the events underlying the alleged mail fraud may also serve to preserve the Plaintiffs' wire fraud claims (and vice versa).

The Defendants submit that, contrary to the Plaintiffs' claims, the Defendants do in fact disclose material information pertaining to their utilization review process, reimbursement methods and other cost-containment procedures. But for the purposes of a motion to dismiss, Plaintiffs' factual allegations are taken as true. Brooks, 116 F.3d at 1369. In addition, the Defendants argue that their plans are subject to review by state regulatory authorities (the "presumed knowledge" doctrine) and that the cost-containment procedures are authorized by state and federal law. Since the Defendants' arguments would require a factual inquiry to determine which practices have been reviewed, certified or statutorily authorized by which governmental authorities, it would be premature to examine them at this stage of the case. The Plaintiffs have properly pled against each Defendant predicate acts of mail and wire fraud constituting a continuing pattern of racketeering activity.

B. Extortion

Under the Hobbs Act, 18 U.S.C. § 1951, "whoever . . . affects commerce . . . by . . . extortion shall be fined not more than $10,000 or imprisoned not more than twenty years, or both." Extortion is defined as "the obtaining of property from another, with his consent, induced

14

by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2).

Plaintiffs allege that the "Defendants have engaged in extortionate conduct designed to exploit the Plaintiffs and the class' fear of economic loss or loss of business through the use of their restrictive 'all products' requirements. . . . extorting plaintiffs and the class through fear of economic loss." Amended Complaint, ¶ 176. Furthermore, the Plaintiffs claim that the Defendants possess "overwhelming and dominant economic and market power"and used threats of termination or non-renewal to "coerce Plaintiffs and the class into accepting contracts and Defendants' policies and practices on a 'take it or leave it' basis." Id. at ¶ 174. As a result of this activity, the Defendants are said to have obtained from the Plaintiffs' property interests to which they are not entitled. Id. at ¶¶ 233, 277.

The Defendants strongly argue that if the Plaintiffs were injured, their bruises are a result of nothing more than perfectly legal hard bargaining carried out at arm's length between participants in the health care market. Instead, a successful extortion theory requires that "the fear of economic loss is separate and distinct from performance on the contract" and the claim cannot be maintained when the "only fear of economic loss is that which accompanies any party to a contract when he suspects that compliance and compensation may not be forthcoming." Robert Suris Gen. Contractor Corp. v. New Metropolitan Fed. Sav. & Loan Ass'n, 873 F.2d 1401, 1405 (11th Cir. 1989). See also Lee v. Flightsafety Services Corp., 20 F.3d 428, 433 (11th Cir. 1994) (take-it-or leave-it bargaining alone is not wrongful enough to establish the requisite coercion).

The Defendants also rely heavily on Brokerage Concepts v. U.S. Healthcare, 140 F.3d

15

494 (3d Cir. 1998), in which the Third Circuit joined two other circuits in expanding the "claim of right" defense to extortion, as established in United States v. Enmons, 410 U.S. 396 (1973). The Court in Enmons found that since the Hobbs Act requires that a defendant's conduct be "wrongful," this requirement cannot be maintained where the alleged extortionist had a lawful claim to the property. Id. at 400. The Brokerage Concepts court expanded this defense to those situations "involving solely the accusation of the wrongful use of economic fear where two private parties have engaged in a mutually beneficial exchange of property." 140 F.3d at 526.

The Plaintiffs allege that the Defendants possess power akin to a monopoly, something more than mere hard bargaining on a level playing field. Cf. Brokerage Concepts, 140 F.3d at 526 n. 23 (suggesting that violation of antitrust laws may confer upon an aggrieved party a right to be free from economic coercion which would negate the claim of right defense). Moreover, the Plaintiffs claim that they feared not only the economic loss which accompanied the contracts at issue, but that the Defendants threatened to exclude them from the network, which, it is argued, would eviscerate the Plaintiffs' practice and livelihood.

The distinction between extortion and mere hard bargaining or breach of contract is not always clear. In addition, "the line separating lawful from unlawful claims to property obtained in business negotiations is by no means self evident." Id. at 524. By submitting that the Defendants have in effect held an economic gun to the Plaintiffs' heads and used other coercive methods to obtain property from the providers, these Plaintiffs have sufficiently pled claims of extortion under the relaxed standard set forth in the federal pleading rules. Hence, the Plaintiffs will have the opportunity to prove their economic coercion theory.

It remains to be seen in what manner property was obtained, and whether the market

16

atmosphere and the Defendants' actions were sufficiently coercive. The Plaintiffs should be prepared to demonstrate exactly what property the Defendants actually obtained from the Plaintiffs and how or whether it is possible to extort intangible property rights, services or fiduciary obligations from health care professionals. See, e.g., Amended Complaint, ¶ 277.

Defendant CIGNA argues that the Hobbs Act requires a showing that its conduct was "willful." Memorandum of Law in Support of CIGNA Defendant's Motion to Dismiss at 23. CIGNA suggests that its actions are authorized by federal and state law, and therefore Plaintiffs cannot show that CIGNA "acted with knowledge that [its] conduct was unlawful." See Ratzlaf v. United States, 510 U.S. 135, 137 (1994). CIGNA's state of mind and whether it does in fact comply with federal and state law is a factual issue reserved for the summary judgment stage of these proceedings.

C. Travel Act

18 U.S.C.A. § 1952, more commonly known as the Travel Act, establishes criminal liability for one who travels in interstate commerce or uses the mail system, with intent to "promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity." Id. The Plaintiffs have properly pled predicate acts of extortion. Therefore, the Plaintiffs' claim that "the Defendants on numerous occasions did travel and caused others . . . to travel in interstate commerce in order to attempt to and to commit . . . extortion," coupled with the additional factual allegations offered by the Plaintiffs, is sufficient to survive the Defendants' motions to dismiss. Amended Complaint, ¶¶ 237, 184

D. 18 U.S.C. § 1954

The Plaintiffs' final predicate act allegation concerns 18 U.S.C. § 1954, which holds that

17

"an administrator, officer, trustee, custodian, counsel, agent, or employee of any employee welfare benefit plan or employee pension benefit plan" who gives, offers, "receives or agrees to receive or solicits any fee, kickback, commission, gift, loan, money, or thing of value because of or with intent to be influenced with respect to, any of the actions, decisions, or other duties relating to any question or matter concerning such plan . . . shall be fined under this title or imprisoned not more than three years."

In the course of arguing for dismissal of these counts, the Defendants appear to presume that the Plaintiffs' vague allegations include only charges of bribery in connection with these employee welfare benefit plans. In fact, Section 1954 prohibits both bribes and gratuities. The "with intent to be influenced" statutory language refers to bribery, and bribery requires a quid pro quo. See U.S. v. Kummer, 89 F.3d 1536, 1540 (11th Cir. 1996). Alternatively, the words "because of" refer to gratuities, which are improper payments made "because of the act," and do not require a quid pro quo. Id. It is not clear whether the Plaintiffs are relying on a bribery or gratuity theory.

Although the Defendants protest that this section explicitly does not extend to "the payment to or acceptance by any person of bona fide salary, compensation, or other payments made for goods or facilities actually furnished or for services actually performed in the regular course of his duties," this observation is presently of no consequence. The words "bona fide" limit the liability limitation, and the thrust of Plaintiffs' entire complaint is that Defendants received property through actions inconsistent with good faith business practices.

Nevertheless, the Court concludes that the Plaintiffs have not successfully pled predicate acts under Section 1954. If the Plaintiffs are alleging bribery, they did not give "any indication of

18

the manner, if any, in which [the Defendants] actually exercised their influence over the plan." In re Fairchild Industries, Inc. and GMF Investments, Inc., 768 F.Supp. 1528, 1536 (N.D. Fla. 1990). Moreover, the Plaintiffs' boilerplate statement "[P]laintiffs and the class therefore have been injured in its business or property as a result of Defendants' overt acts and racketeering activities" does not aid the Court in determining whether the Plaintiffs have standing to allege the Section 1954 predicate act violations. The Defendants' motions to dismiss are granted with respect to the Section 1954 portion of Plaintiffs' complaint. The Plaintiffs are given leave to amend their complaint no later than March 26, 2001.

## INVESTMENT OR USE OF ENTERPRISE PROCEEDS

Section 1962(a) states: "It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." The Plaintiffs have not properly pled an enterprise. Therefore, the Court grants the Defendants' motions to dismiss this claim, but gives the Plaintiffs leave to amend their complaint no later than March 26, 2001, reserving judgment on the Defendants' arguments that the Plaintiffs do not have standing to pursue this claim.

## CONSPIRACY

The Plaintiffs also allege that the Defendants have conspired to violate Sections 1962(a) and (c). See § 1962(d). The Plaintiffs must allege "that the conspirators agreed to participate

19

directly or indirectly in the affairs of an enterprise through a pattern of racketeering activity." United States v. Castro, 89 F.3d 1443, 1451 (11th Cir.1996). Proof of an agreement to participate in a RICO conspiracy can be established by either: (1) "showing an agreement of an overall objective or (2) in the absence of an agreement on an overall objective, by showing that a defendant agreed personally to commit two predicate acts." United States v. Church, 955 F.2d 688, 694 (11th Cir.1992), cert. denied, 506 U.S. 881 (1992). The requisite agreement may be inferred from the conduct of the participants. Id. at 695. Unlike criminal RICO conspiracy, proof of an "overt act" is required for a civil RICO conspiracy claim. Beck v. Prupis, 162 F.3d 1090,1099 n. 18 (11th Cir. 1998), aff'd, 529 U.S. 494 (2000).

Since the Plaintiffs here failed to properly plead an enterprise, the Court dismisses the conspiracy claims. See United States v. Boldin, 772 F.2d 719, 727 (11th Cir. 1985) ("A RICO conspiracy charge requires proof of . . . the existence of an 'enterprise.'"). Absent this defect, however, the Court finds that the Plaintiffs have adequately pled a conspiracy claim under Section 1962(d). The Plaintiffs posit that the Defendants collectively exercised "their overwhelming and dominant economic and market power to coerce Plaintiffs and the class" in an extortionate manner. Amended Complaint, ¶¶ 174, 176. Indeed, the Plaintiffs may very well be required to prove a conspiracy in order to succeed on an extortion claim premised upon monopolistic power. In addition, the Plaintiffs allege that the Defendants agreed among themselves to further a scheme to defraud, and that as a consequence the Plaintiffs were injured. Id. at ¶¶ 234, 276-280. Therefore the Plaintiffs' conspiracy claims are dismissed, but subject to reinstatement if the Plaintiffs successfully re-plead the enterprise element.

20

## AIDER AND ABETTOR LIABILITY

In Count IV of their complaint, the Plaintiffs allege that the Defendants are guilty of aiding and abetting a scheme to violate 18 U.S.C. § 1962(a) and (c). Title 18 U.S.C. § 2 provides that "[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal." The primary issue is whether there is an implied cause of action for aiding and abetting a RICO violation. The Eleventh Circuit settled this issue in Cox v. Administrator U.S. Steel & Carnegie, 17 F.3d 1386, 1410 (11th Cir. 1994) by concluding that such liability does exist.

However, two weeks later in Central Bank v. First Interstate Bank, 511 U.S. 164, 191 (1994), the Supreme Court held that one may not advance a civil cause of action for aiding and abetting a violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b). The Court found that "when Congress enacts a statute under which a person may sue and recover damages from a private defendant for the defendant's violation of some statutory norm, there is no general presumption that the plaintiff may also sue aiders and abettors." Central Bank, 511 U.S. at 182. The general federal criminal aider and abettor statute, 18 U.S.C. § 2, which Plaintiffs rely upon in this case, is not "a general civil aiding and abetting statute . . . for suits by private parties." Id.

The Defendants advance the argument that Central Bank implicitly overrules Cox insofar as that decision authorizes aiding and abetting claims. The Cox Court did not engage in extended analysis, preferring instead to cite to Petro-Tech, Inc. v. Western Co. of North America, 824 F.2d 1349, 1356 (3d Cir. 1987). The Third Circuit has since reversed its position on the issue in light of Central Bank. See Rolo v. City Investing Co. Liquidating Trust, 155 F.3d 644,

21

656 (3d Cir. 1998); Pennsylvania Ass'n of Edwards Heirs v. Rightenour, 235 F.3d 839, 843 (3d Cir. 2000). On the other hand, the Supreme Court denied certiorari in Cox nearly one year after Central Bank of Denver. USX Corp. v. Cox, 513 U.S. 1110 (Jan. 17, 1995).

It is the duty of this Court to follow controlling Eleventh Circuit precedent unless there is a direct Supreme Court case on the particular issue in question holding to the contrary. Therefore the Plaintiffs can maintain a cause of action for aiding and abetting. For the moment, however, these claims are dismissed because the Plaintiffs have failed to properly plead an enterprise. See Petro-Tech, Inc., 824 F.2d at 1357 (aiding and abetting liability claim viable "[s]o long as all of RICO's other requirements are met").

## BREACH OF CONTRACT

The Plaintiffs contend that Defendant Humana has breached its contracts with providers by declining to submit proper reimbursement for medical services rendered. Amended Complaint, ¶ 301. Plaintiffs admit that they did not state a claim against any Defendants other than Humana and maintain that this omission was "the result of a scrivener's error." Since the Plaintiffs are being given leave to amend their complaint, they may at that time list those Defendants against whom they wish to assert contract claims no later than March 26, 2001.

Anticipating that the Plaintiffs will amend their Complaint, the Defendants respond that the Plaintiffs' contract claims are preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1144. ERISA applies to any employee benefit plan, provided that it is established or maintained by an employer or employee organization engaged in commerce or in any industry or activity affecting commerce. 29 U.S.C. § 1003(a). The statute explicitly includes plans provided through the purchase of insurance. 29 U.S.C. § 1002(1). The

22

preemption section states that this federal statute "shall supercede any and all state laws insofar as they may now or thereafter relate to any employment plan" covered by ERISA. 29 U.S.C. § 1144(a). A state law "relates to" a covered employee benefit plan "if it has a connection with or reference to such a plan." District of Columbia v. Greater Washington Bd. of Trade, 506 U.S. 125, 129 (1992), quoting Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 97 (1983).

In Lordmann Enterprises, Inc. v. Equicor, Inc., 32 F.3d 1529 (11th Cir. 1994), the Eleventh Circuit agreed with the position of Memorial Hosp. Sys. v. Northbrook Life Ins. Co., 904 F.2d 236 (5th Cir. 1990), that "state law claims brought by health care providers against plan insurers too tenuously affect ERISA plans to be preempted by the Act." Lordmann Enterprises, 32 F.3d at 1533. In this case, the Provider Plaintiffs assert that they seek to enforce the terms and conditions of their own contracts with the Defendants, rather than assignments from ERISA beneficiaries. Amended Complaint, ¶ 297. See also Variety Children's Hospital, Inc. v. Blue Cross/Blue Shield, 942 F.Supp. 562, 568 (S.D. Fla. 1996) (claim not preempted where provider plaintiff brought suit in its independent status as a third-party rather than as an assignee of benefits). The Plaintiffs allege that the Defendants engaged in bundling and downcoding, actions which might sustain a breach of contract claim without a need for reference to the interpretation of ERISA plans. The Plaintiffs' state law contract claims therefore do not "relate to" the ERISA plans, and are not preempted by the Act.

The policy arguments set forth in Memorial Hospital and adopted by the Court in Lordmann Enterprises elucidate the wisdom of this result. First, preemption of provider contract claims would "defeat rather than promote" ERISA's goal to "protect the interests of employees and beneficiaries covered by benefit plans." Lordmann Enterprises, 32 F.3d at 1533. The Court

23

theorized that as a result of preemption, health care providers could no longer rely as freely on the representations of insurers and would therefore act to protect themselves by denying care or raising fees. Id. Second, health care providers are not within the scope of ERISA. Id. Although employer and employees traded their right to bring a state cause of action in exchange for the benefits of ERISA, the statute does not provide a cause of action for health care providers who treat ERISA participants. In short, preemption of state law claims would leave health care providers with no viable civil remedy. Id. at 1533-34.

The Court therefore holds that the Plaintiffs may bring their contract claims free of the shadow of ERISA preemption. Because the Court acknowledges that the Plaintiffs intend to amend and file contract claims against all of the Defendants, it declines to reach Plaintiffs' alternative pleading for monetary and injunctive relief under ERISA. See id. at ¶ 296.

Finally, Humana argues that the provider agreements between Defendant and Plaintiffs Shane and Davis (and by implication Plaintiff Book) obligate the Plaintiffs to exhaust their claims through Humana's grievance procedure. See Shane Agreement, ¶ 16; Davis Agreement, ¶ 18. The Plaintiffs respond that to the extent a grievance procedure exists, it is mandatory only for patients, not providers. In view of the Plaintiffs' claims that "Humana systematically targeted, coerced, threatened and intimidated Providers who objected to Humana's wrongful practices," Amended Complaint, ¶ 115, the Plaintiffs need not pursue remedy under the alleged grievance procedure.

## QUANTUM MERUIT AND UNJUST ENRICHMENT CLAIMS

The Plaintiffs also make claims against the Defendants under the quasi-contract theories of quantum meruit and unjust enrichment. All of the parties agree that there are existing

24

contracts between the Plaintiffs and Defendants. A quasi-contract cause of action can only be maintained where the subject matter of the dispute is not covered by a valid and enforceable contract. As an initial matter, the Court agrees with the Defendants that the Plaintiffs cannot maintain these quasi-contract theories based upon the premise that the Plaintiffs are asserting the rights of unnamed providers not before the court who were injured by but do not have contracts with the Defendants. Absent a special relationship or class action, the Plaintiffs at the present time do not have standing to assert the rights of these third parties. See Warth v. Seldin, 422 U.S. 490, 499 (1975) ("[T]he plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.").

To the extent that the Plaintiffs' quasi-contract claims are covered by contractual arrangements between the parties, the Court treats the Plaintiffs' contention as a pleading of alternative or inconsistent claims for relief in accordance with Federal Rule of Civil Procedure 8(e)(2). The Court denies the Defendants' motions to dismiss for several reasons. First, having asserted that the Defendants have engaged in fraud and employed contracts of adhesion, the Plaintiffs could seek a rescission of the contracts. See, e.g., Amended Complaint, Prayer For Relief, subsection C. Second, there may be matters of dispute which are outside the scope of the contracts. Third, and most importantly, the Court will not attempt to adjudicate in a legal vacuum. Despite the conspicuous choice of law issue, the Plaintiffs and Defendants (with the exception of Defendant Foundation) have not apprised the Court of what they believe to be the appropriate choice of law rule and the appropriate forum law to be applied with respect to each individual Defendant.

## STATE PROMPT-PAY STATUTES

25

The Plaintiffs allege that Defendant Humana violated various state "prompt pay" statutes in a manner which entitles the Plaintiffs to relief. According to the Plaintiffs, "[a]pproximately 95% of Humana subscribers and the class members providing medical services to said subscribers are located in the 15 states referred in Paragraph — [sic], supra." Amended Complaint, ¶ 310. The Plaintiffs aver that 13 of these states (Arkansas and Indiana are the exceptions) have "prompt pay" statutes requiring "Humana to pay claims for medical services rendered within a stated period of time," and that Humana systematically violated these statutes to the detriment of Plaintiffs. Id. at ¶¶ 310, 311. The Plaintiffs did not allege a cause of action against any Defendants other than Humana and maintain that this omission was unintentional.

Aetna's and Foundation's motions to dismiss the state law prompt pay statutory claims are granted to the benefit of all Defendants, including Humana. The Court will give the Plaintiffs leave to amend their complaint no later than March 26, 2001. Any re-pleading of these state prompt pay claims should identify which state statutes are being alleged and which Defendants are alleged to have violated which statute. Furthermore, the Plaintiffs must state how each Defendant violated the statute (or refer to material from the Amended Complaint), prescribe which statutory section provides an explicit cause of action, and, if no such provision exists, acknowledge that the Plaintiffs are relying on an implied cause of action theory.

## FEDERAL PROMPT-PAY REQUIREMENTS

The Plaintiffs assert an implied claim for relief pursuant to the Omnibus Budget Reconciliation Act of 1986, § 9312(d), which they submit is "codified" at 42 CFR § 417.500(a)(6). Amended Complaint, ¶ 304. This provision states as follows: "(a) Basis for imposition of sanctions. [The Health Care Financing Administration] may impose the

26

intermediate sanctions specified in paragraph (d) of this section, as an alternative to termination, if HCFA determines that an HMO or CMP does one or more of the following: . . . . (6) Fails to comply with the requirements of section 1876(g)(6)(A) of the Act relating to the prompt payment of claims." 42 CFR § 417.500(a)(6). Section 1876(g)(6)(A) was repealed following the promulgation of this regulation.

The Plaintiffs do not elaborate beyond citation to Section 417.500 and vague invocations of the federal Medicare program when discussing the source of their proposed implied right of action (nor do they comment on Section 1876(g)(6)(A)). The Plaintiffs cannot rest this purported right upon an administrative regulation alone, for "[t]he rulemaking power granted to an administrative agency charged with the administration of a federal statute is not the power to make law. Rather, it is 'the power to adopt regulations to carry into effect the will of Congress as expressed by the statute.'" Ernst & Ernst v. Hochfelder, 425 U.S. 185, 213-14 (1976), quoting in part Dixon v. United States, 381 U.S. 68, 74 (1965) and Manhattan General Equipment Co. v. Commissioner, 297 U.S. 129, 134 (1936). See also Stewart v. Bernstein, 769 F.2d 1088, 1093 (5th Cir.1985) ("[T]he federal regulations cannot themselves create a cause of action; this is a job for the legislature."); Sandoval v. Hagan (N.D. Ala. 1998), 7 F.Supp.2d 1234, 1256 n.20 ("[N]o implied private right of action can be found from regulations standing alone.").

Some Defendants suggest that the Plaintiffs might rely upon 42 U.S.C. § 1395mm(g)(6). See NME Hosps., Inc. v. Bowen, Civ. A. No. 87-1450 (D.D.C. May 29, 1987) (observing that 42 U.S.C. § 1395mm(g)(6) was enacted through Section 9312(d)(1) of the Omnibus Budget Reconciliation Act of 1986). Yet this statute does not establish general prohibitions, but rather it stipulates certain restrictions and requirements which all relevant contracts between HMOs and

27

the government must contain. See 42 U.S.C. § 1395mm(g)(6)(A) ("A risk-sharing contract under this section shall require the eligible organization to provide prompt payment . . . of claims submitted for services and supplies furnished to individuals pursuant to such contract, if the services are not furnished under a contract between the organization and the provider or supplier."). Another provision, 42 U.S.C. § 1395u, which offers Plaintiffs' buzzwords of "clean claims," "95 percent" and "30 calendar days," is similarly limited in scope. See 42 U.S.C. § 1395u(c)(2)(A) ("Each contract under this section which provides for the disbursement of funds . . . shall provide that payment shall be issued, mailed, or otherwise transmitted with respect to not less than 95 percent of all claims submitted under this part . . . which are clean claims, and . . . for which payment is not made . . . within the applicable number of calendar days after the date on which the claim is received. See also 42 U.S.C. § 1395h(2)(A).

Moreover, the Plaintiffs' claim fails under the doctrine of Cort v. Ash, 422 U.S. 66 (1975) and its progeny. The sine qua non of an implied right of action is that it must be shown that "Congress intended to create the private remedy sought by the Plaintiffs." Suter v. Artist M., 503 U.S. 347, 363 (1992); Bagget v. First Nat'l Bank, 117 F.3d 1342, 1345 (11th Cir. 1997) ("In determining whether Congress intended to confer a private right of action, congressional intent is the dispositive inquiry."). The burden is on the proponent of the implied cause of action to demonstrate the existence of this congressional intent. Suter, 503 U.S. at 363. Furthermore, there is a presumption against finding such a cause of action. Transamerica Mortgage Advisors, Inc. v. Lewis, 444 U.S. 11, 17 (1979); West Allis Mem'l Hosp., Inc. v. Bowen, 852 F.2d 251, 254 (7th Cir. 1988).

The Plaintiffs do not identify any legislative history suggesting that Congress intended to

28

create such a remedy. A natural reading of these statutes and regulations demonstrates that they are meant to assist the Secretary in administering and enforcing specific contracts rather than creating an implied right of action for those individuals aggrieved by late payments. The Plaintiffs do not clearly explain how they could fit into the statutory scheme nor do they submit a persuasive argument for permitting a private civil action under a statute which appears to leave enforcement to the discretion of the Secretary of Health and Human Services. See generally H.R. Rep. No. 727 at 443 (1986); Heckler v. Ringer, 466 U.S. 602, 614-15 (1984) (finding no federal-question jurisdiction under 28 U.S.C. § 1331 because 42 U.S.C. § 405(g) is the "sole avenue for judicial review for all 'claim[s] arising under' the Medicare Act."). Therefore the Court dismisses the claim brought under the federal prompt-payment statutes and regulations.

## CONCLUSION

For the reasons stated above, it is

ADJUDGED that Defendants' motions to dismiss are GRANTED in part and DENIED in part. The provider Plaintiffs may file an amended complaint consistent with this opinion no later than Monday, March 26, 2001. The Defendants shall have until April 30, 2001 to respond to the amended complaint.

DONE AND ORDERED in Chambers at Miami, Florida, this 2nd day of March, 2001.

FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

COPIES PROVIDED TO COUNSEL ON
THE January 31, 2001 SERVICE LIST

29

2000 U.S. Dist. LEXIS 19313 printed in FULL format.

Riverhills Healthcare, Inc., Plaintiff, vs. Aetna U.S. Healthcare, Inc., et al., Defendants.
Case No. C-1-00-525
UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO, WESTERN
DIVISION
2000 U.S. Dist. LEXIS 19313

October 19, 2000, Decided
October 23, 2000, Filed

DISPOSITION: *1 Plaintiff's motion for remand GRANTED. Case REMANDED. All other pending motions MOOT.
CASE SUMMARY

PROCEDURAL POSTURE: Plaintiff moved for remand of its complaint, alleging defendant health insurers routinely failed to timely pay claims, pursuant to 28 U.S.C.S. § 1447(c).

OVERVIEW: Plaintiff physician practice group sued defendant health insurers, alleging defendants routinely failed to pay claims on a timely basis. Defendants removed the case, asserting the federal court had subject matter jurisdiction because the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C.S. § 1001 et seq., preempted plaintiff's claims. Alternatively, defendants alleged removal was proper because plaintiff's claims arose under Medicare. The court granted plaintiff's motion to remand. Plaintiff's claims were not removable because they did not represent claims for benefits under 29 U.S.C.S. § 1132(a)(1)(B). Plaintiff's right to payment derived from the fee schedules set forth in the provider agreements, and not from the terms of any individual ERISA plan. Similarly, the complaint did not set forth any particular claim or entitlement for Medicare reimbursement, nor did it challenge the amount it received in reimbursement for any Medicare claim. Again, plaintiff's entitlement to reimbursement arose under the terms of the provider agreements and the fee schedules set forth therein. Thus, the court did not have removal jurisdiction under Medicare.

OUTCOME: Plaintiff's motion for remand was granted; plaintiff's claims were not preempted, since their entitlement to reimbursement arose under the terms of the provider agreements and the fee schedules set forth therein, not from the terms of any Employee Retirement Income Security Act plan or Medicare claim.

CORE TERMS: preempt, removal, cause of action, reimbursement, state law, breached, methodology, pre-emption, preempted, removable, beneficiary, provider, employee benefit plan, services rendered, entitlement, well-taken, evidenced, declaratory judgment, failing to pay, interest rate, fair dealing, timely basis, civil action, time period, health care, arbitrarily, routinely, covenant, patient, insurers

CORE CONCEPTS -

Labor & Employment Law: Employee Retirement Income Security Act (ERISA): Civil Claims & Remedies
See 29 U.S.C.S. § 1132(a)(1)(B).

Labor & Employment Law: Employee Retirement Income Security Act (ERISA): Federal Preemption
See 29 U.S.C.S. § 1144(a).

Civil Procedure: Pleading & Practice: Defenses, Objections & Demurrers
Federal preemption is normally a defense to plaintiff's lawsuit.

Labor & Employment Law: Employee Retirement Income Security Act (ERISA): Federal Preemption
Under the well-pleaded complaint rule, federal pre-emption does not provide an appropriate basis for removal jurisdiction unless Congress has evidenced an intent to completely preempt a particular area of state law. One area where Congress has evidenced an intent to completely preempt state law is where claims fall within the civil enforcement provisions of the Employee Retirement Income Security Act.

Labor & Employment Law: Employee Retirement Income Security Act (ERISA): Federal Preemption
Even if a plaintiff's claims are preempted by 29 U.S.C.S. § 1144(a) because they relate to any employee benefit plan, they are not removable from state court unless they represent claims for benefits under 29 U.S.C.S. § 1132(a)(1)(B).

Contracts Law: Contract Interpretation: General Rules
In construing a written instrument, effect should be

2000 U.S. Dist. LEXIS 19313, *1 LEXSEE

given to all of its words. If possible, every provision in a contract should be held to have been inserted for some purpose and to perform some office, and an attempt must be made to harmonize, if possible, all the provisions of a contract.

Labor & Employment Law: Employee Retirement Income Security Act (ERISA): Federal Preemption
A participant may assign his claim for benefits to a health care provider, and the assignment of that claim will be construed as arising under 29 U.S.C.S. § 1132(a)(1)(B), and therefore will be removable.

COUNSEL: For RIVERHILLS HEALTHCARE INC, plaintiff: Janet Gilligan Abaray, Lopez Hodes Restaino Milman Skikos & Polos, West Chester, OH.

For AETNA US HEALTHCARE INC, AETNA HEALTH MANAGEMENT INC, defendants: Robert Jerome Fogarty, Hahn Loeser & Parks, Cleveland, OH.

For HUMANA HEALTH PLAN OF OHIO INC, defendant: Brian Brooks, Robert N Eccles, John A Rogovin, O'Melveny & Myers LLP, Washington, DC.

For HUMANA HEALTH PLAN OF OHIO INC, defendant: Mark T Hayden, Greenebaum Doll & McDonald, Cincinnati, OH.

For UNITED HEALTHCARE OF OHIO, INC., defendant: Eliott Richard Good, Chorpenning Good & Mancuso Co LPA, Columbus, OH.

JUDGES: Sandra S. Beckwith, United States District Judge.

OPINIONBY: Sandra S. Beckwith

OPINION: ORDER

This matter is before the Court on Plaintiff Riverhills Healthcare, Inc.'s Motion for Remand Pursuant to 28 U.S.C. § 1447(c) (Doc. No. 5). For the reasons set forth below, Plaintiff's motion for remand is well-taken and is GRANTED.

I. Background

The plaintiff in this case is Riverhills Healthcare, Inc. ("Riverhills"), a physician practice group located*2 in Cincinnati, Ohio. Riverhills provides treatment to patients in the areas of neurology, neuroscience, and behavioral sciences. Complaint P 2. The Defendants are Aetna U.S. Healthcare, Inc., Aetna Health Management,

Inc., Humana Health Plan of Ohio, Inc., and United HealthCare of Ohio, Inc.

The Complaint alleges that Riverhills entered into contracts with each of the Defendants to provide health care services to persons they insure in exchange for compensation. The Complaint further alleges that under Ohio law, insurers are required to pay medical care providers within twenty-four days of receipt of the claim, unless another time period is specified by contract. Furthermore, Riverhills alleges that Ohio law requires health insurers to pay interest at a rate of 10% per year (unless another interest rate is specified by contract) on completed claims that are not paid within the specified period. The Complaint alleges that the contracts Riverhills entered into with United Healthcare, Inc. and Humana Health Plan do not specify either a time period for payment of claims nor an interest rate for late payments. Therefore, the Complaint alleges, the default provisions of Ohio law apply to*3 these contracts. See Complaint PP 13-19. The Aetna contract provides for payment of claims to be made within thirty days and provides for interest of 10% to be paid on late payments. See id. P 20.

Despite these statutory and contractual provisions, the Complaint alleges that Defendants routinely fail to pay claims on a timely basis. In addition, the Complaint alleges that Defendants, in order to avoid the obligation to pay interest on late payments, represent to Riverhills each month that they have not received 25% of Riverhills' claims. The Complaint alleges that Defendants engage in an industry-wide practice of either ignoring claims or delaying payments in order to increase company assets. Id. PP 23-26. In addition to these other alleged wrongdoings, Riverhills alleges that Defendants routinely and arbitrarily downgrade claims in order to lessen their reimbursement obligations, forcing the physician to object or appeal the remittance in order to obtain full payment. Id. PP 28-30. Riverhills alleges that these practices cause it to spend $ 25,000 per year to monitor and enforce payment of completed claims, in addition to lost interest on payments in excess of $ 80,000*4 per year. All-in-all, Riverhills claims that Defendants wrongfully withhold between $ 600,000 and $ 800,000 in payments per month. Id. PP 35-37.

On May 25, 2000, Riverhills filed a Complaint against the Defendants in the Hamilton County, Ohio Court of Common Pleas asserting seven causes of action. The first cause of action seeks a declaratory judgment that Riverhills is not required to arbitrate its dispute with United Healthcare pursuant to an arbitration clause contained in the contract between the parties. The second

claims are generated by participants covered by ERISA health care plans; 2) Riverhills agreed in the contracts to file claims for payment on behalf of plan participants; and 3) Riverhills agreed in the contracts to accept assignments of benefits from participants as payment for services rendered. The Court finds Defendants' logic flawed for several reasons. First, regardless of the number of claims that may have been generated by ERISA plan participants, the Court notes that Riverhills does not claim payment for benefits for any particular service rendered for any particular plan beneficiary. In other words, Riverhills is not claiming that it is entitled to payment for a specific procedure performed for a specific patient on a specific day. Rather, Riverhills is challenging the entire methodology by which Defendants process claims and contends that it is this methodology, and not Defendants' refusal to pay for any particular service, which has caused harm. Furthermore, the fact that Riverhills has agreed to accept assignments of benefits from participants*9 as payment does not mean that every claim filed by Riverbills on behalf of a participant is an assignment of benefits. If that were true, there would be no need to include a clause which specifically states that Riverhills agrees to accept assignments as payment for services. See Mapletown Foods, Inc. v. Motorists Mut. Ins. Co., 104 Ohio App. 3d 345, 662 N.E.2d 48, 49 (Ohio Ct. App. 1995) ("In construing a written instrument, effect should be given to all of its words . . . . . If possible, every provision in a contract should be held to have been inserted for some purpose and to perform some office, and an attempt must be made to harmonize, if possible, all the provisions of a contract."). Even though a participant may assign his claim for benefits to a health care provider, and the assignment of that claim will be construed as arising under § 1132(a)(1)(B), and therefore removable, Cromwell v. Equicor-Equitable HCA Corp., 944 F.2d 1272, 1277-78 (6th Cir. 1991), Defendants have not identified any such assignment which makes this case removable. Furthermore, even though the source of payment for services rendered may be an ERISA plan, Plaintiff's right*10 to payment derives from the fee schedules set forth in the provider agreements and not from the terms of any individual ERISA plan. Therefore, even though Riverhills may submit claims for payment on behalf of plan beneficiaries, such claims do not constitute claims for plan benefits under § 1132(a)(1)(B). See Blue Cross of California v. Anesthesia Care Assoc. Med. Group, Inc., 187 F.3d 1045, 1050-51 (9th Cir. 1999). In summary, ERISA does not completely preempt Plaintiff's state law claims because they are not claims for plan benefits under § 1132(a)(1)(B). Therefore, Defendants improperly removed this case from state court on that basis.

The analysis is substantially similar with respect to Defendants' contention that Medicare preempts Plaintiff's claims. As was the case with Defendants' ERISA argument, the Complaint does not set forth any particular claim or entitlement for Medicare reimbursement, nor does it challenge the amount it received in reimbursement for any Medicare claim. Plaintiff's entitlement to reimbursement arises under the terms of the provider agreements and the fee schedules set forth therein. As noted, Plaintiff primarily challenges the timing *11 and methodology of Defendants' reimbursement procedures. Medicare does not completely preempt state law where billing for medical services is concerned. See Downthour v. Somani, 85 F.3d 261, 265-66 (6th Cir. 1996). Therefore, even though Medicare may preempt Plaintiff's claims, without complete preemption, Defendants improperly removed the case from state court.

### Conclusion

In conclusion, the Court finds that Plaintiff's claims are not claims for plan benefits under 29 U.S.C. § 1132(a)(1)(B) and that, therefore, the Court does not have removal jurisdiction over this case pursuant to ERISA. Additionally, the Court finds that Medicare does not completely preempt Plaintiff's claims. Therefore, the Court does not have removal jurisdiction under Medicare. Accordingly, Plaintiff's motion for remand is well-taken and is GRANTED. This case is REMANDED to the Hamilton County Ohio Court of Common Pleas. All other pending motions are MOOT.

IT IS SO ORDERED

Date 10-19-2000

Sandra S. Beckwith

United States District Judge

JUDGMENT IN A CIVIL CASE - OCTOBER 23, 2000 Date

Decision by Court. This action*12 came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

IT IS ORDERED AND ADJUDGED

THAT PLAINTIFF'S MOTION FOR REMAND DOC. 5 IS GRANTED AND THIS CASE IS REMANDED TO THE HAMILTON COUNTY, OHIO

COURT OF COMMON PLEAS PURSUANT TO          OCTOBER 23, 2000
ORDER OF THE COURT DOC. 45.                Date

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

STEPHEN R. LEVINSON, M.D.,      :
ET AL.,                        :
                               :
     Plaintiffs,               :
                               :
V.                             :   CASE NO. 3:01CV426 (RNC)
                               :
ANTHEM HEALTH PLANS, INC.,     :
                               :
     Defendant.                :

#### ORDER

In the interest of justice, the above identified case is hereby transferred to Judge Janet Bond Arterton. All further pleadings or documents in this matter should be filed with the Clerk's Office in New Haven and bear the docket number 3:01CV426 (JBA). Pleadings or documents related to this action and filed in any other seat of court, will be refused at the Clerk's Office and returned to you unfiled. See Local Rule 7(a).

So ordered.

Dated at Hartford, Connecticut this 2nd day of April 2001.

Robert N. Chatigny
United States District Judge

15

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

STEPHEN R. LEVINSON., M.D., KAREN LAUGEL, M.D., and J. KEVIN LYNCH, M.D., on behalf of themselves and other similarly situated,

Plaintiffs,

*v.*

ANTHEM HEALTH PLANS, INC. d/b/a ANTHEM BLUE CROSS AND BLUE SHIELD OF CONNECTICUT ,

Defendant.



Civil Action 3:01CV426 (JBA)

April 12, 2001

4/17/01: Motion GRANTED, over objection for good cause shown, to and including 4/27/01.

IT IS SO ORDERED.

Janet Bond Arterton, U.S.D.J.

New Haven, Connecticut.

## MOTION FOR EXTENSION OF TIME

Defendant hereby moves, pursuant to Local Civil Rule 9(b), for a seven (7) day extension of time within which to file a response to plaintiff's Expedited Motion to Remand And For Attorney's Fees and Expenses dated March 28, 2001. This extension is necessary because of scheduling commitments and the holidays.

Plaintiff's counsel has indicated that he objects to the granting of this motion.

This is the first such request for an extension of time.

FILED APR 17 3 02 PM '01

2001 APR 13 A 9:25

DELANEY, ZEMETIS, DONAHUE, DURHAM & NOONAN, P.C.
CONCEPT PARK • 741 BOSTON POST ROAD
GUILFORD, CONNECTICUT 06437
TEL: (203) 458-9168 • FAX: (203) 458-4424
JURIS NO. 415438

THE DEFENDANT
ANTHEM HEALTH PLANS, INC.

By: _____

Michael G. Durham (Fed Bar # ct05342)
Patrick M. Noonan (Fed. Bar # ct00189)
DELANEY, ZEMETIS, DONAHUE,
  DURHAM & NOONAN
741 Boston Post Road
Guilford, CT 06437

Craig A. Hoover (Fed. Bar # ct21931)
Jeffrey Pariser (Fed. Bar # ct22245)
Jeremy T. Monthy (Fed. Bar # ct22244)
555 13th Street, N.W.
Washington, DC 20004
(202) 637-5600

Attorneys for Defendants

2

## CERTIFICATION

This is to certify that a copy of the foregoing was mailed, postage prepaid, on the above-written date, to:

James E. Hartley, Jr.
Drubner, Hartley, O'Conner & Mengacci, L.L.C.
500 Chase Parkway
Waterbury, CT 06708
Tel: (203) 753-9291     Fax: (203) 753-6373

Gregory J. Pepe
Neubert, Pepe & Monteith, P.C.
195 Church Street, 13th Floor
New Haven, CT 06510-2026-
Tel: (203) 821-2000     Fax: (203) 821-2009

Melvyn I. Weiss
Milberg Weiss Bershad Hynes & Lerach, LLP
One Pennsylvania Plaza
New York, NY 10119-0165
Tel: (203) 594-5300     Fax: (203) 868-1229

Stanley M. Grossman
D. Brian Hufford
Pomerantz Haudek Blodk Grossman & Gross, LLP
100 Park Avenue, 26th Floor
New York, NY
Tel: (212) 661-1100     Fax: (212) 661-8665

David R. Scott
James E. Miller
Scott & Scott, LLC
108 Norwich Avenue
P.O. Box 192
Colchester, CT 06415
Tel: (860) 537-5537     Fax: (860) 537-4432

Jeffrey L. Kodroff
Spector, Roseman & Kodrof, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA 19103
Tel: (215) 496-0300     Fax: (215) 496-6611

Michael G. Durham

3



## UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT    FILED

STEPHEN R. LEVINSON, M.D., KAREN
LAUGEL, M.D., AND J. KEVIN LYNCH,
M.D., on behalf of themselves and others
similarly situated,

                    Plaintiffs

           v.

ANTHEM HEALTH PLANS, INC. d/b/a:
ANTHEM BLUE CROSS AND BLUE
SHIELD OF CONNECTICUT

                    Defendants.

:
:
:
:
:
:
:
:
:
:
:
:
:

CIVIL ACTION NO.
3:01CV 426(JBA)

April 12, 2001

## APPEARANCE

To the Clerk of this Court and all parties of record:

        Pursuant to Local Rule 7(b) and the Motion for Admission Pro Hac Vice

endorsed on March 28, 2001, please enter my appearance as counsel in the above-styled

matter for Defendant Anthem Health Plans, Inc.

        As requested by the clerk, Defendant's local counsel is Patrick M. Noonan,

Delaney, Zemetis, Donahue, Durham & Noonan, P.C., Concept Park, 741 Boston Post Road,

Guilford, Connecticut 06437.

                        Respectfully submitted,

Dated: April 12, 2001
Fed. Bar # ct22245

Jeffrey D. Pariser
Hogan & Hartson, L.L.P.
555 13th Street, N.W.
Washington, DC  20004
(202) 637-8689

**CERTIFICATE OF SERVICE**

I hereby certify that on this 12th day of April, 2001, a copy of the foregoing

Appearance was served by first class mail, postage prepaid, addressed to the following:

James E. Hartley, Jr.
DRUBNER HARTLEY O'CONNOR &
MENGACCI, L.L.C.
500 Chase Parkway
Waterbury CT 06708
      Tel: (203) 753-9291
      Fax: (203) 753-6373

Gregory J. Pepe
Neubert, Pepe & Monteith, P.C.
195 Church Street, 13th Floor
New Haven, CT 06510-2026
      Tel: (203) 821-2000
      Fax: (203) 821-2009

Christopher A. Seeger
Stephen A. Weiss
Seeger Weiss, L.L.P.
One William Street
New York, NY 10004
      Tel: (203) 584-0700
      Fax: (203) 584-0799

Patrick M. Noonan
Kevin C. Shea
DELANEY, ZEMETIS, DONAHUE,
DURHAM & NOONAN
741 Boston Post Road
Guildford, CT 06437

Jeffrey Pariser

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

2001 APR 18  P 12: 52

STEPHEN R. LEVINSON, M.D., KAREN LAUGEL,
M.D., and J. KEVIN LYNCH, M.D., ON BEHALF OF
THEMSELVES AND OTHERS SIMILARLY
SITUATED.

        :
        :

CIVIL ACTION NO.
3:01 CV 00426 (JBA)

        *Plaintiffs,*

        v.

ANTHEM HEALTH PLANS, INC., d/b/a ANTHEM
BLUE CROSS AND BLUE SHIELD OF
CONNECTICUT

        :

April 18, 2001

        *Defendant.*

### PLAINTIFFS' OPPOSITION TO DEFENDANT'S
### MOTION FOR EXTENSION OF TIME

Plaintiffs, by their undersigned counsel, respectfully submit this opposition to defendant

Anthem Health Plans, Inc.'s ("Anthem" or "defendant") Motion for Extension of Time (the

"Motion"). As the procedural history of this action and the issues raised by defendant's motion

are essentially the same as in <u>Connecticut State Medical Society v. Anthem Health Plans, Inc.</u>

<u>d/b/a Anthem Blue Cross and Blue Shield of Connecticut</u>, Civil Action No. 3:01 CV00428

(JBA), in the interests of judicial economy, plaintiffs fully incorporate by reference herein the

Opposition to Defendant's Motion for Extension of Time submitted by the Connecticut State

Medical Society and adopt the reasons set forth therein for denying defendant's Motion.[1]

---

[1] It should be noted that, in addition to bringing class-wide claims for violation of the
Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110b <u>et seq.</u> and the Connecticut
Unfair Insurance Practices Act, Conn. Gen. Stat. §§ 38a-816 <u>et. seq.</u>, plaintiffs also bring claims
for breach of contract, breach of the duty of good faith and fair dealing, negligent
misrepresentation, and unjust enrichment.

THE PLAINTIFFS

By: _____ (HK)

James E. Hartley, Jr.
Federal Bar No. ct 08275
Gary B. O'Connor
Federal Bar No. ct 11216
H.C. Kwak
Federal Bar No. ct 19957
DRUBNER, HARTLEY. O'CONNOR
& MENGACCI, L.L.C.
500 Chase Parkway
Waterbury. CT 06708
Tel:    (203) 753-9291
Fax:    (203) 753-6373

Gregory J. Pepe
NEUBERT, PEPE & MONTEITH, P.C.
195 Church Street, 13th Floor
New Haven, CT 06510-2026
Tel:    (203) 821-2000
Fax:    (203) 821-2009

Christopher A. Seeger
Stephen A. Weiss
SEEGER WEISS LLP
One William Street
New York, NY 10004
Tel:    (203) 584-0700
Fax:    (203) 584-0799

*Their Attorneys*

- 2 -

## CERTIFICATION

I hereby certify that a copy of the foregoing was mailed, postage prepaid, on this 18th day of April, 2001 to the following parties:

Patrick M. Noonan, Esq.
Delaney, Zemetis, Donahue, Durham &
Noonan, P.C.
Concept Park
741 Boston Post Road
Guilford, CT  06437

Craig A. Hoover, Esq.
Jeffrey D. Pariser, Esq.
Hogan & Hartson LLP
555 13th St., N.W.
Washington, DC 20004

James E. Hartley, Jr.

FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT    ':' :: [il '01

U.C.
hi el : : :



|   |   |
|---|---|
| STEPHEN R. LEVINSON., M.D., KAREN LAUGEL, M.D., and J. KEVIN LYNCH, M.D., on behalf of themselves and other similarly situated,<br><br>            Plaintiffs,<br><br>*v.*<br><br>ANTHEM HEALTH PLANS, INC. d/b/a ANTHEM BLUE CROSS AND BLUE SHIELD OF CONNECTICUT ,<br><br>            Defendant. | Civil Action 3:01CV426(JBA)<br><br><br><br>April 25, 2001 |

## NOTICE OF APPEARANCE

Please enter the appearance of Michael G. Durham, as attorney for the Defendants,

Anthem Blue Cross & Blue Shield of Connecticut and Anthem Health Plans, in the above-

entitled matter.

THE DEFENDANTS

BY

Michael G. Durham (#ct 05342)
Delaney,Zemetis,Donahue,
    Durham & Noonan
741 Boston Post Road
Guilford, CT 06437
(203)458-9168

**DELANEY, ZEMETIS, DONAHUE, DURHAM & NOONAN, P.C.**
CONCEPT PARK  •  741 BOSTON POST ROAD
GUILFORD, CONNECTICUT 06437
TEL:  (203) 458-9168  •  FAX:  (203) 458-4424
JURIS NO. 415438

## **CERTIFICATION**

This is to certify that a copy of the foregoing was mailed, postage prepaid, on the

above-written date, to:

James E. Hartley, Jr.
Drubner, Hartley, O'Conner & Mengacci, L.L.C.
500 Chase Parkway
Waterbury, CT 06708

Gregory J. Pepe
Neubert, Pepe & Monteith, P.C.
195 Church Street, 13th Floor
New Haven, CT 06510-2026-

Christopher A. Seeger
Stephen A. Weiss
Seeger Weiss, L.L.P.
One William Street
New York, NY 10004

Michael G. Durham



IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT
(NEW HAVEN DIVISION)

| | |
|---|---|
| STEPHEN R. LEVINSON, M.D., et al., | |
| Plaintiffs, | |
| $v.$ | Civil Action No. |
| ANTHEM HEALTH PLANS, INC. d/b/a ANTHEM BLUE CROSS AND BLUE SHIELD OF CONNECTICUT, | ~~3:01CV426~~(JBA) $MBS$ $3:01cv411$ JBA |
| Defendant. | April 24, 2001 |

## MEMORANDUM OF DEFENDANT IN OPPOSITION TO
## PLAINTIFFS' MOTION TO REMAND

Craig A. Hoover (Fed. Bar # ct21931)
Jeffrey Pariser  (Fed. Bar # ct22245)
HOGAN & HARTSON L.L.P.
555 13th Street, N.W.
Washington, DC  20004
(202) 637-5600

Michael G. Durham (Fed. Bar # ct05342)
Patrick M. Noonan (Fed. Bar #ct00189)
DELANEY, ZEMETIS, DONAHUE
DURHAM & NOONAN
741 Boston Post Road
Guilford, CT  06437
(203) 458-9168

Attorneys for Defendants

**ORAL ARGUMENT REQUESTED**

\\\DC - 68235/11 - #1308894 v5

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT
(NEW HAVEN DIVISION)

STEPHEN R. LEVINSON, M.D., et al.,

Plaintiffs,

v.

ANTHEM HEALTH PLANS, INC. d/b/a
ANTHEM BLUE CROSS AND BLUE
SHIELD OF CONNECTICUT,

Defendant.

Civil Action No.

3:01CV426(JBA) $MBS$
$3 :01 c_v 41) NJA$

April 24, 2001

## APPENDIX OF EXHIBITS

### TO

## MEMORANDUM OF DEFENDANT IN OPPOSITION TO
## PLAINTIFFS' MOTION TO REMAND

Craig A. Hoover (Fed. Bar # ct21931)
Jeffrey Pariser (Fed. Bar # ct22245)
HOGAN & HARTSON L.L.P.
555 13th Street, N.W.
Washington, DC 20004
(202) 637-5600

Michael G. Durham (Fed. Bar # ct05342)
Patrick M. Noonan (Fed. Bar #ct00189)
DELANEY, ZEMETIS, DONAHUE
DURHAM & NOONAN
741 Boston Post Road
Guilford, CT 06437
(203) 458-9168

Attorneys for Defendants

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

FILED

MAY 7  4 11 FM '01

**APPEARANCE**

STEPHEN R. LEVINSON, M.D., et al.

Plaintiffs                    Civil Action 3:01CV426(JBA)

v.

ANTHEM HEALTH PLANS, INC.

Defendant.

*To the Clerk of this Court and all parties of record:*

*Enter my appearance as counsel in this case for*

ANTHEM HEALTH PLANS, INC.

4-17-01
_____
*Date*

*ct 21931*
_____
*Bar Number*

_____
*Signature*

Craig A. Hoover
_____
*Print Name*

Hogan & Hartson LLP
_____
*Firm Name*

555 13th St., N.W.
_____
*Address*

Washington,  DC        20004
_____
*City*        *State*      *Zip Code*

202-637-5694
_____
*Phone Number*

*I hereby certify that copies have been mailed to counsel of record as listed below, this date*

James. E. Hartley, Jr.
Gary B. O'Connor
H.C. Kwak
Drubner Hartley O'Connor & Mengacci
500 Chase Parkway
Waterbury, CT 06708

Gregory J. Pepe
Neubert, Pepe & Monteith, P.C.
195 Church St., 13th Floor
New Haven, CT 06510

Christopher A. Seeger
Stephen A. Weiss
Seeger Weiss LLP
One William St.
New York, NY 10004

_____
*Signature*

FILED

May 7  1:23 PM '01

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| STEPHEN R. LEVINSON., M.D., KAREN LAUGEL, M.D., and J. KEVIN LYNCH, M.D., on behalf of themselves and other similarly situated,<br><br>        Plaintiffs,<br><br>    *v.*<br><br>ANTHEM HEALTH PLANS, INC. d/b/a ANTHEM BLUE CROSS AND BLUE SHIELD OF CONNECTICUT ,<br><br>        Defendant. | Civil Action 3:01CV426(JBA)<br><br><br><br>May 4, 2001 |

## **NOTICE OF APPEARANCE**

Please enter the appearance of Steven M. Barry, as attorney for the Defendants, Anthem

Blue Cross & Blue Shield of Connecticut and Anthem Health Plans, in the above-entitled matter.

THE DEFENDANTS

BY _____

Steven M. Barry (#ct 07825)
Delaney, Zemetis, Donahue,
        Durham & Noonan
741 Boston Post Road
Guilford, CT 06437
(203)458-9168

**DELANEY, ZEMETIS, DONAHUE, DURHAM & NOONAN, P.C.**
CONCEPT PARK  •  741 BOSTON POST ROAD
GUILFORD, CONNECTICUT 06437
TEL:  (203) 458-9168  •  FAX:  (203) 458-4424
JURIS NO. 415438

## CERTIFICATION

This is to certify that a copy of the foregoing was mailed, postage prepaid, on the

above-written date, to:

James E. Hartley, Jr.
Drubner, Hartley, O'Conner & Mengacci, L.L.C.
500 Chase Parkway
Waterbury, CT 06708

Gregory J. Pepe
Neubert, Pepe & Monteith, P.C.
195 Church Street, 13th Floor
New Haven, CT 06510-2026-

Christopher A. Seeger
Stephen A. Weiss
Seeger Weiss, L.L.P.
One William Street
New York, NY 10004

Steven M. Barry

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
301 North Miami Avenue
Miami, FL 33128-7788
305-523-5100

Clarence Maddox
Clerk of Court



September 14, 2001

411
412
425

3:01cv426   JBF

Attn: Barbara
United States District Court
District of Connecticut
450 Main Street
Hartford, CT 06103

Re: Managed Care Litigation - 00MD1334

Your Case Number:   01-411  Connecticut State Medical Society v. Aetna
                    01-412  Sue McIntosh, M.D. v. Aetna
                    01-424  Connecticut State Medical Society v. Cigna
                    01-425  F. Scott Gray, M.D. v. Cigna
                    01-426  Stephen R. Levinson v. Anthem
                    01-428  Connecticut State Medical Society v. Anthem
                    01-416  J. Kevin Lynch, M.D. v. Physicians Health
                    01-417  Connecticut State Medical Society v. Physical

Dear Clerk:

Enclosed is a certified copy of the order from the Judicial Panel on Multidistrict
Litigation (MDL Panel) transferring the above-entitled action to the Southern District of
Florida, Miami Division, where it will be directly assigned to Judge Federico A. Moreno.

Please forward your court file, certified copy of the docket sheet and the enclosed copy of
this transmittal letter to the United States District Court for the Southern District of
Florida, Miami Division, Attn: Clerks Office {Intake}, 301 North Miami Avenue, Miami,
FL 33128. Your prompt attention to this matter is greatly appreciated.

Sincerely,

By:   Nury Toloza, Deputy Clerk

Enclosures